UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| Arthur ESTANISLAU, Jr., | : |
|     Plaintiff, | : |
| | : |
| v. | : 3:02cv1515(PCD) |
| | : |
| MANCHESTER DEVELOPERS, LLC | : |
|     Defendant. | : |

**RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Pursuant to FED. R. CIV. P. 56(c), Defendant moves for summary judgment on the entire complaint, and Plaintiff moves for summary judgment with respect to Defendant's liability. For the reasons stated herein, Defendant's motion is **denied** and Plaintiff's motion is **granted** in part and **denied** in part.

**I.    Background**[1]

From approximately September 9, 2000 through March 18, 2003, Plaintiff was employed by Defendant as an "on-site" maintenance superintendent at Aspen Woods, a 400 unit residential rental property located at 39 Buckland Street in Manchester, Connecticut. He was supervised by Fran Velasco, who lives at another of Defendant's apartment complexes in Hamden, Connecticut and who is Property Manager of both the Hamden and Manchester complexes. Defendant denies Plaintiff's allegation that he was required to live in at Aspen Woods for Defendant's benefit.

Before being hired Plaintiff rented a one-bedroom apartment in Aspen Woods for $865 per month. During his employment for Defendant Plaintiff was provided with a

---

[1] The facts are taken from the parties' Local Rule 56(a) statements, and are undisputed unless stated otherwise.

rent-free apartment as compensation for his first twelve hours of overtime per week. Plaintiff requested and was given a rent-free two-bedroom apartment, which according to Defendant had a fair market value of $1,025 per month. In March, 2002 he moved to another "better" rent-free apartment of Defendant's, for which Defendant set a rent of $1,125 per month.[2]

Plaintiff would have been able to perform his job living off-site, and living on-site was not inconvenient to Plaintiff. On January 21, 2003, Defendant sent a memorandum stating that Plaintiff was not required to live on-site; Plaintiff responded that he wanted to live on-premises "as long as the conditions of when I was hired [in] September 2000 stay the same." Defendant denies Plaintiff's allegation that he was required to live on-site for Defendant's benefit. Tenants at Aspen Woods were told that "emergency maintenance is provided 24 hours a day," and were given a list of numbers including maintenance's emergency beeper number.

Plaintiff was paid $12.00 to $12.50 per hour,[3] and Defendant always paid Plaintiff more than $475 per week. Defendant denies Plaintiff's allegation that it expected him to work regular overtime, but indicates that it provided him a rent-free apartment as an offset for the first twelve hours of overtime he worked per week. Defendant denies that when "on duty" during nights and weekends Plaintiff was required to attend to the dumpster hourly.

---

[2] Plaintiff agrees that these were the amounts Defendant charged for such apartments, but contends that whether the amounts were the "fair market value" must be determined by the State of Connecticut and the United States Departments of Labor.

[3] From September 9, 2000 through October 26, 2001 he was paid $12.00 per hour; after October 26, 2001, he was paid $12.50 per hour.

Beginning on March 19, 2001, Plaintiff was the Lead Maintenance Supervisor at Aspen Woods. Tenants contacted the maintenance super whenever a problem arose by calling his office or beeping him. During various times Plaintiff shared the beeper with other maintenance supers. When Plaintiff was beeped, he returned the call and determined whether the situation demanded immediate attention or could wait until the next day. Defendant denies Plaintiff's allegation that although the beeper was intended for emergencies he was beeped regularly by tenants for general problems. Defendant denies Plaintiff's allegations that he was required to respond to all tenant calls regardless of the time and that when on-call he was restricted to locations within 15 minutes travel time from Aspen Woods.

During the time he was "on call," Plaintiff attended to various personal matters, visited family including children, went to his gym, visited casinos, spent time with a girlfriend, took his children to the dentist and picked them up from school, and went grocery shopping. On occasion Plaintiff and another maintenance super covered for each other during "on call' time. He denies that he was free to leave the premises when his shift ended and return at 11:30 p.m. to lock the clubhouse.

Plaintiff denies that when he was hired, Defendant told him he had to record his hours each day. Through April 2001 Plaintiff orally reported his hours to Janet Coleman (an employee of Defendant). Beginning in late April 2001, after Defendant installed a time clock, his hours were recorded on time sheets, which he signed and which included an acknowledgement that "I certify that this time sheet truthfully and accurately reflects all hours worked by me during this pay period." Plaintiff alleges that he signed the time

sheet because he was required to and that Defendant directed him to use the time clock to record only hours for which it agreed to pay him.  He denies Defendant's allegation that he was paid for all hours reported on the time sheets.  By signing a memorandum Plaintiff acknowledged his obligation to request authorization and approval for hours worked in excess of eight per day or forty per week.  Defendant denies Plaintiff's allegation that beginning April 25, 2001 it agreed to pay Plaintiff only for hours related to a "core hours" schedule of 8:00 a.m. to 4:00 p.m.  Defendant denies Plaintiff's allegation that pursuant to Defendant's instruction he only recorded such "core hours" and not other hours worked, including time worked after 8:30 p.m., "on duty" and "on call" weekday nights or Sundays, or time spent responding to tenants' emergencies or dealing with the dumpster, pool, security, or fitness center.  Defendant denies Plaintiff's allegation that from April 27, 2001 through July 4, 2001 Defendant failed to pay him the overtime he worked.  Defendant denies Plaintiff's allegation that Defendant did not pay him retroactively for overtime worked before July 5, 2001.

Plaintiff was instructed to punch the clock when he responded to emergencies.  He denies that he was paid for all time recorded on the time clock, and denies Defendant's allegation that he "ma[ke] adjustments" to his time records to capture time from prior pay periods that had not been reported so he would get paid in the following paycheck.

On July 12, 2002 Defendant issued a memorandum clarifying employees' responsibilities when on-call.  Defendant denies Plaintiff's allegation that it did not pay him for overtime worked prior to this date.  On August 23, 2002 Defendant issued

another memorandum. Defendant denies Plaintiff's allegations that it did not pay him for overtime worked prior to this date.

On approximately September 21, 2002 Defendant hired James Galonska to work fulltime. Galonska lived off-site but was required to be on-site while working. On October 18, 2002 Defendant issued a memorandum instructing employees that they would "only be paid for what is punched in by the time clock" and that "no over-time will be paid unless at least 40 hours per week have been punched in on the time cards."

Defendant did not obtain approval from the United States or Connecticut Departments of Labor to use Plaintiff's housing as an offset from overtime compensation. On approximately January 31, 2001 Defendant issued a "Maintenance Work Procedures" specifying that Plaintiff was paid for a 40 hour week, was "on call" for an additional twelve hours which was "compensated with an apartment," and would be compensated overtime for "work over 52 hours."

Velasco works in Hamden and had no first-hand knowledge of how many hours Plaintiff actually worked. She was not familiar with why Defendant specified twelve hours on-call time per week in exchange for the rent-free apartment.

Generally, the parties dispute whether Plaintiff was a salary or hourly employee, the nature of his duties, whether Defendant required him to live on-site for its benefit, and whether Defendant is entitled to an offset for the value of the apartment for the first twelve hours of Plaintiff's weekly overtime.

Plaintiff's complaint seeking compensation for overtime wages and benefits is based on CONN. GEN. STAT. § 31-68 (Count One), CONN. GEN. STAT. § 31-72 (Count

Two), and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et. seq. (Count Three). Plaintiff seeks double damages under CONN. GEN. STAT. § 31-68 (Count One) and CONN. GEN. STAT. § 31-72 (Count Two). Pursuant to 29 U.S.C. § 216 he seeks liquidated damages, including double damages and attorneys' fees (Count Three).

## II.     Standard

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Summary judgment is proper when reasonable minds could not differ as to the import of evidence. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). "Conclusory allegations will not suffice to create a genuine issue." *Delaware & H. R. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir. 1990). Determinations as to the weight to accord evidence or credibility assessments of witnesses are improper on a motion for summary

judgment as such are within the sole province of the jury. *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

"[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party. . . . Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't., Inc.,* 249 F.3d 115, 121 (2d Cir. 2001).

### III. Discussion

Defendant argues that Plaintiff was an exempt employee under federal and Connecticut Law and that Plaintiff's claims are barred by the doctrine of unclean hands. Def. Mem. in Supp. of Summ. J. at 2 [Doc. No. 36]. Plaintiff contends that he was a non-exempt hourly employee entitled to overtime salary and benefits. Pl. Opp. at 4. Plaintiff does not allege that he is entitled to overtime for all hours that he was "on call," but rather for the time actually spent working while "on call" or "on duty." Pl. Opp. at 14.

#### A. Plaintiff's Status under the FLSA

The FLSA requires employers to pay employees overtime wages, at the rate of time and a half, for hours worked in excess of 40 hours in a single week. 29 U.S.C. § 207. However, employees who are "employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited . . . by regulations of the Secretary [of Labor]" are not covered by the FLSA's overtime requirements. 29 U.S.C. § 213(a)(1). In order to qualify for this exemption, an employee must satisfy both a "duty

test" and a "salary basis" test. *See* 29 C.F.R. §§ 541.1-541.3. Plaintiff also seeks a general finding of Defendant's liability.

### 1. The Salary Basis Test

Defendant argues that Plaintiff was paid a salary, and Plaintiff contends that he was paid strictly on an hourly basis. Plaintiff was hired in September, 2000 at a rate of $12.00 per hour; this rate was later increased to $12.50 per hour as a cost of living increase. Pl. Mem. in Supp. of Summ. J. at 7. He argues that his pay was directly based on the number of hours on his time sheets, which is inconsistent with the concept of salary. *Id*. He contends that Plaintiff instituted numerous policies, all evincing that he was considered an hourly employee. *Id*. at 7-9. Defendant argues that Plaintiff was paid on a salary basis, that he was never paid less than his base salary, and that the payment of overtime is not inconsistent with salary. Def. Opp. at 4.

Pursuant to the "salary test,"

(a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any work-week in which he performs no work. . . .

29 C.F.R. § 541.118. The salary basis test denies exempt status if "employees are covered by a policy that permits disciplinary or other deductions in pay 'as a practical matter.' That standard is met . . . if there is an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Auer*

*v. Robbins*, 519 U.S. 452, 461, 137 L. Ed. 2d 79, 117 S. Ct. 905 (1997). A "one-time deduction . . . under unusual circumstances" is not enough to establish a significant likelihood of such deductions. *Id.* at 462. Because the FLSA is a remedial act, its exemptions must be narrowly construed. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S. Ct. 453; 4 L. Ed. 2d 393 (196).

While the regulations allow pay deductions when an employee is absent for a day or more for personal reasons, sickness, or disability without affecting the employee's salaried status, *see* 29 C.F.R. § 541.118(a)(2), (3), an employer is limited in the deductions it may make when an employee is absent for less than one day. *Cooke v. General Dynamics Corp.*, 993 F. Supp. 50, 52 (D. Conn. 1997). "The theory behind the salary basis test is that subjecting an employee's pay to deductions for absences of less than a day, including absences as short as an hour, is completely antithetical to the concept of a salaried employee." *Cooke*, 993 F. Supp. at 52.

Here, Defendant argues Plaintiff was paid on a salary basis and that the payment of overtime is not inconsistent with salary. Defendant contends that Plaintiff was always paid more than $475 per week, received a rent-free apartment, and was allowed paid sick, personal, and vacation time. Plaintiff argues that his pay was not a guaranteed salary but merely reflected the fact that he always worked more than 40 hours per week. Pl. Opp. at 4. He alleges that his rent-free apartment was not pursuant to any salary but was based on the fact that he was required to be "on duty" outside of his regular hours. Pl. Mem. in Supp. of Summ. J. at 7.

9

In light of the fact that FLSA exemptions must be narrowly construed, *see Arnold*, 361 U.S. at 392, Defendant fails to establish beyond doubt that Plaintiff was paid on a salary rather than hourly basis.  The undisputed facts show that he was paid on an hourly basis (first $12.00 per hour, later raised to $12.50 per hour).  The mere fact that he was never paid less than $475 per week does not require a per se finding of salary basis; for example, it is possible that Plaintiff never received less than $475 per week because he always worked at least 40 hours per week.  The fact that he received paid time off for vacation, sick, and personal time is not inconsistent with benefits given to hourly employees.

Moreover, Defendant circulated various memoranda indicating that Plaintiff's wages were based on an hourly basis.  For example, a document entitled "Maintenance Work Procedures" signed by Plaintiff on January 31, 2001, states in its "Compensation" section that

> Maintenance supers are paid for a 40 hours week.  However, you are on call 12 extra hours per week and are compensated with an apartment.  The 12 hours covers week-night emergency calls and week-end calls.  Should you work over 52 hours, e.g. snow, you will be compensated for that as overtime.

Pl. Rule 56(a)(1) List of Exh., at Exh. 10.  A memorandum issued on February 21, 2002 from the Property Manager, addressed to "All Staff," directed that

> It is mandatory that you take lunch every day.  At least ½ hour.  For the short days, Saturday and Sunday, ½ hour lunch is required to be taken.  It is to be taken away from the desk.  You are not to eat at the desk or work during lunch.  You *must* punch out for lunch and punch in when you return. . . . There are no exceptions.

Def. Local Rule 56(a)(2) Statement, Exh. F (emphasis in original).  Such a mandate *requiring* Plaintiff to take a lunch break away from his desk, and to punch in and out on a

10

time clock, is inconsistent with salary. Another memorandum to "Maintenance Staff" issued on July 12, 2002 from the Property Manager states that "If you need to return to the site for [an] emergency [during "subject to call" time], you will be paid from time of call, travel time, time worked. These hours must be recorded." Pl. Rule 56(a)(1) List of Exh., at Exh. 12. A memorandum to "All Staff" from the Property Manager dated August 23, 2002, instructs Plaintiff directly that "[i]f there is a need for you to work on emergencies or come in at unusual hours, I am to be informed." Pl. Rule 56(a)(1) List of Exh., at Exh. 13. This memorandum included instructions for all staff that "[a]ll employees must punch in and out, for lunches as well. If there is an emergency, you will be paid from time of the call until the call is complete." *Id*. Finally, a memorandum from the Property Manager to "All Staff" dated October 18, 2002 instructs that

> Effective from this date forward, if you do not punch in and out, that includes for lunch, you will only be paid for what is punched in by the time clock. It is not my responsibility to put your hours in using guess work. This is a legal issue and you must punch in and out daily.
>
> No over-time will be paid unless at least 40 hours per week have been punched in on the time cards.

Pl. Rule 56(a)(1) List of Exh., at Exh. 14.

Taken as a whole, all of these memoranda indicate that Plaintiff was paid on an hourly basis, and accordingly as a matter of law he cannot be considered an exempt employee under the FLSA.[4] Accordingly, Defendant's motion for summary judgment seeking a finding that Defendant was paid salary and thus exempt from FLSA overtime

---

[4] Because it is found that Plaintiff was not paid on a salary basis there is no need to inquire into the duties test.

11

requirements is **denied**, and Plaintiff's motion, to the extent it seeks a finding that Defendant was paid hourly and thus was non-exempt from the FLSA, is **granted**.

### B.  Plaintiff's Status Under State Law

Defendant moves for summary judgment that Plaintiff is exempt under Connecticut Law.  Defendant bases its argument on its conclusion that state law mirrors federal law on this issue.  Def. Mem. in Supp. of Summ. J. at 23.

Moreover, pursuant to Connecticut Department of Labor policy,

> "Salary basis" means a predetermined amount paid for each pay period on a weekly or less frequent basis, regardless of the number of days or hours worked, which amount is not subject to reduction because of variations in the quality or quantity of the work performed, and which amount has been the subject of an employer advisement as required by section 31-71f of the Connecticut General Statutes.

Regulations of the State of Connecticut Dept. of Labor, Section 31-60-14(b), *available at* http://www.ctdol.state.ct.us/wgwkstnd/prof-employees.htm.  For the reasons discussed in the previous section, Defendant fails to establish that Plaintiff was paid on a salary basis, therefore Plaintiff cannot be considered exempt under state law.

Accordingly, Defendant's motion for summary judgment seeking a finding that Defendant was paid salary and thus exempt from Connecticut overtime requirements is **denied**, and Plaintiff's motion, to the extent it seeks a finding that Defendant was paid hourly and thus was non-exempt under Connecticut law, is **granted**.

### C. Rent-Free Apartment as Offset for Twelve Weekly Overtime Hours[5]

Defendant argues that if the Court finds that Plaintiff was not exempt, it is entitled to an offset of twelve hours a week because Plaintiff received and benefitted from a rent-free apartment. Def. Mem. in Supp. of Summ. J. at 24-27 . Plaintiff contends that under federal and state law there should be no offset because (1) the housing was primarily for Defendant's benefit and (2) the housing deduction was not approved by the federal and state Departments of Labor. Pl. Mem. in Supp. of Summ. J. at 20. Plaintiff also argues that the value of the apartment should be included in his base wages. Pl. Mem. in Supp. of Summ. J. at 20-23. Defendant argues that (1) Plaintiff fails to provide evidence that his rent-free apartment was for Defendant's benefit and that (2) before he was hired, Plaintiff lived on-site already and that when it learned of his dissatisfaction told him he need not live on-site.

29 U.S.C. § 203(m) provides that

> "Wage" paid to any employee includes the reasonable cost, as determined by the Administrator [Secretary], to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees.

"Reasonable cost" is defined as follows:

> "(a) The term reasonable cost as used in section 3(m) of the Act is hereby determined to be not more than the actual cost to the employer of the board, lodging, or other facilities customarily furnished by him to his employees.

---

[5] Plaintiff makes no allegations that Defendant failed to pay him the minimum wage at any time. His complaint instead alleges that Defendant failed to compensate him fully for overtime.

29 C.F.R. § 531.3(a).  29 C.F.R. § 531.32(c) provides that "under § 531.3(d)(1), the cost of furnishing 'facilities' which are primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages."

Here, there is a genuine issue of material fact whether Plaintiff was expected and required to live on-premises primarily for Defendant's convenience or benefit throughout his employment for Defendant.[6]  Plaintiff alleges "Defendant required [him] to live on site so that it could satisfy the advertised offering of 24-hour maintenance and have readily available a staff member to respond to tenant needs."  Pl. Mem. in Supp. of Summ. J. at 21.  Defendant alleges "living on site was convenient for Plaintiff," that Plaintiff lived on-site before he was hired, and that he was given a larger apartment when he requested one.  Def. Opp. at 11.  Defendant contends that "Plaintiff could have performed his job living off-site," and that when it learned of Plaintiff's discontent Defendant gave him the option of moving off-site.  The fact that Defendant later gave him the choice of living off-site does not demonstrate that, at all times relevant to this action,[7] he was not required to live on-site for Defendant's benefit.  The fact that it was convenient for Plaintiff to live on-site does not mean *per se* that his living on-site was not primarily for the benefit and convenience of Defendant.

---

[6] It is also unclear whether Defendant "customarily furnished" rent-free apartments to those in Plaintiff's position.

[7] From the time when Plaintiff was clearly and directly notified that he was not required to live off-site (January 21, 2003), his living on-site was not primarily for Defendant's benefit.

Because there is a genuine issue of material fact regarding whether Defendant, at some times relevant to the complaint, required Plaintiff to live on-site primarily for its benefit or convenience, both parties are **denied** summary judgment on this issue.[8]

### E.     Defendant's General Liability

Plaintiff seeks summary judgment on Defendant's general liability.  There is a genuine issue of material fact as to how much uncompensated overtime if any, Plaintiff worked.  As it is possible he worked none, it is possible Defendant is liable for no uncompensated overtime.  Although Plaintiff argues generally that he was not compensated for all overtime, in his memoranda he does not provide evidence of specific instances where he is entitled to specific hours of unpaid overtime.[9]  Throughout his memoranda Plaintiff alleges that various policies regarding recording (or not recording) his time were in place at different times.  *See e.g.* Pl. Mem. in Supp. of Summ. J. at 8.  "Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty America. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).  This Court cannot render advisory opinions or speculate as to hypothetical situations.  *Hayburn's Case*, 2 U.S. 409, 410, 2 Dall. 409, 1 L. Ed. 436 (1792); *Ctr. for Reprod. Law v. Bush*, 304 F.3d 183, 195 (2d Cir. 2002).

---

[8] At this time the Court need not reach the issue of whether the value of the rent-free apartment should be included as part of Plaintiff's base wage in calculating his alleged uncompensated overtime.

[9] Plaintiff has submitted various timesheets, employee earnings sheets, and other documents, but has not provided any meaningful analysis of them, and has not summarized them into a table to facilitate review by the Court.

Accordingly, summary judgment is **denied** to Plaintiff on the issue of liability.[10]

### IV.    Conclusion

For the reasons stated herein, Defendant's motion for summary judgment [Doc. No. 35] is **denied** and Plaintiff's motion for summary judgment [Doc. No. 29] is **granted** in part and **denied** in part.

SO ORDERED.

Dated at New Haven, Connecticut, December 22 , 2003.

                                                  /s/

                                              Peter C. Dorsey
                                     Senior United States District Judge

---

[10] Should Defendant be found liable for any overtime it faces a problem establishing the value of any offset (if Defendant is entitled to such offset). Plaintiff argues that Defendant was required to make a request for the federal and state Departments of Labor to make a determination of any such "reasonable cost" of the housing to be used as a wage offset. Defendant argues that it was not required to seek a determination from the Departments of Labor. Neither party thoroughly and persuasively briefs the issue, but it need not be reached here because (1) it is not resolved whether Defendant would be entitled to any such offset because, as discussed above, there is a genuine issue of material fact whether Defendant required Plaintiff to live on-site for its benefit and (2) it is not resolved whether Defendant will be ultimately liable to Plaintiff for any uncompensated overtime, as Plaintiff has not demonstrated entitlement to specific overtime hours. Defendant has neither sought a determination from the Departments of Labor nor provided any evidence to demonstrate the value of the actual cost of the apartment. Just as nothing in this ruling precludes Plaintiff from demonstrating the specific hours for which he claims overtime entitlement, nothing precludes Defendant from seeking a determination from the federal and/or state Departments of Labor if it deems such action as required.