UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARTHUR ESTANISLAU, JR.     : <br>     Plaintiff                      : <br>                                            : <br> VS.                                  : <br>                                            : <br> MANCHESTER DEVELOPERS, LLC  : <br>     Defendant                  : | CIVIL ACTION NO: 3:02CV1515(PCD) <br><br><br><br><br><br> APRIL 2, 2004 |

## PLANTIFF'S PROPOSED WRITTEN OPENING STATEMENT

In September, 2000, the Plaintiff Arthur Estanislau was hired by the Defendant Manchester Developers to be an on-site maintenance superintendent at a 400 unit apartment complex in Manchester, Connecticut. As an on-site employee, Mr. Estanislau was required by the Defendant to live in the complex and carry a beeper so that the Defendant could provide its tenants 24 hour/7 day a week maintenance services.

When Mr. Estanislau was hired and throughout his employment with the Defendant, he was entitled to the same fundamental bargain that any hourly employee is entitled to – pay for the hours he worked. In this case, the court will instruct you that Mr. Estanislau was entitled to be paid overtime for any hours he worked in excess of 40 hours a week, 8 hours a day.

You will hear that Mr. Estanislau kept up his side of the bargain. He worked the hours, usually well in excess of 40 hours a week, required to do his job. He carried the beeper and was "on duty" and "on call" every other week to respond to any tenant requests. He performed routine and emergency maintenance. He got apartments fixed, cleaned and ready to rent. He cleaned and kept in good repair the pool, the clubhouse, and the fitness center, with all their equipment. He cleaned up trash, filled the dumpster, shoveled snow, monitored the grounds. In short, he did all the things that the Defendant needed to do to for the people who rented its apartments.

The Defendant, however, didn't keep up its end of the bargain. It regularly failed to pay Mr. Estanislau for the hours he worked.

The Defendant's failure to pay overtime was not just an innocent mistake. It was the policy of the Defendant to pay as little as they could for as much free labor as possible.
So despite the fact that Mr. Estanislau's job duties stayed the same, or even increased over time, the Defendant constantly changed how much it would pay him.

For his first four months of employment, from September 2000 to January, 2001, the Defendant didn't pay Mr. Estanislau any overtime.  According to the Defendant, It didn't matter  what hours Mr. Estanislau worked in excess of 40 in a week because he had a free apartment. That supposedly paid him for everything.

But you will hear from the court that when an employee lives on site primarily for the benefit or convenience of the employer, the employer can't count that free housing as part of the employee's wages. And the evidence will show that in this case Mr. Estanislau was required by the employer to live on site, and that this was done to benefit the employer, so the employer can't count the free housing as part of his wages

In January, 2001, after Mr. Estanislau complained about the amount of work he had to do, the Defendant began to pay Mr. Estanislau some overtime – for snow, tenant emergencies, and clubhouse parties. But they wouldn't pay him for all his other duties he had had from the start – the pool, the dumpster, the fitness center, nights and weekends with the beeper, responding to tenant calls and needs.

In April, 2001, the Defendant installed a time clock, not to record hours accurately but to suppress the hours reported by Mr. Estanislau to whatever level they  decided to pay. So from April through June, 2000, the Defendant directed Mr. Estanislau to punch in and out using the time clock, but only to show himself working  40 hours a week, 8 hours a day, without any overtime, because that is all he was going to get paid for. Despite the fact that his duties were exactly the same, and his hours were well over 40 hours a week, Mr. Estanislau's time records showed no overtime at all.

In July, 2001, Mr. Estanislau and some coworkers confronted the Defendant about the enormous numbers of hours they were working without pay. The Defendant changed its policy again and started to pay Mr. Estanislau overtime.  He was instructed at this point to punch in and out so that his time records showed 12.5 hours, up to 8:30 p.m., on days when he was on duty. But what the employer gave with one hand, it took away with the other. At the same time it gave Mr. Estanislau overtime pay, it started improperly deducting 12 hours of overtime every week, claiming that it didn't have to pay this overtime because he wasn't paying rent for the apartment he lived in.  But because the Defendant required Mr. Estanislau to live there in order to do his job, in order to benefit the employer, it was not allowed to make such a deduction.

In the summer of 2002, the Defendant again changed its policy and began to pay Mr. Estanislau for even more overtime. The Defendant gave Mr. Estanislau new instructions about punching in and out:  now he was supposed to show work up to 10:00 p.m. on days he was on duty.

With each change in the Defendant's policy, from no overtime, to some overtime, back to no overtime, then to some overtime, the only thing that remained the same were Mr. Estanislau's duties.  In each case, it didn't matter to the Defendant how many hours Mr. Estanislau actually worked. All that mattered was how much they wanted to pay him.

Based on the facts of this case, Arthur Estanislau has brought three claims, based on three different laws which require employers to pay employees overtime. At the end of this case, the judge will provide you detailed instructions laying out the law for each of those claims. For now, it is enough to know that Mr. Estanislau is asking that he be paid for overtime he worked and for which he was not paid .

Once you have reviewed all of the documents, once you have had a chance to listen to all of the witnesses in this case, and once you have considered all of the evidence and the law as the judge gives it to you, the Plaintiff is confident that you will return a verdict in his favor.

Thank you.

                                                               PLAINTIFF

By:
    Marc P. Mercier
    Beck & Eldergill, P.C.
    447 Center Street
    Manchester, CT 06040
    (860) 646-5606
    Fed Bar No: ct10886

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been mailed this 2ND day of April, 2004, to the following parties:

Pamela J. Coyne, Esq.
Loraine M. Cortese-Costa, Esq.
Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C.
1057 Broad Street
Bridgeport, CT   06604

                                                _____
                                                Marc P. Mercier

Estanislau\Openstmt.dcm