UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARTHUR ESTANISLAU, | : | CIVIL ACTION NO. |
| | : | 3:02CV1515 (PCD) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MANCHESTER DEVELOPERS, LLC, | : | |
| | : | |
|     Defendant. | : | APRIL 21, 2004 |

**DEFENDANT'S OPPOSITION
TO PLAINTIFF'S MOTION IN LIMINE RE: EVIDENCE**

Defendant, Manchester Developers, LLC ("Manchester"), hereby submits this Opposition to Plaintiff's Motion in Limine Re: Evidence, in which he requests this Court to preclude Defendant from offering evidence of Plaintiff's arrest, conviction, court appearances, tax returns and his employment application. Manchester contends that this evidence is admissible and requests this Court to deny Plaintiff's motion.

**I.    PLAINTIFF'S ARREST, CONVICTION AND COURT APPEARANCE RECORDS ARE ADMISSIBLE AT TRIAL**

In its Section B Compliance with the Trial Preparation Order,[1] Defendant identified certain records and testimony to be offered at the trial in this matter, including records of Plaintiff's arrests, convictions and court appearances. (*See* Def. Sec. B, Proposed Findings of Fact, ¶ 10, p. 31; Proposed Disputed Evidence, ¶ 1, p. 65.) Defendant's purpose for offering this evidence is "'[d]uring times Plaintiff claims unpaid working hours, he received citation(s) for

---

[1] Hereinafter "Def. Sec. B."

moving violations and/or appeared in court because of such citations." (Def. Sec. B, Findings of Fact, ¶ 10, p. 31). In addition, Defendant contends that "these records are relevant to Plaintiff's claims of hours worked, because most of the events occur during such claimed hours." (Def. Sec. B, Proposed Disputed Evidence, ¶ 1, p. 65.) As to Plaintiff's convictions, Defendant contends that this evidence "is relevant to Plaintiff's credibility, because he testified during his deposition that he had never been convicted." (*Id.*) Defendant may also use this evidence for purposes of impeachment, and it is important that its right to do so is preserved.

Plaintiff apparently misunderstands Defendant's purposes, and objects to this evidence, citing Fed. R. Evid. 404, and stating that this rule "generally prohibits the admissibility of evidence of a person's character for the purpose of proving that the individual acted in conformity with that character on a particular occasion." (*See* Plaintiff's Memorandum of Law in Support of Motion in Limine Re: Evidence,[2] p. 2.) Defendant is not trying to prove that Plaintiff acted in conformity with the behavior(s) that resulted in his arrests and convictions, i.e., drug possession, speeding, reckless driving, etc., but is offering this evidence for the reasons stated in Def. Sec. B and for purposes of impeachment.

Plaintiff also cites and quotes Fed. R. Evid. 608(b) in his memorandum, claiming that the use of extrinsic evidence to show specific instances of misconduct is prohibited. (*See* Pl. Mem., p. 3.) However, Plaintiff fails to quote the second sentence of Rule 608(b), which states:

> They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or

---
[2] Hereinafter "Pl. Mem."

> untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Plaintiff's "character for truthfulness or untruthfulness" is a key element to his case in chief. Defendant has records of Plaintiff's recorded and reported hours, as well as records of the amounts he was paid, yet Plaintiff claims that he worked numerous hours, which he did not report and for which he was not paid. In support of his undocumented claims, Plaintiff will have to testify to specific assignments, jobs, and hours worked, which puts his ability to testify truthfully into issue. Plaintiff's conviction and arrest records are limited in number, are directly related to his claims of unpaid hours worked and his veracity, and will not confuse or distract the jury as to the actual issues in dispute.

Finally, Plaintiff claims that Rule 609 prohibits Defendant's introduction of his convictions into evidence. Rule 609(a) provides:

> For the purpose of attacking the credibility of a witness, . . .(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

Fed. R. Evid. 609(a)(2). The 1990 Amendments of the Advisory Committee Notes explain that "dishonesty and false statement" include "any other offense in the nature of *crimens falsi*, commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully." Most of Plaintiff's convictions, arrests and court appearances occurred during his claimed unpaid working hours, and plainly show his inability to testify truthfully, because he is now claiming that he was working while being arrested and

appearing in court. Because Plaintiff's veracity is a key element of his case, this evidence is admissible at trial, and Plaintiff's motion should be denied.

## II. PLAINTIFF'S TAX RETURNS ARE RELEVANT AND ADMISSIBLE AT TRIAL

Defendant also identified Plaintiff's tax returns as Proposed Disputed Evidence. (*See* Def. Sec. B, ¶ 3, p. 66.) Defendant's purpose for offering Plaintiff's tax returns is to show his "failure to report and pay income taxes on earnings from previous jobs. This is relevant to Plaintiff's ability to establish a credible good faith estimate of hours worked, as well as to his motivation for bringing this suit to recapture the loss of funds to him when deductions from pay for taxes were taken in connection with his employment with Defendant." (*See id.*) (Internal citations omitted.) In addition, Defendant may use Plaintiff's tax returns for purposes of impeachment.

Similar to his claims regarding his conviction, arrest and court appearance records, Plaintiff claims that his tax returns should be precluded as extrinsic evidence offered to show Plaintiff's lack of truthfulness. (*See* Pl. Mem., pp. 4-5.) Plaintiff also claims that his tax returns are irrelevant to his claims herein. (*See id.*)

Plaintiff again fails to recognize an exception to the rules that he claims bar Defendant from introducing this evidence. Rule 404(b) allows "[e]vidence of other crimes, wrongs, or acts . . . as proof of motive, opportunity, intent, preparation, plan, knowledge . . . ." Fed. R. Evid. 404(b). Plaintiff's motive for bringing this action is essential, and the rules specifically allow this type of evidence for this very reason. In addition, as stated above, Plaintiff's ability to testify truthfully is a key element of his case, and Defendant is entitled to show -- whether evidence is

- 4 -

introduced through other witness, or through cross-examination or impeachment of Plaintiff himself -- that he has in fact been untruthful in matters closely related to those at issue here. *See* Fed. R. Evid. 608(b).

Plaintiff's tax returns, which fail to report income, clearly "involve[ ] some element of deceit, untruthfulness, or falsification bearing on [his] propensity to testify truthfully," and are also admissible under Fed. R. Evid. 609, as evidence of "dishonesty and false statement." *See* Fed. R. Evid. 609, Advisory Committee Notes, 1990 Amendments.

Plaintiff's tax returns are relevant and admissible, and his Motion in Limine should be denied.

### III. PLAINTIFF'S EMPLOYMENT APPLICATION IS ADMISSIBLE AT TRIAL

Defendant intends to use Plaintiff's application for employment with Defendant, as well as the testimony of Vinnie J. Grillo, at trial to establish Plaintiff's continuing dishonesty regarding his employment. Plaintiff misrepresented his employment history on his application for employment with Defendant, which falsity was attested to by Mr. Grillo at deposition. *See e.g., Tavassol v. Hewitt-Washington & Assoc.*, No. CIV-A-97-3278, 1998 WL 751636, at * 3 (E.D. La. Oct. 23, 1998) (copy attached) (relying in part on Plaintiff's falsified resume to conclude that he was not truthful and his claim of unpaid hours worked was not reliable). As stated above, Plaintiff's entire case depends upon his credibility, and as stated above, according to the rules, Defendant is entitled to introduce evidence of Plaintiff's untruthfulness, whether through direct examination of other witness, or through cross-examination or impeachment of Plaintiff himself.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion should be denied in its entirety, and Defendant should be allowed to introduce records of Plaintiff's arrests, convictions, court appearances, tax returns and his employment application into evidence at trial, whether through direct testimony, cross-examination or impeachment.

Done at Bridgeport, Connecticut this 21st day of April, 2004.

*Pamela Coyne*
Pamela J. Coyne
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT 06604
(203)366-3438
Federal Bar No. ct22941
ATTORNEYS FOR DEFENDANT

1998 WL 751636
(Cite as: 1998 WL 751636 (E.D.La.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

Mohammad TAVASSOL, et al
v.
HEWITT-WASHINGTON & ASSOCIATES,

No. CIV.A. 97-3278.

Oct. 23, 1998.

OPINION

BERRIGAN, District J.

*1 This matter was tried before the Court without a jury on October 1, 1998, and taken under advisement. Having considered the evidence adduced at trial, the record, the memoranda of counsel and the law, the Court finds in favor of the defendants, Hewitt-Washington & Associates, Architects-Planners, Inc. ("Hewitt-Washington"), James R. Washington, Jr. ("Washington") and Lonnie Hewitt ("Hewitt") and against the plaintiff, Mohammad Tavassol ("Tavassol").

Tavassol brought three related claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq* ("FSLA") raising the issue whether he was subject to the "professional" exemption from the FSLA overtime provisions under 29 U.S.C. § 207 and § 213. [FN1] These claims include a claim for the overtime wages, a claim for liquidated damages and a claim for attorneys fees.

> FN1. At trial, Tavassol abandoned a claim for alleged underpayment on a federal contract and a claim for penalty wages under La.Rev.Stat. § 23:631.

Some of the relevant facts were essentially undisputed at trial. Tavassol received a degree in architecture from the University of Southern Louisiana in 1988, but has not passed the exam required for a license. He worked for Hewitt-Washington from June 1994 to December 1996. The primary factual issues at trial surrounded the nature of the work the plaintiff performed at Hewitt-Washington and the basis of his pay. The defendants claim that the plaintiff is exempt from the FLSA overtime provisions by virtue of his status as a "salaried professional" employee, and the plaintiff claims that he is not so exempted.

The employer bears the burden of proving that employees are exempt from the overtime requirements. *Idaho Sheet Metal Works, Inc. v. Wirtz,* 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966); *Dalheim v. KDFW-TV,* 918 F.2d 1220 (5th Cir.1990). The exemption for the "professional" is construed narrowly against the employer. *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960); *Dalheim, supra.*

Section 213 extends this exemption to "any employee employed in a bona fide ... professional capacity." That term is defined in 29 C.F.R. § 541.3 as an employee:
  (a) Whose primary duty consists of the performance of:
  (1) Work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education and from an apprenticeship and from training in the performance of routine mental, manual, or physical processes ...
  ... and ...
  (b) Whose work requires the consistent exercise of discretion and judgment in its performance; and
  (c) Whose work is predominately intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work) and is of such character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; and
  (d) Who does not devote more than 20 percent of his hours worked in the workweek to activities which are not an essential part of and necessarily incident to the work described in paragraphs (a) through (c) of this section; and
  *2 (e) Who is compensated for services on a salary or fee basis of not less than $170 per week
  ...

That term is explained further in the regulations: "It includes those professions which have a recognized status and which are based on the acquirement of professional knowledge through prolonged study ." 29 C.F.R. § 541.300. Architecture is specified as a "learned" profession "generally" recognized as meeting the requirements: "The typical symbol of the professional training and the best prima facie evidence of its possession is, of course, the appropriate academic degree, and in these professions

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

an advanced academic degree is a standard (if not universal) prerequisite." 29 C.F.R. § 541.301(e)(1).

The defendants presented credible evidence through testimony. Washington, the Vice President of Hewitt-Washington, testified that the plaintiff was hired as a production/project architect for an annual salary of $27,000, although on two or three occasions he received extra pay for overtime. He testified that Tavassol performed the duties of an production/project architect while at Hewitt-Washington. Kurt Hagstette ("Hagstette), an architect from another firm, testified that he managed a team which included Tavassol for several months on the Sports Arena project. Hagstette indicated that Tavassol was assigned certain portions of the Sports Arena building and allowed to "run with it" with virtually no supervision. Hagstette testified that the plaintiff spent 100% of his time involved with the "CAD" machine when they worked together on that project.

The plaintiff testified that at the interview with Hewitt-Washington, he asked for pay based on an hourly rate but was offered pay based on an annual salary, which he accepted. He agreed that he received overtime pay on two or three occasions. He also testified that he performed nearly all of his work on the "CAD" and was always supervised. The plaintiff testified that labor codes on his time sheets indicating that he performed substantial periods of time on other architecture-related functions such as code research and specification writing were incorrect.

The testimony also established that the CAD machine is the vehicle used to produce architectural drawings in the modern architecture firm. Drawings are made on the CAD, and changes to those drawings are made on the CAD. The CAD provides those drawings in disk form as well as on paper. The testimony also established that all public bids in New Orleans and in Louisiana require drawings in CAD on computer disk. In sum, the work of the architect ends up in the CAD machine.

Assuming that the Court could find the testimony of Tavassol credible, he still clearly meets the definition of a "learned professional" under the regulations. Even if architecture was not identified as a learned profession in the regulations, consideration of the individual factors set forth in the regulations yields the same conclusion.

*3 Tavassol meets the first requirement of prolonged study with his degree in architecture. Neither the statute nor the regulations require that a professional be licensed. With regard to the second factor, Tavassol apparently argues the fact that he had a supervisor while at Hewitt-Washington and did not originate the drawings. However, this factor focuses on the exercise of discretion and judgment, not leadership or lack of supervision. It does not require that the employee be the "lead" professional. Therefore, any supervision does not detract from the clearly established fact that he did exercise the requisite discretion and judgment in the work he performed, even if the majority of that work was on the CAD machine.

Again assuming the majority of the work Tavassol was on the CAD machine, this work was predominately intellectual and varied in nature for purposes of the third factor. The end result of the CAD process was the equivalent of architect's drawings, which clearly meets the standard set forth in this factor.

The defendants have established the last two factors relevant to the professional exemption. As indicated previously, accepting as true the plaintiff's testimony that he worked nearly exclusively with the CAD machine, that piece of equipment is the centerpiece of the modern day architectural undertaking. While the plaintiff tried to raise suspicion from the fact that he occasionally received overtime, the overwhelming evidence and all of the credible evidence indicates that he was always a salaried rather than hourly employee while working at Hewitt-Washington. The fact that he received additional compensation on two or three occasions "is not inconsistent with the salary basis of payment." 29 C.F.R. § 541.118(b).

Additionally, the plaintiff's lack of credibility detracts from his entire case. His testimony was rife with basic inconsistencies attendant to persistent "explanations" as to why something was not as it appears. His memory was too convenient, and the "neutral" testimony of Hagstette directly contradicted the plaintiff's testimony on the key issues in this matter. In addition, the plaintiff felt comfortable about including major misrepresentations on his resume. This lack of truthfulness also impacts on the reliability of the hours indicated by him on his time sheets, which underlie his claim for overtime.

Accordingly,

IT IS ORDERED that judgment be entered in favor of the defendants, Hewitt- Washington & Associates,

1998 WL 751636  
(Cite as: 1998 WL 751636, *3 (E.D.La.))

Page 3

Architects-Planners, Inc., James R. Washington, Jr. and Lonnie Hewitt and against the plaintiff, Mohammad Tavassol, dismissing the plaintiff's claims with prejudice.

1998 WL 751636, 1998 WL 751636 (E.D.La.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

## **CERTIFICATION**

This is to certify that I have caused to be served the foregoing via U.S. Mail, certified mail, return receipt requested, this 21st day of April, 2004 to all counsel and pro se parties as follows:

Marc Mercier, Esq.
Beck & Eldergill, PC
447 Center Street
Manchester, CT  06040

*Pamela J. Coyne*
Pamela J. Coyne

P:\lit\pjc\586800\003\00039471.DOC