## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARTHUR ESTANISLAU, | : | CIVIL ACTION NO. |
| | : | 3:02CV1515 (PCD) |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MANCHESTER DEVELOPERS, LLC, | : | |
| | : | |
|     Defendant. | : | APRIL 21, 2004 |

## DEFENDANT'S MEMORANDUM IN OPPOSITION
## TO PLAINTIFF'S MOTION *IN LIMINE*
## REGARDING CREDIT FOR
## <u>LODGING PROVIDED TO PLAINTIFF</u>

Defendant, by and through undersigned counsel, submits this memorandum in opposition to Plaintiff's motion *in limine* seeking to preclude Defendant from offering any evidence of its claim to a credit against wages found to be due Plaintiff, if any, for the luxury apartment it provided him during his employment.

**Argument**

**Point I**

**DEFENDANT IS IN NO WAY PRECLUDED FROM
PRESENTING PROOF OF ITS ENTITLEMENT TO
A CREDIT FOR LODGING UNDER THE FLSA**

A.    **Plaintiff Has Asserted That The Reasonable Cost Of The Lodging Provided Him Is
Its Rental Value**

Plaintiff has argued in various pleadings that Defendant is not entitled to assert a credit for the lodging provided Plaintiff.

Plaintiff makes the following arguments for preclusion in his motion *in limine*:

-    Defendant has failed to maintain or disclose records of the "reasonable cost" of the lodging provided Plaintiff and, therefore may not claim a credit; (Plaintiff's memorandum in support,[1] pp. 2-4);

-    a credit for lodging may not be taken from overtime wages (Pl. mem., p. 4); and

-    Defendant has not sought a determination from the United States Department of Labor as to the "reasonable cost" of the lodging provided Plaintiff (P. mem., p. 5).

Section 3(m) of the FLSA provides that:

"Wage" paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees.

29 U.S.C. § 203(m).

---

[1]    Hereinafter "Pl. mem."

While Defendant seeks credit under this section against wages due for the lodging it provided Plaintiff, Plaintiff seeks to have the apartment added into his regular rate for purposes of increasing the applicable overtime rate which is calculated as one and one half times the regular rate (see Plaintiff's Expert Calculation of Damages, attached as Exhibit A). The federal regulations allow for this when lodging is understood to be an "addition" to the stipulated wage rate as Plaintiff claims rather than as a deduction:

> Section 3(m) applies to both of the following situations: (a) Where board, lodging, or other facilities are furnished in addition to a stipulated wage; and (b) where charges for board, lodging, or other facilities are deducted from a stipulated wage. The use of the word "furnishing" and the legislative history of section 3(m) clearly indicate that this section was intended to apply to all facilities furnished by the employer as compensation to the employee, regardless of whether the employer calculates charges for such facilities as additions to or deductions from wages.

29 C.F.R. § 531.29. See also 29 C.F.R. §531.37(b)("Where board, lodging, or other facilities are customarily furnished as addition to a cash wage, the **reasonable cost** of the facilities must be considered as part of the employee's regular rate of pay.").

The "reasonable cost" of lodging provided, whether it is asserted by Plaintiff as an addition to the regular rate for purposes of computing overtime or by the employer as a credit against wages due, must be computed under the same definition of "reasonable cost" set forth in the regulations either by its reasonable cost or fair market value, 29 CFR §531.3, or "upon the petition of any interested person," where a determination is made by the "Administrator." 29 CFR §531.4. Plaintiff asserted early on in this litigation that the value to be accorded the lodging

as a claimed addition to his regular rate was the actual rental value of the apartments he occupied and that amount was incorporated into his expert's report (see Exhibit A). Defendant agreed because the actual cost to it of furnishing Plaintiff with the apartment instead of to a member of the public is the actual rental price lost as a result. Since Plaintiff and Defendant agreed that the actual rental value was the appropriate "reasonable cost" value as set forth in the regulations, there was no reason for Defendant to present testimony, expert or otherwise, as to that value; the amount had been stipulated.

To the extent Plaintiff now claims there was no stipulation as to that value, he should be precluded from offering any evidence as to the "reasonable cost" of the lodging as an addition to his regular rate because his "reasonable cost" assertion is the same one accepted and asserted by Defendant and necessarily suffers from the same deficiencies, if any. However, since Defendant had every reason to believe the amount was agreed upon once Plaintiff disclosed his expert's report, Defendant should be given an opportunity to present any additional evidence that may be required, expert or otherwise, to establish that amount on its own behalf at trial. No further evidence may be required, however, because, as set forth below, all the requirements of Section 3(m) do not have to be met where the amount of the credit does not exceed the statutory weekly minimum wage for a forty hour week.

**B.    Credit May Be Taken From Minimum Or Overtime Wages And None Of The Section 3(m) Requirements Need Be Met Where The Credit Taken Does Not Exceed the Statutory Minimum Wage For A Forty Hour Week**

Plaintiff argues that Defendant may not assert as "reasonable cost" the rental value of the apartment he was provided with because it includes a "profit" to the employer. He further asserts that the credit taken by Defendant was unlawful because it was taken against overtime rather than the minimum wage. The federal regulations address this situation directly:

> (b)    It should not be assumed that because the term "wage" does not appear in section 7, all overtime compensation must be paid in cash and may not be paid in board lodging, or other facilities. There appears to be no evidence in either the statute or its legislative history which demonstrates the intention to provide one rule for the payment of the minimum wage and another rule for the payment of overtime compensation. The principles stated in paragraph (a) of this section are considered equally applicable to payment of the minimum hourly wage required by section 6 or of the wages required by the equal pay provisions of section 6(d), and to payment, when overtime is worked of the compensation required by section 7. . . .

29 C.F.R. § 531.27.

> (a)    It is the Administrator's opinion that deductions may be made, however, on the same basis in an overtime workweek as in nonovertime workweeks (see § 531.36), if their purpose and effect are not to evade the overtime requirements of the Act or other law, providing the amount deducted does not exceed the amount which could be deducted if the employee had only worked the maximum number of straight-time hours during the workweek. For example, in a situation where $1.60 an hour is the applicable minimum wage, if an employee is employed at a rate of $1.65 an hour (5 cents in excess of the minimum wage) the maximum amount which may be deducted from his wages in a 40-hour workweek for

> items such as tools, dynamite caps, miners' lamps, or other articles which are not "facilities" within the meaning of [section 3(m) of] the Act, is 40 times 5 cents or $2 (see § 531.36). Deductions in excess of this amount for such articles are illegal in overtime workweeks as well as in nonovertime workweeks. There is no limit on the amount which may be deducted for "board, lodging, or other facilities" in overtime workweeks (as in workweeks when no overtime is worked), provided that these deductions are made only for the "reasonable cost" of the items furnished. When such items are furnished at a profit, the amount of the profit (plus the full amount of any deductions for articles which are not facilities) may not exceed $2 in the example heretofore used in this paragraph. These principles assume a situation where bona fide deductions are made for particular items in accordance with the agreement or understanding of the parties.

29 C.F.R. §531.37(a).

To the extent Plaintiff is claiming that he may use the rental value as "reasonable cost" but Defendant may not because it includes a profit, that proposition finds no support in the statute or regulations. Moreover, as set forth in 29 C.F.R. § 531.37, even if the entire rental value was "profit" Defendant would still be entitled to a credit up to the amount by which Plaintiff's straight time pay exceeds the minimum wage amount for a forty hour workweek. Pursuant to the regulations, even if the entire amount of the credit was for profit rather than "reasonable cost", it would be allowable. This interpretation is reiterated in the February 16, 2001 DOL Opinion Letter attached as an exhibit to Plaintiff's motion *in limine* which states:

> An employer may not require employees to incur costs for such non-3(m) items if doing so cuts into their statutory minimum wage or overtime premium pay entitlements. Regulations, <u>29 CFR</u>

> §531.37 contains our interpretations on deductions from wages for non-3(m) items in overtime workweeks. Briefly, deductions for articles that do not qualify as "board, lodging, or other facilities" under FLSA section 3(m) may be made in an overtime workweek to the same extent as in a non-overtime workweek, if their purpose and effect are not to evade the overtime requirements of the FLSA or other law, and provided the situation involves bona fide deductions that are made for particular items according to an agreement or understanding between the employer and the employee (29 CFR §531.37(a)). If all these conditions are met, the total amount that an employer may deduct from an employee subject to overtime pay in an overtime workweek may not exceed the amount that could be deducted if the employee had only worked a 40-hour week.

The minimum wage in Connecticut was $6.70 per hour until December 31, 2002 and then $6.90 per hour from January 1, 2003 through December 31, 2003. Conn. Gen. Stat. § 31-58(j). Plaintiff was paid $12 per hour, $5.30 in excess of the statutory minimum from September 9, 2000 through October 26, 2001 and $12.50 per hour, $5.80 in excess of the statutory minimum thereafter. This means that, for a forty hour week, a deduction/allowance of up to $212 per week through October 26, 2001 and $232 per week from then on would be allowable even if the credit did not qualify for any treatment under section 3(m).

Further, to the extent deductions claimed under section 3(m) are limited to "reasonable cost" and, pursuant to the regulations, facilities "found by the Administrator[2] to be primarily for the convenience of the employer will not be recognized as reasonable" for purposes of section

---

[2]  Moreover, applying Plaintiff's strictly literal interpretation of the regulations, he would not be entitled to claim that the lodging provided him was "primarily for the benefit or convenience of the employer" absent a finding from the US Department of Labor to that effect.

3(m), 29 C.F.R. §531.3(d)(1), there is no need to make a determination of whether the lodging in this case was "primarily for the benefit or convenience of the employer" to the extent the credit amount allows for payment "free and clear" of the minimum wage amount for a forty hour week and can be applied outside of section 3(m). See 39 C.F.R. 531.37(a) and 2/16/01 Opinion Letter attached to Plaintiff's motion *in limine*.

The only evidence Defendant needs to establish entitlement to this credit then is evidence of the understanding of the parties for which testimony and exhibits have already been proposed, the sufficiency of which should be determined at trial.

### Point II

### DEFENDANT IS ENTITLED TO PRESENT PROOF OF A CREDIT FOR LODGING UNDER CONNECTICUT LAW

Plaintiff makes similar arguments for preclusion of a credit for lodging under Connecticut law.

The Connecticut wage law specifically provides:

**§ 31-60 Payment of less than minimum or overtime wage regulations.**

\* \* \*

(b)    The Labor Commissioner shall adopt such regulations . . . as may be appropriate to carry out the purposes of this part. Such regulations . . . shall recognize, as part of the minimum fair wage, gratuities . . . and shall also recognize deductions and allowances for the value of . . . lodging . . . supplied by the employer . . . .

The applicable Connecticut Department of Labor ("CT DOL") regulation entitled "Deductions and allowances for reasonable value of board and lodging" provides:

> (f) . . .When housing consisting of more than one room is provided for the employee and such circumstances are established in the hiring agreement, the labor commissioner shall establish a reasonable allowance for such housing and in establishing such allowance as it should apply in terms of part I of chapter 558 of the general statutes shall be guided by the prevailing rentals for similar quarters including those authorized by the local housing authority in privately or publicly financed housing. . . .

Conn. Agency Regs. §31-60-3.

Research of Connecticut cases has uncovered no Court decision interpreting the Connecticut statutory provision with respect to lodging or interpreting the CT DOL regulation with respect to lodging. To interpret the statute, the Court is bound to determine "the intent of the legislature and to construe the statute in a manner that effectuates that intent . . . . In seeking to discern that intent, we look to the words of the statute itself . . . ." *Petco Insulation Co. v. Crystal*, 231 Conn. 315, 321, 649 A.2d 790, 793 (1994). The words of the statutory provision regarding lodging under Connecticut's wage law make clear that the Legislature's intent was to make mandatory a deduction/allowance to employers against wages due for lodging provided to employees. The use of the word "shall" ordinarily express legislative requirements of a mandatory rather than a directory nature. *E.g. Angelsea Productions, Inc. v. Commission on Human Rights and Opportunities*, 236 Conn. 681, 689-70, 674 A.2d 1300, 1305-6 (1996); *State v. Metz*, 230 Conn. 400, 410, 645 A.2d 965, 970 (1994).

Plaintiff asserts that Connecticut law only allows for a lodging deduction/allowance from the minimum wage. However, unlike the provision of the statute directed at gratuities which mandates that the regulations "recognize [them], as part of the minimum fair wage," the provision directed to lodging mandates that deductions/allowances for their value be "recognize[d]" without any reference to the "minimum fair wage." Conn. Gen. Stat. § 31-60. The CT DOL regulation dictates that the determination of the amount "shall be guided by the prevailing rentals for similar quarters . . ." with no condition of application expressed.[3] Moreover, since the amount of the deduction/allowance is the same regardless of which part of wages due it is applied against, any requirement that it apply solely against the minimum wage due makes sense only if, like under the FLSA for non-section 3(m) items, see, supra, p. 7, it is intended as a ceiling so that a deduction/allowance which cuts into the statutory minimum rate for a forty hour week cannot be made. The credit sought by Defendant does not do so.

Plaintiff has also argued again that the CT DOL regulation requires that the amount of the credit taken for lodging be approved by the Connecticut Labor Commissioner. By letter dated March 2, 2002 (attached as Exhibit B), Defendant specifically requested approval by the CT DOL for the actual credit amounts applied for the lodging provided to Plaintiff. The Connecticut

---

[3]       Neither does the Connecticut wage law provide for the value of lodging to be added as part of the employee's regular rate for determining the applicable overtime rate under any circumstances. Under Connecticut law, "regular rate" for determining the applicable overtime rate includes only amounts "paid," Conn. Gen. Stat. § 31-76b; Conn. Agency Regs. § 31-62-D4 and there is no provision for inclusion of "in-kind" amounts as there is under other Connecticut labor provisions, e.g., for determining wages for purposes of computing the unemployment benefit rate, Conn. Gen. Stat. § 31-222(b)(1). Further, no exemption from recognition of a deduction/allowance for lodging provided is made under Connecticut law based upon who it is determined to be primarily for the convenience of.

Department of Labor's response (Exhibit C) was that "[a]s long as it is not a deduction from wages and is used as a credit towards the minimum wage, we would not have to approve the amount as long as it meets the guidelines of subsection (f) [of Conn. Agency Regs. § 31-60-3]."

The credit taken by Defendant for the lodging provided Plaintiff never resulted in payment to him of less than statutory weekly minimum wage for forty hours and was guided by prevailing rentals in accordance with the regulation. According to the CT DOL then, its approval was not required. Indeed, the suggestion in the regulation that the "labor commissioner shall establish a reasonable allowance for such housing" makes sense when it is the DOL that is adjudicating a wage issue under, e.g., Conn. Gen. Stat. §31-59, not when the issue has been brought to Court. To the extent Mr. Pechie's letter differentiates between deduction and credit[4], its meaning is not discernable by reference to the statute which mandates that the regulations recognize a "deduction" or the regulation which is captioned as "Deductions and allowances for reasonable value of board and lodging." To the extent the regulation is contrary to the statute, it is not entitled to the Court's deference because it has not been passed upon by any Court. See *Gaddam v. Rowe*, 44 Conn. Supp. 268, 272, 684 A.2d 286, 288 (1995). See *Davis v. Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995) (agency's construction of statute not entitled to special deference unless its determination of question of law previously has been subject of

---

[4]   By definition, a "credit" is a "deduction from an amount otherwise due." *Webster's Third New International Dictionary*, Unabridged.

judicial review). To the extent Plaintiff claims that the Pechie letter is an interpretation contrary to the statute and the regulation, it too would not entitled to the Court's deference. *Id.*

Defendant is entitled to present evidence of its entitlement to a deduction/allowance for lodging provided Plaintiff under Connecticut law.

### **CONCLUSION**

For all the foregoing reasons, Plaintiff's motion *in limine* as to evidence of Defendant's entitlement to a credit for lodging provided Plaintiff should be denied.

Done at Bridgeport, Connecticut this ___2¹ˢᵗ___ day of April, 2004.

Loraine M. Cortese-Costa
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT  06604
(203)366-3438
Federal Bar No.ct3984
ATTORNEYS FOR DEFENDANT

## **CERTIFICATION**

This is to certify that I have caused to be served the foregoing via U.S. Mail, certified

mail, return receipt requested, this 21st day of April, 2004 to all counsel and <u>pro</u> <u>se</u> parties as

follows:

> Marc Mercier, Esq.
> Beck & Eldergill, PC
> 447 Center Street
> Manchester, CT  06040

_Loraine M. Cortese-Costa_
Loraine M. Cortese-Costa

P:\lit\LCC\586800\003\00039478.DOC

# EXHIBIT A

ACTUARIAL

LITIGATION

SERVICE

*94 Stagecoach Lane*
*Newington, CT 06111-5314*
*(860) 667-3649*

*Sheldon Wishnick FSA, MAAA, FLMI*

## **ACTUARIAL REPORT AND ANALYSIS**

Lost Overtime Earnings
for
Mr. Arthur Estanislau

Prepared for Attorney Marc Mercier

I am being compensated at the hourly rate of $225 for the time spent preparing this report and providing testimony. All data was received from the client and the retaining attorney in the form of interviews and questionnaires. Amounts were derived from reasonable assumptions and standard actuarial techniques.

*Sheldon Wishnick*

January 2003

*Actuarial Litigation Service is an actuarial consulting firm whose practice is concentrated in the measurement of earnings capacity and economic losses in matters of major litigation. Concepts and projections are explained in language that is easily understood and applied.*

ACTUARIAL

LITIGATION

SERVICE

Sheldon Wishnick FSA, MAAA, FLMI
94 Stagecoach Lane
Newington, CT 06111-5314

Telephone: (860) 667-3649
Fax:      (860) 667-0083
E-Mail:   ActLit@aol.com

January 9, 2003

Marc Mercier, Esquire
Beck & Eldergill, P.C.
447 Center Street
Manchester, CT 06040

Dear Attorney Mercier,

I have completed my analysis of the losses incurred by Mr. Arthur
Estanislau as a result of the improper overtime payments in 2000 through
2002 from his employer, Manchester Developers, LLC. I estimate the
present value of his losses to be either $74,062 or $98,404, depending on the
alternative selected.

The first alternative develops losses using 1.5 times the base income rate
while alternative 2 adds the value of rent to the base rate.

All calculations have been done using appropriate methods and assumptions
for evaluating losses of this type.

Please review this report with Mr. Estanislau and let me know of any
questions.

Sincerely,

Sheldon Wishnick

# CASE SUMMARY AND INDEX

## Case Summary
Arthur Estanislau had been working at Manchester Developers in 2000 through 2002 where it is alleged that he was not properly paid for overtime hours. This report documents the total economic losses incurred as a result of this policy.

## Index
**Page 1**: Loss Summary
The calculation results for all losses are summarized on this page. Alternative losses are shown that illustrate results under different base income rate assumptions.

**Page 2:** Methods and Assumptions
General methods and assumptions incorporated in the calculations to develop the economic losses are enumerated here by category.

**Page 3**: Income Loss
The actual unpaid overtime income is estimated under alternative assumptions.

**Page 4** Curriculum Vitae

**Page 5:** Expert Assignments

Actuarial Litigation Service                    January 9, 2003

# SUMMARY

### Alternative 1

| | |
|---|---|
| Total Overtime Wages | 66,751 |
| Lump Sum Tax Adjustment | 7,311 |
| **Total** | **$74,062** |

### Alternative 2

| | |
|---|---|
| Total Overtime Wages | 88,691 |
| Lump Sum Tax Adjustment | 9,714 |
| **Total** | **$98,404** |

Alternative 1 illustrates losses at 1.5 multiplied by the actual base rate.
Alternative 2 illustrates losses at 1.5 multiplied by the base rate + imputed rent.

Actuarial Litigation Service                    09-Jan-03

# METHODS AND ASSUMPTIONS

## Overtime Loss

1. Overtime income losses are calculated assuming payments would have been received at the end of each month. These amounts are accumulated with interest to the date of determination, December 31, 2002.
2. The periodic interest rate used to compute past losses is the actual historic experience for U.S. Treasury Bills, one-year constant maturities.
3. The actual unpaid hours were provided from September 9 2000 through November 20, 2002.
4. The overtime was calculated as 1.5 of the base rate times the monthly overtime hours worked using alternative calculations.
5. In alternative 1, the hourly base rate is $12 through September 12, 2001 and $12.50, thereafter.
6. In alternative 2, the alternative 1 rate is supplemented by the hourly equivalent of the monthly rent of $1,025 to March 1, 2002 and $1,125, thereafter.

## Lump Sum Income Tax Adjustment

1. Income received in a lump sum will incur tax at a higher rate than when incurred over a working lifetime.
2. The adjustment shown in the summary is an estimate of the dollar value of the difference using 2001 tax rates.

# Income Loss Development

**Page 3**

| | <<< Hourly Rate >>> | | | <<< Hourly Rate + Rent >>> | | |
|---|---|---|---|---|---|---|
| | OT Loss | Interest Accrued | Accum Loss | OT Loss | Interest Accrued | Accum Loss |
| **2000** | | | | | | |
| September | 2,196 | 158 | 2,354 | 2,917 | 210 | 3,128 |
| October | 3,492 | 233 | 3,725 | 4,639 | 310 | 4,949 |
| November | 3,672 | 226 | 3,898 | 4,878 | 300 | 5,178 |
| December | 5,508 | 310 | 5,818 | 7,318 | 412 | 7,729 |
| 2000 Total | 14,868 | 927 | 15,795 | 19,753 | 1,232 | 20,985 |
| **2001** | | | | | | |
| January | 3,402 | 392 | 3,794 | 4,520 | 521 | 5,041 |
| February | 2,124 | 233 | 2,357 | 2,822 | 310 | 3,132 |
| March | 3,168 | 330 | 3,498 | 4,209 | 439 | 4,648 |
| April | 3,654 | 361 | 4,015 | 4,854 | 480 | 5,334 |
| May | 3,240 | 303 | 3,543 | 4,304 | 402 | 4,707 |
| June | 2,592 | 228 | 2,820 | 3,444 | 303 | 3,747 |
| July | 2,520 | 208 | 2,728 | 3,348 | 277 | 3,625 |
| August | 1,143 | 88 | 1,231 | 1,519 | 117 | 1,636 |
| September | 1,179 | 85 | 1,264 | 1,563 | 113 | 1,676 |
| October | 2,213 | 148 | 2,360 | 2,910 | 194 | 3,105 |
| November | 3,413 | 210 | 3,622 | 4,489 | 276 | 4,765 |
| December | 1,584 | 89 | 1,674 | 2,084 | 117 | 2,201 |
| 2001 Total | 30,231 | 2,677 | 32,908 | 40,065 | 3,550 | 43,616 |
| **2002** | | | | | | |
| January | 1,969 | 227 | 2,196 | 2,590 | 299 | 2,888 |
| February | 2,016 | 221 | 2,237 | 2,651 | 291 | 2,942 |
| March | 2,006 | 209 | 2,216 | 2,639 | 275 | 2,914 |
| April | 900 | 89 | 989 | 1,212 | 120 | 1,331 |
| May | 2,991 | 280 | 3,270 | 4,026 | 376 | 4,402 |
| June | 1,828 | 161 | 1,989 | 2,461 | 217 | 2,678 |
| July | 1,200 | 99 | 1,299 | 1,615 | 134 | 1,749 |
| August | 1,753 | 136 | 1,889 | 2,360 | 183 | 2,543 |
| September | 1,003 | 72 | 1,075 | 1,350 | 97 | 1,448 |
| October | 356 | 24 | 380 | 480 | 32 | 512 |
| November | 478 | 29 | 508 | 644 | 40 | 683 |
| December | 0 | 0 | 0 | 0 | 0 | 0 |
| 2002 Total | 16,500 | 1,547 | 18,048 | 22,027 | 2,063 | 24,090 |
| **Grand Total** | 61,599 | 5,152 | $66,751 | 81,845 | 6,846 | $88,691 |

Actuarial Litigation Service

09-Jan-03

## Estanislau v. Manchester Developers, LLC
### Wage Calculation

**Year 2000:**
Based on $12.00 per hour regular time, $18.00 per hour overtime.

Time Period / Hours                     Wages Due
September 9 -13

estimated hours worked = 50
estimated hours paid =   40
estimated o.t. hours owed = 10          $     180.00

September 14 - 27

estimated hours worked = 192
estimated hours paid =   80
estimated o.t. hours owed = 112         $ 2,016.00

September 28 - October 11

estimated hours worked = 172
estimated hours paid =   80
estimated o.t. hours owed = 92          $ 1,656.00

October 12 - 25

estimated hours worked = 182
estimated hours paid =   80
estimated o.t. hours owed = 102         $ 1,836.00

October 26 - November 8

estimated hours worked = 182
estimated hours paid =   80
estimated o.t. hours owed = 102         $ 1,836.00

November 9 - 22

estimated hours worked = 182
estimated hours paid =   80
estimated o.t. hours owed = 102         $ 1,836.00

November 22 - December 6

estimated hours worked = 182
estimated hours paid =   80
estimated o.t. hours owed = 102         $ 1,836.00

December 7- 20

estimated hours worked = 182
estimated hours paid =   80
estimated o.t. hours owed = 102        $ 1,836.00

December 20 - January 3, 2001

estimated hours worked = 182
estimated hours paid =   80
estimated o.t. hours owed = 102        $ 1,836.00

**2000 Estimated Overtime Wages:**
826 hours x $12.00 per hour x 1.5 =    $14,886.00

**Year 2001**

January 4-17

estimated hours worked = 182
estimated hourse paid =   80
estimated o.t. hours owed = 102        $ 1,836.00

January 18 - 31

estimated hours worked = 182
o.t. hours paid = 15
estimated o.t. hours owed = 87         $ 1,566.00

February 1 - 14
estimated hours worked = 182
o.t. hours paid = 40
estimated o.t. hours owed = 62         $ 1,116.00

February 15-28

estimated hours worked = 136
o.t. hours paid = 0
estimated o.t. hours owed = 56         $ 1,008.00

March 1 - 14

estimated hours worked = 224
o.t. hours paid = 72
estimated o.t. hours owed = 72         $ 1,296.00

March 15 - 28

estimated hours worked = 224

2

o.t. hours paid = 40
estimated o.t. hours owed = 104          $ 1,872.00

March 29 - April 11

estimated hours worked = 224
o.t. hours paid = 36
estimated o.t. hours owed = 108          $ 1,944.00

April 12 - 25

estimated hours worked = 196
o.t. hours paid = 21
estimated o.t. hours owed = 95           $ 1,710.00

April 26 - May 9

estimated hours worked = 168
o.t. hours paid = 10
estimated o.t. hours owed = 78           $ 1,404.00

May 10 - 23

estimated hours worked = 182
o.t. hours paid = 0
estimated o.t. hours owed = 102          $ 1,836.00

May 24 - June 6

estimated hours worked = 140
o.t. hours paid = 0
estimated o.t. hours owed = 60           $ 1,080.00

June 7 - 20

estimated hours worked = 74
o.t. hours paid = 0
estimated o.t. hours owed = 32           $    576.00

June 21 - July 4

estimated hours worked = 150
o.t. hours paid = 0
estimated o.t. hours owed = 52           $  936.00

July 5 -18

estimated hours worked = 178
o.t. hours paid = 16
estimated o.t. hours owed = 82           $ 1,476.00

July 19 - August 1

estimated hours worked = 182
o.t. hours paid = 44
estimated o.t. hours owed = 58          $ 1,044.00

August 2 - 15

estimated hours worked = 162
o.t. hours paid = 38.5
estimated o.t. hours owed = 43.5        $  783.00

August 16 - 29

estimated hours worked = 146
o.t. hours paid = 46
estimated o.t. hours owed = 20          $  360.00

August 30 - September 12

estimated hours worked = 178
o.t. hours paid = 45.5
estimated o.t. hours owed = 52.5        $  945.00

**NEW RATE OF PAY APPLICABLE HEREAFTER OF $12.50 PER HOUR**
Based on $12.50 per hour regular time, $18.75 per hour overtime

September 13 - 26

estimated hours worked = 126
o.t. hours paid = 33.5
estimated o.t. hours owed = 12.5        $  234.37

September 27 - October 10

estimated hours worked = 172
o.t. hours paid = 36
estimated o.t. hours owed = 56          $ 1,050.00

October 11 - 24

estimated hours worked = 182
o.t. hours paid = 40
estimated o.t. hours owed = 62          $ 1,162.50

October 25 - November 7

estimated hours worked = 182
o.t. hours paid = 37.5
estimated o.t. hours owed = 64.5        $ 1,209.38

4

November 8 - 21

estimated hours worked = 182
o.t. hours paid = 39.5
estimated o.t. hours owed = 62.5          $ 1,171.87

November 22 - December 5

estimated hours worked = 182
o.t. hours paid = 47
estimated o.t. hours owed = 55          $ 1,031.25

December 6 - 19

estimated hours worked = 156
o.t. hours paid = 31
estimated o.t. hours owed = 45          $  843.75

December 20 - January 2, 2002

estimated hours worked = 162
o.t. hours paid = 42.5
estimated o.t. hours owed = 39.5          $  740.62

**2001 Estimated Overtime Wages Claim**

1,266 hours x $12.00 per hour x 1.5 =    $22,788.00

397 hours x $12.50 per hour x 1.5 =      $ 7,443.75

Total: $30,231.75

**Year 2002**

Based on $12.50 per hour regular time, $18.75 per hour overtime

January 3 - 16

estimated hours worked = 182
o.t. hours paid = 51.5
estimated o.t. hours owed = 50.5          $  946.88

January 17 - 30

estimated hours worked = 172
o.t. hours paid = 37.5
estimated o.t. hours owed = 54.5          $ 1,021.88

5

January 31 - February 13

estimated hours worked = 182
o.t. hours paid = 51
estimated o.t. hours owed = 51          $   956.25

February 14 - 27

estimated hours worked = 166
o.t. hours paid = 29.5
estimated o.t. hours owed = 56.5        $ 1,059.38

February 28 - March 13

estimated hours worked = 146
o.t. hours paid = 18
estimated o.t. hours owed = 48          $   900.00

March 14 - 27

estimated hours worked = 172
o.t. hours paid = 33
estimated o.t. hours owed = 59          $ 1,106.25

March 28 - April 10

estimated hours worked = 172
o.t. hours paid = 44
estimated o.t. hours owed = 48          $   900.00

April 11 - 24

Calculation unavailable                      -0-

April 25 - May 8

estimated hours worked = 172
o.t. hours paid = 34
estimated o.t. hours owed = 58          $ 1,087.50

May 9 - 22

estimated hours worked = 172
o.t. hours paid = 37.5
estimated o.t. hours owed = 54.5        $ 1,021.88

May 23 - June 5

estimated hours worked = 172
o.t. hours paid = 45
estimated o.t. hours owed = 47          $   881.25

6

June 6 - 19

estimated hours worked = 172
o.t. hours paid =45.5
estimated o.t. hours owed = 46.5        $   871.88

June 20 - July 3

estimated hours worked = 172
o.t. hours paid = 41
estimated o.t. hours owed = 51          $   956.25

July 4 - 17

estimated hours worked = 170
o.t. hours paid = 36.5
estimated o.t. hours owed = 53.5        $ 1,003.13

July 18 - 31

estimated hours worked = 144
o.t. hours paid = 53.5
estimated o.t. hours owed = 10.5        $   196.88

August 1 - 14

estimated hours worked = 160
o.t. hours paid = 51.5
estimated o.t. hours owed = 28.5        $   534.38

August 15 - 28

estimated hours worked = 180
o.t. hours paid = 35
estimated o.t. hours owed = 65          $ 1,218.75

August 29 - September 11

estimated hours worked = 136
o.t. hours paid = 32.5
estimated o.t. hours owed = 23.5        $   440.63

September 12 - 25

estimated hours worked = 146
o.t. hours paid = 36
estimated o.t. hours owed = 30          $   562.50

September 26 - October 9

estimated hours worked = 118
o.t. hours paid = 19.5
estimated o.t. hours owed = 18.5          $  346.88

October 10 - 23

estimated hours worked = 102
o.t. hours paid = 17.5
estimated o.t. hours owed = 0.5           $    9.38

October 24 - November 6

Calculation unavailable                          -0-

November 7 - 20

estimated hours worked = 110
o.t. hours paid = 4.5
estimated o.t. hours owed = 25.5          $  478.13


## 2002 Estimated Overtime Wages Claim

8880 hours x $12.50 per hour x 1.5 =     $16,500.00

**Total Estimated Claim:**                **$61,599.75**

Calculation does not include reasonable value of housing, interest, double damages, or attorneys' fees. The claim is subject to revision.

Estanislau\Damageshours.doc

8

ACTUARIAL

LITIGATION

SERVICE

Sheldon Wishnick FSA, MAAA, FLMI
94 Stagecoach Lane
Newington, CT 06111-5314

Telephone:  (860) 667-3649
Fax:       (860) 667-0083
Web Site: www.actlitserv.com

# Curriculum Vitae

## EDUCATIONAL BACKGROUND

Fellow, Society of Actuaries
Member, American Academy of Actuaries
Fellow, Life Management Institute
Member, National Association of Forensic Economics

BA Mathematics, Pace University New York, NY

## PROFESSIONAL EXPERIENCE

**Consulting Firms:**
- **Actuarial Litigation Service**

  - Valuation of financial losses in legal matters
  - Expert witness testimony

- **Associated Pension Actuaries**

  - Pension plan valuations
  - Participant benefit calculations

- **Hay-Huggins**
  - Mathematical profitability modeling
  - Insurance product design

**Insurance Companies:**
- **MassMutual**
  - Financial forecasting and analysis of gain by insurance product line
  - Allocation and analysis of financial returns by investment type
- **American United Life**
  - Financial maintenance of annuity products.
  - Calculation of premiums, reserves and annual statement support
- **Aetna Life and Casualty**
  - Pension plan design and review
  - Actuarial assignments in life, health and group insurance
- **Metropolitan Life**
  - Calculation of premiums, claims and reserves for personal health insurance

(over)

**Publications:**

| | |
|---|---|
| *Actuarial Evidence in Litigation* | |
| Employee Rights Quarterly | Autumn 2001 |
| *Personal Injury: What's It Worth?* | |
| MA Bar Association Lawyers Journal | April 1999 |
| *The Truth Revealed: A Peek Inside the Financial Expert's Report* | |
| New York State Bar Journal | February 1998 |
| *Damage Analysis: The Impact of Assumptions* | |
| CT Bar Assn, Labor/Employment Law Quarterly | Fall 1997 |
| *Myths About Financial Experts* | |
| Connecticut Law Tribune | August 4, 1997 |
| *Shedding Light on the Financial Witness* | |
| MA Bar Association Lawyers Journal | December 1996 |
| *What's it Worth? Send for the Actuary!* | |
| MA Bar Association Lawyers Journal | October 1996 |
| *Loss, and Finds* | |
| Connecticut Law Tribune | July 22, 1996 |

**Notes:** The **Society of Actuaries** is an educational, research and professional membership organization. The status of fellowship is earned by passing exams requiring knowledge in the following areas (among others):

| | | |
|---|---|---|
| Probability & statistics | Compound interest | Actuarial mathematics |
| Risk Theory | Financial management | Pension valuation |
| Actuary as expert witness | Social Insurance | Employee benefits |

Membership in the **Academy of Actuaries** is awarded to Fellows of the Society of Actuaries who have completed the professional experience requirements.

Fellowship in the **Life Management Institute** is earned by passing exams related to the structure and operation of life insurance companies, the types of life, health and disability insurance available, actuarial calculations and numerous miscellaneous topics.

The **National Association of Forensic Economics** is an association of over 800 professionals who practice in the field of forensic economics. Its goals are to promote research and continuing professional development.

ACTUARIAL

LITIGATION

SERVICE

*94 Stagecoach Lane*
*Newington, CT 06111-5314*
*(860) 667-3649*

*Sheldon Wishnick FSA, MAAA, FLMI*

## EXPERT WITNESS ASSIGNMENTS

| Case Information | Involvement |
|---|---|
| Dr. Lobo v. Griffin Hospital | Deposed |
| Ralph Corrado v Caterpillar, Inc. | Deposed |
| Ed & Betty Trider v Am Express | Deposed and Testified |
| Robert Vece v Design Air | Deposed |
| Linda Dunn v Emkay | Deposed |
| Frank Fiaschetti v Peter Vannucci | Deposed |
| Frank Fiaschetti v Nash Engineering | Testified |
| Paul Longo v Peter Zilahy | Deposed |
| William Blake v Pratt & Whitney | Deposed |
| Joseph Zysk v Pratt & Whitney | Testified |
| Lorna Brissett-Romans v Virgin Air | Deposed |
| Edward Neff v CIGNA | Deposed and Testified |
| Carolyn Rataic v CIGNA | Testified |
| George Rood v State of CT et al | Deposed |
| Marie Fischetti v. Josef Lobeski | Deposed |
| Raymond Rusnak v. Bridgeport Housing | Deposed |
| Stephen Hendler v Intelecom | Deposed |
| Carl Willis v. CTW | Deposed |
| John Kotos v Allwaste Environmental | Deposed |
| Robert Clark v. State of New York | Deposed and Testified |
| Susan Tinder v. Yale New Haven Hosp. | Deposed |
| John Fahey v. Kodak | Deposed |
| Gail Kayajian v. General Electric | Deposed |
| Michael Rinaldi v. E&F Construction | Deposed and Testified |
| Donald Roberton v. Citizens Utilities | Deposed |
| Nancie Balser v. Town Hill School | Deposed and Testified |
| Keith Dalling v. Aetna Insurance | Deposed |
| Clarence Reynolds v. Northeast Utilities | Testified |
| Joy Banach v. First Union Bank | Deposed |
| Leon Hanna v. Apricots Restaurant | Deposed |
| Marie Piraneo v. Trumbull Board of Ed | Testified |
| William Garay, Jr. v. Norden Systems | Deposed |
| Edward VanDeventer v. GE Capital | Deposed |
| Stella Chertkova v. Orion Capital | Deposed |
| Dudrow, et al v. Ernst & Young | Deposed and Testified |
| McGillivray v. Mailhot Industries | Deposed |

(over)

## EXPERT WITNESS ASSIGNMENTS
(Continued)

| Case Information | Involvement |
| --- | --- |
| Martin v. Mitler, M.D. | Deposed |
| Gary St. George v. Inline Plastics | Deposed |
| Elise Jahne v. Atlas Oil | Testified |
| Polny v. Greyhound | Testified |
| Fahim v. CIGNA | Testified |
| Esposito v. Connecticut College | Deposed |
| Carvalho v. International Bridge | Deposed |
| Aye v. Mary Martin | Deposed |
| Lee v. Axiom Labs | Testified |
| Desibio v. Nassau County Bridge | Deposed twice |
| Wood v. CIGNA | Deposed |
| Braunstein v. Manero's | Deposed |
| Parta v. Gabianelli | Deposed |
| Mendoza v. Mendoza | Testified |
| Dragon v. Dragon | Testified |
| Giannecchini v. San Rafael Hospital | Deposed |
| Hurowitz v. Elrac, Inc. | Deposed |
| West v. Dow Chemical | Deposed |
| LeMay v. Town of Bloomfield | Testified |
| Persky v. Cendant Corp. | Deposed and Testified |
| Mary Carrano v. Yale NH Hospital | Deposed |
| *Mendes v. Dekker, MD* | *Deposed* |
| DiMartino v. State of CT | Testified |
| *Marano v. Providence Washington* | *Testified* |
| Edwin Cortes, Admin v. Bristol Hospital | Deposed |
| Abraham Rubel v. Mr. & Mrs. Wainright | Deposed and Testified |
| John Fenner v. Hartford Courant | Testified |
| *Schlemmer v Terhaar Builders* | *Testified* |
| Crain v. Windham Hospital | Deposed |
| Keating v. Suffolk County Public Works | Deposed and Testified |
| Stewart v. Cendant Mobility | Testified |
| Lanigan v. NYS Bd of Education | Testified |
| Applegate et al v. Sunoco | Deposed |
| Schiano v. Brancato | Deposed |
| Tracy v. Borough of Old Tappan | Testified |
| Palma v. Pharmacia Communications | Testified |
| Newell v. United Technologies | Deposed |

# EXHIBIT B



# DURANT, NICHOLS, HOUSTON, HODGSON & CORTESE-COSTA, P.C.

ATTORNEYS AT LAW

Loraine M. Cortese-Costa**
Natale V. Di Natale**
E. Terry Durant*
Lisa Grasso Egan
Christopher M. Hodgson
Donald F. Houston
David J. Kelly**
Pamela J. Coyne
Peter Dagostine

Also admitted in Virginia*
Also admitted in New York**

1057 Broad Street
Bridgeport, Connecticut 06604-4219
Tel. (203) 366-3438     Fax (203) 384-0317
www.durantnic.com

**Of Counsel**
George N. Nichols

**Paralegals**
Clara Cuneo Koczi
Megan L. Krom

March 2, 2004

*Via Federal Express*

Mr. Gary Pechie, Director
Wage and Workplace Standards Division
Connecticut Department of Labor
200 Folly Brook Boulevard
Wethersfield, Connecticut  06109

  Re: <u>Credit for Lodging</u>

Dear Mr. Pechie:

  My client, Manchester Developers, LLC, maintains an apartment complex in Manchester, Connecticut, located at 39 Buckland Street. The employer provides certain of its employees with apartments and takes a credit for that lodging against wages due. It has been argued by a former employee of Manchester Developers, in a federal court action seeking collection of allegedly unpaid wages, that Manchester Developers is not entitled to the credit because, *inter alia*, the credit amount was not approved by the Connecticut Department of Labor. The credit amounts are:  $432.00 bi-weekly in 2000 through October 2001; and $450.00 bi-weekly from the end of October 2001 through the present for a two bedroom apartment at the complex. Without implying that the former employee's interpretation of Connecticut law is correct or that the credit meets other requirements under Connecticut law, would the Department of Labor approve these credit amounts?

  As always, your prompt response is appreciated and I have enclosed a pre-paid overnight envelope for that purpose.

    Very truly yours,

    Loraine M. Cortese-Costa

LMC-C/jvd
Enclosure

# EXHIBIT C



CONNECTICUT
**DEPARTMENT**
**OF LABOR**

*Opportunity ★ Guidance ★ Support*

*Wage And Workplace Standards Division*

| Wage Payment | Working Conditions |
|---|---|
| (860) 263-6790 | (860) 263-6791 |
| Minimum Wage/Overtime | Public Contract Compliance |
| (860) 263-6790 | (860) 263-6790 |
| Website | Fax |
| www.ctdol.state.ct.us | (860) 263-6541 |

March 3, 2004

Loraine M. Cortese-Costa, Esq.
Durant, Nichols, Houston,
Hodgson & Cortese-Costa, P.C.
1057 Broad Street
Bridgeport, CT 06604-4219

Dear Ms. Cortese-Costa:

This letter is in response to your request for an informal opinion on credit for lodging. This informal opinion is based solely on the information you submitted on March 2, 2004.

The regulation that covers this matter is 31-60-3 deductions and allowances for reasonable value of board and lodging, specifically subsection (f). That subsection states in part, "..when housing consisting of more than one room is provided for the employee and such circumstances are established in the hiring agreement, the labor commissioner shall establish a reasonable allowance for such housing..."

As long as it is not a deduction from wages and is used as a credit towards the minimum wage, we would not have to approve the amount as long as it meets the guidelines of subsection (f).

I trust this answers your inquiry.

Sincerely,

Gary K. Pechie
Director
GKP:pr