UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARTHUR ESTANISLAU, | : | CIVIL ACTION NO. |
| | : | 3:02CV1515 (PCD) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MANCHESTER DEVELOPERS, LLC, | : | |
| | : | |
| Defendant. | : | MAY 11, 2004 |

### DEFENDANT'S MEMORANDUM OF LAW
### IN REPLY TO PLAINTIFF'S OPPOSITION TO ITS
### MOTION *IN LIMINE* TO PRECLUDE PLAINTIFF'S
### WAGE CALCULATION CALENDAR AND WAGE CALCULATION

Defendant, by and through its undersigned counsel, submits this memorandum of law in

reply to Plaintiff's Opposition to Defendant's Motion *in Limine*.[1]

### Argument

Plaintiff acknowledges that the proposed exhibits contain "computational errors," which

appear for the most part to have been corrected.[2]  Plaintiff does not acknowledge the invalid and

incorrect methods and assumptions regarding paid time off but appears to have corrected those as

well.  Notwithstanding Plaintiff's attempt to present mathematically correct exhibits to the Court,

---

[1] Hereinafter "Pl. opp."
[2] Plaintiff's revised wage calculation calendar still contains mathematical errors.  For example, Plaintiff's revised wage calculation calendar claims a total of 80 hours worked for the pay period ending June 20, 2001 but also claims that 38 of those hours are due and owing as overtime.

both his wage calculation calendar (proposed Exhibit 27) and his wage calculation (proposed Exhibit 26), are unreliable and inadmissible.

Plaintiff now claims that his wage calculation calendar and his wage calculation are "merely the distillation and extrapolation from evidence, including Defendant's own time sheets, time card, and earnings query . . . ." (Pl. opp., p. 4.)  However, neither proposed exhibit bears any factual similarity to the time sheets or time cards.  For example, on April 23, 2001, Plaintiff's wage calculation calendar states that Plaintiff worked from 8:00 a.m. to 12:00 a.m., for a total of 16 hours.  (*See* Exhibit A, attached hereto).  His signed and certified time sheet for that day states that he worked from 8:00 a.m. to 12:00 and from 1:00 p.m. to 6:00 p.m. for a total of 10 hours, (*see* Exhibit B, attached hereto); and his time card has a punch in time of 8:48 a.m. and a punch out time of 4:22 p.m., for a total of 7.6 hours.  (*See* Exhibit C, attached hereto.)  A thorough review and comparison of the exhibits, which Plaintiff claims as the basis for his purported summary, lead to one conclusion -- neither is a summary of any admissible evidence -- both contain exaggerated claims of hours worked, without any supporting documentation.  *See Sportmart, Inc. v. Spirit Manufacturing, Inc.*, No. 97C7120, 2000 WL 343467, at * 4 (N.D. Ill. 2000) (Leinenweber, J.) (copy attached) (concluding that the plaintiff's summary chart of estimated damages prepared by the plaintiff's attorney was inadmissible "for the practical reason that documents prepared specifically for use in litigation are 'dripping with motivations to misrepresent'") (quoting *Hoffman v. Palmer*, 129 F.2d 976, 991 (2d Cir. 1942)).

Similar to the instant case, the plaintiff in *Sportmart, Inc.* "admitted his ignorance of the procedures used to calculate the numbers" contained in his damages summary, which were the "bulk of Sportmart's evidence on damages." *Id.* Just as the court in *Sportmart, Inc.*, found the plaintiff's damages summary to be inadmissible, Defendant requests the Court to similarly conclude that Plaintiff's exaggerated claims of hours work, which completely lack a documentary source and which were prepared by his attorney solely for purposes of litigation, are not summaries pursuant to Fed. R. Evid. 1006 and are inadmissible at trial.

Notwithstanding the foregoing, should the Court conclude that Plaintiff's proposed exhibits are truly pedagogical devices, Defendant requests this Court to preclude Plaintiff from introducing them until all after relevant testimony is given, *U.S. v. Citron*, 783 F.2d 307, 317 n. 10 (2d Cir. 1986) (summary charts must fairly represent and summarize the evidence on which they are based), and not to admit them as evidentiary exhibits or allow the jury to treat them as such. *Pierce v. Winch Co.*, 753 F.2d 416, 431 (5th Cir. 1985) (pedagogical devices are not evidence and should not be sent to jury room without consent of all parties). Further, should this Court so conclude and allow Plaintiff's proposed summaries, Defendant respectfully requests that it be allowed to submit its own pedagogical chart summarizing the testimony regarding Plaintiff's actual working hours.

## Conclusion

For all the foregoing reasons and those stated in its supporting memorandum, Defendant's motion *in limine* should be granted in all respects.

Done at Bridgeport, Connecticut, this 11th day of May, 2004.

Pamela J. Coyne
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT  06604
203-366-3438
Federal Bar No. ct22941

ATTORNEYS FOR DEFENDANT



Not Reported in F.Supp.2d                                        Page 1
54 Fed. R. Evid. Serv. 117
**(Cite as: 2000 WL 343467 (N.D.Ill.))**

**H**

United States District Court, N.D. Illinois.

SPORTMART, INC., a Delaware corporation, Plain tiff/Counter-Defendant,
v.
SPIRIT MANUFACTURING, INC., an Arkansas corporation, Defendant/Counter-Plaintiff.

**No. 97 C 7120.**

March 30, 2000.

*MEMORANDUM OPINION AND ORDER*

LEINENWEBER, J.

*INTRODUCTION*

**\*1** Before the court are four motions. Sportmart, Inc. ("Sportmart") moves this court for summary judgment on its damages demand against Spirit Manufacturing, Inc. ("Spirit"). Sportmart and Spirit have filed cross motions for summary judgment on Spirit's counterclaim. Spirit has also filed a motion for summary judgment with regards to its third party complaint against third party defendant, Baldor Electric Co. ("Baldor").

*FACTUAL AND PROCEDURAL BACKGROUND*

In addressing the facts of this case, the court considers all facts involving Sportmart's motion for summary judgment on its amended complaint in the light most favorable to the nonmoving party, Spirit. *See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S.Ct. 2505, 2513 (1986).* With respect to the cross motions for summary judgment on the amended counterclaim, the court considers the facts relevant to each motion in the light most favorable to the nonmoving party. *See West Am. Ins. Co. v. Keno & Sons Constr. Inc.,* No. 98 C 7066, slip op. at 2 (N.D.Ill. Feb. 25, 2000). In addressing Spirit's motion for summary judgment on its third party complaint against Baldor, the court considers the facts relevant to that motion in the light most favorable to the nonmoving party, Baldor. *See Anderson at 254, 106 S.Ct. at 2513.* As all of the motions addressed herein are for summary judgment, the court makes special note when facts are disputed by the parties.

Sportmart filed its initial complaint in this case on October 10, 1997 and its amended complaint on December 11, 1998. The amended complaint alleged that Spirit breached its installment contract and express and implied warranties because Spirit delivered defective treadmills to Sportmart. On February 12, 1998, Spirit filed a third party complaint against Baldor, alleging that if Spirit was found liable for the defective treadmills, then Baldor should indemnify Spirit because Baldor caused the defects by supplying Spirit with defective 25-frame treadmill motors. Spirit argues that Baldor admitted that the treadmill motors were defective in pleadings, depositions and documents in a state court proceeding between Baldor and Spirit in Arkansas. *Spirit v. Baldor Electric Co.,* CIV-97-12233, Circuit Court of Pulaski County, Arkansas. The Arkansas case, was subsequently settled.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                    Page 2
54 Fed. R. Evid. Serv. 117
**(Cite as: 2000 WL 343467 (N.D.Ill.))**

Baldor contends that genuine issues of material fact exist as to its responsibility for Spirit's breach of contract with Sportmart. Baldor argues that Spirit misapplied the Baldor motors, which caused the treadmills to malfunction and that the treadmills had other problems aside from those involving the motors, such as problems with the power boards and the fuses. Baldor denies admitting in the documents submitted to the Arkansas court that its motors were defective.

On January 8, 1999, Spirit filed its amended counterclaim, arguing that Sportmart owes Spirit $93,144.00 for unpaid invoices for treadmills delivered to Sportmart. Spirit contends that between August 1994 and May 1995, Spirit issued purchase orders for 1314 treadmills; the invoices totaled $1,174,706.00. Sportmart paid Spirit $929,330.00 and Spirit issued credits to Sportmart in the amount of $152,232.00. Thus, Spirit demands a repayment or set off in the amount of $93,144.00.

**\*2** On May 17, 1999, this court granted Sportmart's motion for summary judgment on liability. *Sportmart v. Spirit,* 97 C 7120, 1999 WL 350662,\*4 (N.D. Ill May 17, 1999). The court, applying the Uniform Commercial Code ("UCC"), found that Spirit breached (1) the contract by delivering nonconforming goods; (2) its express warranty because the goods were defective, and (3) the implied warranty of merchantability because the goods were not fit for ordinary use. The court dismissed, *sua sponte,* the fourth count of the complaint alleging that Spirit breached the implied warranty of merchantability for a particular purpose. The parties proceeded to discovery on the damages issue. The court declined to address Spirit's counterclaim in its May 17, 1999 decision, finding that the unpaid invoices could be relevant for offsetting the damages owed to Sportmart.

*DISCUSSION*
Sportmart's Motion for Summary Judgment on its Amended Complaint

In its reply, Sportmart amended its damages demand, Sportmart now requests that the court enter summary judgment in its favor in the amount of $377,604.13 for Sportmart's payments to Spirit less its beneficial resale of the treadmills, $132,775.01 for consequential and incidental damages and attorneys' fees and costs. Thus, the total damage amount requested by Sportmart is, as amended, $510,379.14. Spirit responds that mathematical errors and lost and incomplete records raise genuine issues of material fact that preclude summary judgment as to damages in this case.

This court will grant Sportmart's motion for summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, "the burden of the moving party under Rule 56(c) [is] to show initially the absence of a genuine issue concerning any material fact." *Adickes v. S.H.Kress & Co., 398 U.S. 144, 159, 90 S.Ct. 1598, 1609 (1970).* According to the Advisory Committee Notes to the 1963 Amendments to Rule 56, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." Fed. R. Civ. P 56 advisory committee's note. In order to successfully show that summary judgment is proper as to damages, the parties must present evidence that would be admissible at trial under the Federal Rules of Evidence. *Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir.1996).* For the following reasons, Sportmart has not presented this court with sufficient evidence to show that no genuine issue of fact exists with regards to its damages.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
54 Fed. R. Evid. Serv. 117
**(Cite as: 2000 WL 343467 (N.D.Ill.))**

Sportmart has calculated the amount that it should be reimbursed from Spirit. As part of this calculation, Sportmart contends that its sales for the treadmills at issue totaled $816,922.00. In support of the total retail sales figure, Sportmart cites to the deposition of Stephen Pelikant ("Pelikant"), Sportmart's senior accountant. Sportmart 12M ¶ 10. In his deposition, Pelikant testified that he relied on the following evidence which leads to this figure: a summary chart and a computer-generated "Vendor/Buyer Report Card." Spirit's Ex. 3, 5; Pelikant Dep. at 46-47, 56.

**\*3** The summary chart and the Vendor/Buyer Report Card have not been established to be sufficiently reliable to be admissible in evidence. The summary chart is demonstrably unreliable in that it states that Sportmart ordered 1058 treadmills from Spirit; however, Spirit produced purchase orders for 1314 treadmills. Pelikant could not explain this discrepancy. Pelikant Dep. at 52-53. Moreover, in response to Spirit's factual assertions, Sportmart admits that it ordered at least 1163 treadmills from Spirit. Sportmart's Resp. to Spirit's Local Rule 56 Statement ¶ ¶ 7, 8, 12, 13, 14, 19, 20, 21, 26, 27, 28, 34, 35, 36, 41, 43, 46, 48.

Sportmart's response to these discrepancies raises further issues of fact. First, Sportmart argues that Pelikant's calculations did not depend upon the actual number of treadmills delivered. Sportmart Reply at 8. It is difficult to understand how the number of treadmills either ordered or delivered is irrelevant to calculating a summary of damages. Second, Sportmart argues that Spirit is similarly inconsistent in its submissions; Sportmart argues that in Spirit's response to the motion for summary judgment as to damages, Spirit alleges that 1314 treadmills were delivered whereas in Spirit's counterclaim, Spirit alleges that 1163 treadmills were delivered. Sportmart Reply at 9. Finally, both sides argue that the other has incorrectly or altogether neglected to include and/or not include 151 treadmills which were alleged to have been delivered to Sportmart, repaired by Spirit and returned to Sportmart. Both parties cite to a record replete with factual discrepancies.

Under Federal Rule of Evidence 1006, summaries of voluminous documents, such as the summary chart and Vendor/Buyer Report Card, are admissible as evidence where the "originals or duplicates" have been made "available for examination or copying, or both, by other parties at a reasonable time and place." However, according to Pelikant, there are no original documents or if there are, he does not have knowledge of their existence. Pelikant Dep. at 49, 50, 56. According to Spirit, if originals exist, they were never produced to Spirit, nor were the originals or duplicates filed with the court.

In the absence of the original documents, the summaries are hearsay. Fed.R.Evid. 801. Sportmart argues that the summaries are admissible under Federal Rule of Evidence 803(6) as a business record exception. In *Dramatic Services, Inc. v. U.S.,* 909 F.2d 1029, 1032 (7th Cir.1990), the Seventh Circuit divided the business record exception into three elements: "1) the document must be prepared in the normal course of business; 2) it must be made at or near the time of the events it records; and 3) it must be based on the personal knowledge of the entrant or on the personal knowledge of an informant having a business duty to transmit the information to the entrant."

Sportmart has not satisfied these elements with regards to its summaries. Pelikant testified that the summary chart was compiled for purposes of this litigation with the help of Sportmart's in-house counsel. Pelikant Dep. at 46. In *Collins v. D.J. Kibort,* 143 F.3d 331, 337 (7th Cir.1998), the Seventh Circuit upheld the district court's refusal to admit hospital billing records into evidence because even though

Not Reported in F.Supp.2d
54 Fed. R. Evid. Serv. 117
**(Cite as: 2000 WL 343467 (N.D.Ill.))**

a patient testified about his medical bills, "no one from the hospital testified that it was the regular business practice of the hospital to assemble and maintain the billing records of its patients in the manner presented at trial." The summary chart was neither prepared as a normal part of Sportmart's business nor has Sportmart asserted that it was prepared near or at the time that the treadmills were sold to or by Sportmart.

**\*4** Even though Sportmart asserts that "Pelikant testified at length to exactly the procedures used to create the records at issue," Pelikant admitted his ignorance of the procedures used to calculate the numbers of "units received" information in the Vendor/Buyer Report Card:

Pelikant: Again, that's all system generated. There could be the receiver, but I'm not quite sure if that wasn't just entered manually at the DC.
Q: You're not sure how that number was generated?
Pelikant: Right. I'm not involved with the distribution system.

Sportmart Reply at 7, Pelikant Dep. at 50. Knowledge of the distribution of the treadmills, such as which treadmills were received and which were returned, is vital to verifying a claim for an amount of damages.

In *Ampat/Midwest, Inc. v. Illinois Tool Works, Inc.,* 896 F.2d 1035, 1043 (7th Cir.1990) (*abrogated on other grounds* ), the Seventh Circuit stated that summaries of business records prepared for litigation were inadmissible under both Federal Rules of Evidence 1006 and 803(6) "for the practical reason that documents prepared specifically for use in litigation are 'dripping with motivations to misrepresent." ' (quoting *Hoffman v. Palmer, 129 F.2d 976, 991 (2d Cir.1942)).* The court in *Ampat* admitted the summaries, however, because they were prepared by a witness qualified to testify as an expert under Federal Rule of Evidence 703 and because the summaries only represented one aspect of the damages, the cost of replacing the product. In contrast, in this case, the summaries represent the bulk of Sportmart's evidence on damages with regards to the quantity and dollar amount of treadmills ordered, delivered, sold to customers, and returned to Sportmart, and, in turn, returned to Spirit. Furthermore, Pelikant, unlike the expert in *Ampat,* did not prepare aspects of the summaries, nor was he knowledgeable about aspects of how the original data was collected. In fact, in two areas, the amount paid to Sportmart and the amount of treadmills received from Sportmart, Spirit admitted that the data was or could be inaccurate.

Sportmart *estimates* that it refunded $264,929 for returned treadmills. Sportmart 12M ¶ 11. Sportmart calculated this figure by having its in-house counsel's assistant create an estimate of how many retail treadmill returns Sportmart experienced over a three-year period. According to Pelikant, Sportmart lost data when reloading computer tapes and therefore chose the most conservative number to report. Pelikant Dep. at 46-47, 79-81, 125. If the records were lost then a reasonable figure for the refunded amount should be estimated. *See BE & K Constr. Co. v. Will & Grundy Counties Bldg. Trades Council,* 156 F.3d 756, 770 (7th Cir.1998) ("While damages cannot be based on pure speculation or guesswork, they also need not be proven with the certainty of calculus."). However, Pelikant testified that he did not have personal knowledge about how the estimate was ascertained: "I wasn't really involved with that whole number. That was something Greg Fix's [Sportmart's counsel's] assistant had done." Pelikant Dep. at 80 (brackets added).

**\*5** Therefore, because genuine issues of material fact exist as to the amount of Sportmart's damages, Sportmart's motion for summary judgment on its damage demand is denied.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                          Page 5
54 Fed. R. Evid. Serv. 117
**(Cite as: 2000 WL 343467 (N.D.Ill.))**

### Sportmart and Spirit's Cross Motions for Summary Judgment on Spirit's Amended Counterclaim

In its counterclaim, Spirit argues under UCC § 5/2-607, Sportmart owes Spirit $93,144. In cross motions for summary judgment, "each movant must individually fulfill the stringent requirements necessary to obtain summary judgment ... the court will evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant." *West Am. Ins. Co.* at 2 (internal citations omitted). According to the UCC, as adopted in Illinois, a buyer must pay for the goods it accepts; however, upon notifying the seller, the buyer "may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract." 810 ILCS 5/2-206(1), 810 ILCS 5/2-717. Sportmart allegedly deducted the following: (1) $75,831.00 for defective treadmills returned to Spirit and not credited to Sportmart's account; (2) $3,400.18 for freight to return defective treadmills; (3) $7,715.00 for repair parts invoiced by Spirit but used to repair the defective treadmills; and (4) $7,000.00 for in-home repairs made by Sportmart. Sportmart argues that its deductions total $93,496.18, which exceeds the amount demanded in Spirit's counterclaim, and therefore summary judgment on Spirit's counterclaim should be granted in favor of Sportmart.

Spirit's only argument against application of Section 717, which would reduce their counterclaim by deductions made by Sportmart, is that Sportmart did not notify Spirit of the deductions. In its May 17, 1999 decision granting Sportmart's motion for summary judgment as to liability, this court stated, "the court finds that the record shows that Sportmart did seasonably notify Spirit of the problems with the treadmills and of its revocation." *Sportmart* at *2. Furthermore, in its Local Rule 56(b)(3) response, Spirit admitted that the payments sent by Sportmart for the treadmills included deductions and that Spirit did not agree with the deductions but nevertheless Spirit cashed Sportmart's checks. Spirit 56(b)(3) Resp. ¶ ¶ 21, 22. As such, material issues of fact exist as to the amount of Spirit's counterclaim because the amount should be reduced by any deductions Sportmart was entitled to take. Therefore, Spirit's motion for summary judgment on its counterclaim is denied; the amount that Spirit demands is to be reduced by any reasonable deductions to be proven by Sportmart.

The court next turns to Sportmart's cross motion; Sportmart argues that summary judgment should be granted in its favor because the amount of its deductions exceeds Spirit's counterclaim. Although Sportmart was entitled to reduce the amounts owed to Spirit pursuant to Section 717, Spirit raises material issues of fact as to the amounts and calculations of Spirit's deductions. There is a material issue of fact as to the $7,715.00 amount quoted by Sportmart for repair parts. According to Sportmart, the amount was originally invoiced by Spirit and then properly deducted by Sportmart when it paid the invoices. Sportmart Brief in Sup. at 7. According to Spirit, however, it wrote off the amount and has not included the bill for repairs in its demand. Spirit Reply at 8. This raises an issue as to whether the deduction can be considered against Spirit's counterclaim or whether it has already been reduced by Spirit.

**\*6** Sportmart has provided no evidence whatsoever that its in-home repairs totaled $7,000.00. In fact, Pelikant testified that he had no knowledge of who created the $7,000.00 debit memo and that he did not investigate the accuracy of the figure. Pelikant Dep. at 37. Similarly, even though Sportmart deducted $75,381.00 from payment on Spirit's invoices, there is no evidence and Spirit disputes that Sportmart returned treadmills to Spirit equaling that amount. In *Geldermann, Inc.*

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
54 Fed. R. Evid. Serv. 117
**(Cite as: 2000 WL 343467 (N.D.Ill.))**

*v. Financial Management Consultants, Inc.,* 27 F .3d 307, 311 (7th Cir.1994), the Seventh Circuit held that an injured party must "prove a reasonable basis for valuing the injury ." Furthermore, "the court may not automatically award summary judgment when the non-moving party stands on his pleadings." *Thornton v. Evans,* 692 F.2d 1064, 1074 (7th Cir.1982). The party moving for summary judgment has the initial burden to "show," using "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," that there is no genuine issue of material fact which requires trial. Fed.R.Civ.P. 56(c). Sportmart has not shown how or why its in-home repairs cost $7,000.00 or that $75,381.00 worth of treadmills were returned to Spirit and consequently does not satisfy its initial burden for summary judgment.

In sum, both Sportmart and Spirit's motions for summary judgment on the Spirit's counterclaim are denied.

### Spirit's Motion For Summary Judgment on Spirit's Third Party Complaint Against Baldor

In its motion for summary judgment on the third party complaint, Spirit argues that it is entitled to indemnification from Baldor. Spirit alleges that the treadmills at issue in this case were defective solely because defective motors were installed in the treadmills. Spirit alleges that Baldor supplied defective motors to Spirit and therefore Baldor should bear 100 percent of the financial burden that is imposed onto Spirt for damages caused to Sportmart.

Indemnification is a common law tort remedy which shifts total financial responsibility to the party at fault. *See Hahn v. Norfolk & Western Railway Co.,* 241 Ill.App.3d, 97, 101-102, 608 N.E.2d 683, 687 (1993). Both parties agree that as there is no express indemnification agreement between them; the legal theory at play is implied indemnification. Under the doctrine of implied indemnification, in order for a plaintiff to succeed, the plaintiff must be in no way at fault for the injuries. *See Blommer Chocolate Co. v. Bongards Creameries Inc.,* 635 F.Supp. 919, 930 (N .D. Ill.1986).

Spirit relies on two arguments in support of its contention that Baldor should be responsible for its monetary damages to Sportmart. First, Spirit argues that in its May 17, 1999 decision, this court found Spirit liable only because the defective motors caused the treadmills to be defective goods. Second, Spirit contends that Baldor admitted that the motors were defective in its submissions to the Arkansas court where the parties were also engaged in litigation. The court addresses each of Spirit's arguments in turn.

**\*7** First, in its May 17, 1999, this court stated that Spirit breached the contract and was liable to Sportmart because it had "delivered non-conforming goods which substantially impaired the value of the whole contract." *Sportmart* at \*2. Spirit argues that the goods were non-conforming only because the motors were defective. However, in finding Spirit liable, this court stated that, "[t]he key factor in reaching this result is Spirit's Arkansas complaint, in which Spirit alleges that the 'treadmill' motors were defective and that the defective motors 'began to malfunction at an alarming rate.' ' *Id.* at \*2. As such, the allegedly defective motors were but one factor in this court's determination that the contract had been breached. The court did not reach an exhaustive finding on why the treadmills malfunctioned. This court found that Spirit admitted that the treadmills did malfunction and therefore the treadmills were nonconforming.

In its complaint, Sportmart alleged that the goods were non-conforming because of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                    Page 7
54 Fed. R. Evid. Serv. 117
**(Cite as: 2000 WL 343467 (N.D.Ill.))**

defects with (a) the power boards that controlled the units; (b) the fuses within the units; and (c) the motors. Sportmart's Compl. at ¶ 12. According to Gorman, Sportmart returned some treadmills to Spirit because Sportmart alleged that the treadmills had "bent frames." Gorman Dep. at 165-66. In its third party complaint, Spirit argues that, "if it is shown that Spirit is, in fact, in *any* way liable to Sportmart on account of the matters alleged in the original complaint, then Spirit is entitled to recovery from Baldor ... for the full amount of any judgment that might be rendered against Spirit in favor of Sportmart ." Spirit Compl. at ¶ 12 (emphasis added). Thus, Spirit seeks to recover from Baldor all of the damages assessed to it by this court, not just those damages resulted from allegedly defective motors, and this court's May 17, 1999 order is not sufficient to prove that Baldor motors caused Spirit to breach and that Baldor is 100 percent responsible for Spirit's damages in this case.

Second, Baldor did not admit that the motors were defective in the Arkansas case. This court relied on *Spirit's* admissions in order to find Spirit liable in its May 17 ruling. *Sportmart* at *2. The Arkansas court did not find Baldor liable; rather, the parties settled. Even though Spirit attempts to use the fact that Baldor agreed to settle the Arkansas case to convince this court of Baldor's liability, according to Federal Rule of Evidence 408, "[e]vidence of ... accepting ... to compromise a claim ... is not admissible to prove liability."

Spirit cites to at least eight portions of pleadings from the Arkansas case, which are admissible under Federal Rule of Evidence 408, to argue that Baldor admitted liability for the defective motors. Assuming *arguendo* that the Baldor motors were defective, material issues of fact exist as to whether Baldor was exclusively responsible and whether the only defective motors caused Spirit to breach its agreement to Sportmart. C. Roger Hurt ("Hurt"), the President of Spirit, declared in his affidavit that "[n]o one at Spirit played any role in the design or manufacture of the motors sold by Baldor to Spirit." Nevertheless, Hurt admitted that Spirit was involved in the design of the motor on at least two occasions. In December 1993, Spirit changed the pulley ratio of the motor, and in February 1994, Spirit added a plastic fan to the motor. Hurt Dep. at 152-156.

**\*8** Moreover, Baldor presents testimony from Earl Richards and William Yeadon, both engineers, that the motors overheated and burned up because they were too small for the machine, and therefore misapplied by Spirit, not because the motors were inherently defective. Richards Aff. ¶ 4(d), Yeadon Aff. ¶ 7. According to Baldor, Spirit, as the original equipment manufacturer ("OEM"), made the ultimate decision to install the 25-frame motor in the treadmills sold to Sportmart. According to testimony submitted by Baldor, it is an industry standard that an OEM is responsible for ensuring the compatibility of the motor. Skinner Aff. ¶ 5, Yeadon Aff. ¶ 4, Young Aff. ¶ 2. Baldor raises material issues as to Baldor's responsibility for the motor malfunctioning in the treadmills. Therefore, Spirit's motion for summary judgment is denied as genuine issues of material fact exist as to Baldor's responsibility for Spirit's breach of the contract between Spirit and Sportmart.

*CONCLUSION*

Therefore, for the foregoing reasons Sportmart's Motion for Summary Judgment on its amended complaint and Spirit's amended counterclaim is denied (Document # 64). The Motion by Defendant Spirit for summary judgment on its amended counterclaim is denied (Document # 75). The Motion by defendant Spirit for summary judgment on its third party complaint is denied (Document # 76).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                Page 8
54 Fed. R. Evid. Serv. 117
**(Cite as: 2000 WL 343467 (N.D.Ill.))**

IT IS SO ORDERED.

2000 WL 343467 (N.D.Ill.), 54 Fed. R. Evid. Serv. 117

END OF DOCUMENT

Copr. ©  West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT A

# April 2001

April 2001
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

May 2001
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

| Monday | Tuesday | Wednesday | Thursday | Friday | Sat/Sun |
|---|---|---|---|---|---|
| | | | | | **April 1** — 8:00am - 12:00 (16 hours) |
| **2** 8:00am - 12:00 (16 hours) | **3** 8:00am - 12:00 (16 hours) | **4** 8:00am - 12:00 (16 hours) | **5** 8:00am - 12:00 (16 hours) | **6** | **7** 8:00am - 12:00 (16 hours) |
| | | | | | **8** 8:00am - 12:00 (16 hours) |
| **9** 8:00am - 12:00 (16 hours) | **10** 8:00am - 12:00 (16 hours) | **11** 8:00am - 12:00 (16 hours), Hours worked: 224, OT hours paid: 12, OT hours due: 132 | **12** 8:00am - 12:00 (16 hours) | **13** Vacation | **14** 8:00am - 12:00 (16 hours) |
| | | | | | **15** 8:00am - 12:00 (16 hours) |
| **16** 8:00am - 12:00 (16 hours) | **17** 8:00am - 12:00 (16 hours) | **18** 8:00am - 12:00 (16 hours) | **19** 8:00am - 12:00 (16 hours) | **20** 8:00am - 12:00 (16 hours) | **21** Off |
| | | | | | **22** 8:00am - 12:00 (16 hours) |
| **23** 8:00am - 12:00 (16 hours) | **24** 8:00am - 12:00 (16 hours) | **25** 8:00am - 12:00 (16 hours), Hours worked: 192, OT hours paid: -0-, OT hours due: 112 | **26** 8:00am - 12:00 (16 hours) | **27** 8:00am - 12:00 (16 hours) | **28** 8:00am - 12:00 (16 hours) |
| | | | | | **29** 8:00am - 12:00 (16 hours) |
| **30** 8:00am - 12:00 (16 hours) | | | **1** | | |

Johnson, Joan

5/4/2004

# EXHIBIT B

# BI-WEEKLY TIMESHEET

## AJ Estanislau

### April 12th - April 25th, 2001

| Date: | Morning In | Morning Out | Afternoon In | Afternoon Out | Overtime In | Overtime Out | Total Regular Hours | Total Overtime Hours |
|---|---|---|---|---|---|---|---|---|
| 4/12 Thursday | 8:00 | 12:00 | 1:00 | 6:00 | | | 10 | |
| 4/13 Friday | Vacation Day | | | | | | 8 | |
| 4/14 Saturday | Closed - Easter | | | | | | | |
| 4/16 Monday | 8:00 | 12:00 | 1:00 | 6:00 | | | 10 | |
| 4/17 Tuesday | 8:00 | 12:00 | 1:00 | 6:00 | 11:00 p.m. | 12:00 a.m. | 11 | no elect. 1223-3 |
| 4/18 Wednesda | 8:00 | 12:00 | 1:00 | 6:00 | | | 10 | |
| 4/19 Thursday | 8:00 | 12:00 | 1:00 | 6:00 | | | 10 | |
| 4/20 Friday | 8:00 | 12:00 | 1:00 | 6:00 | 10:00 | 12:00 | 12 | |
| 4/21 Saturday | OFF | | | | | | | (clubhouse event) |
| 4/23 Monday | 8:00 | 12:00 | 1:00 | 6:00 | | | 10 | |
| 4/24 Tuesday | 8:00 | 12:00 | 1:00 | 6:00 | | | 10 | |
| 4/25 Wednesda | 8:00 | 12:00 | 1:00 | 6:00 | | | 10 | |

Total Hours: 80 + 21 OT

I certify that this time sheet truthfully and accurately reflects all hours worked by me during this pay period.

Employee's Signature _____  Date: _____
Supervisor's Signature _____  Date: 4-70-01
Manager's Signature _____  Date: _____

26

# EXHIBIT C



NO. PW 4.25.01 PAY PERIOD ENDING.

NAME AJ Estanislau

| EXTRA TIME | | | REGULAR TIME |
|---|---|---|---|
| 4-23 | MONDAY | A.M. IN | Apr 23 8 10 |
| | | NOON OUT IN | |
| | | P.M. OUT | Apr 23 4 22 |
| 4-24 | TUESDAY | A.M. IN | Apr 24 1 10 |
| | | NOON OUT IN | |
| | | P.M. OUT | Apr 24 4 42 |
| 4-25 | WEDNESDAY | A.M. IN | Apr 25 8 28 |
| | | NOON OUT IN | |
| | | P.M. OUT | Apr 25 4 23 |
| | THURSDAY | A.M. IN | |
| | | NOON OUT IN | |
| | | P.M. OUT | |
| | FRIDAY | A.M. IN | |
| | | NOON OUT IN | |
| | | P.M. OUT | Apr 20 5 08 |
| | SATURDAY | A.M. IN | |
| | | NOON OUT IN | |
| | | P.M. OUT | |
| | SUNDAY | A.M. IN | |
| | | NOON OUT IN | |
| | | P.M. OUT | |
| TOTAL | | TOTAL | |

THIS SIDE OUT

TOPS FORM 1259 (M-33)    MADE IN U.S.A.

ALL-STATE LEGAL®
DEFENDANT'S
EXHIBIT
E

## **CERTIFICATION**

This is to certify that I have caused to be served the foregoing via U.S. Mail, certified

mail, return receipt requested, this 10th day of May, 2004 to all counsel and *pro se* parties as

follows:

      Marc Mercier, Esq.
      Beck & Eldergill, PC
      447 Center Street
      Manchester, CT  06040

                                     Pamela J. Coyne

39868

## **CERTIFICATION**

This is to certify that I have caused to be served the foregoing via U.S. Mail, certified

mail, return receipt requested, this 11th day of May, 2004 to all counsel and *pro se* parties as

follows:

Marc Mercier, Esq.
Beck & Eldergill, PC
447 Center Street
Manchester, CT 06040

Pamela J. Coyne

39868