UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ARTHUR ESTANISLAU, JR.<br>   Plaintiff | : | CIVIL ACTION NO: 3:02CV1515(PCD) |
|---|---|---|
| VS. | : | |
| MANCHESTER DEVELOPERS, LLC<br>   Defendant | : | JUNE 15, 2004 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED.R.CIV.P. 50(b).**

## I. Introduction

Following the jury's verdict finding for Plaintiff under both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 206, *et seq.* and Conn. Gen. Stat. Section 31-72 and its award to Plaintiff of $24,676.00, Defendant moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b). Plaintiff hereby objects.

## II. Facts Relevant to Defendant's Rule 50(b) Motion

### A. Facts Which Demonstrate That Defendant is a Covered Employer under the Fair Labor Standards Act ("FLSA").

Defendant's operations, by its own admission, explicitly involve commerce within the meaning of the FLSA.

First, Defendant's payroll is first faxed to New Jersey for review and approval by ownership and, once approved, is paid from New Jersey to Connecticut. (Testimony of

1

Janet Coleman; Testimony of Fran Velasco; Plaintiff's Exhibit 9.) In addition, Defendant's lease renewals are handled via interstate mail and require approval of ownership located in New Jersey. Aspen Woods Community Policies provides that "at the expiration of your lease, we hope that you will elect to renew. You will be notified by New Jersey who will propose your new lease renewal." Should a tenant opt to renew on a month-to-month basis, "New Jersey will prepare what is called a 60-day termination rider option form and send it to you for your signature and return to them." (Plaintiff's Exhibit 3.) Defendant also communicated with and engaged accountants in Mountainside, New Jersey for the preparation of its tax returns. (Defendant's Exhibits CCCC, DDDD, EEEE.) Finally, Defendant purchased utilities from Connecticut Light & Power and Connecticut Natural Gas. (Defendant's Exhibit FFFF.)

Defendant's management directives regarding the terms and conditions of Plaintiff's employment, including the Hours of Work Notice and Housing Termination Agreement, were likewise issued in writing and via facsimile from ownership in New Jersey. (Testimony of Janet Coleman; Testimony of Fran Velasco; Plaintiff's Exhibit 11; Plaintiff's Exhibit 12.) Those written employment policies were supplemented by verbal directives, including the imposition of a 3-day turnaround on apartment rentals, made by ownership visiting from New Jersey. (Testimony of Plaintiff; Testimony of Janet Coleman; Plaintiff's Exhibit 9.)

2

Finally, Defendant's operations, and Plaintiff's responsibilities, expressly involve the use and handling of products moved in and/or produced for movement in commerce. Defendant's appliances, including stoves, refrigerators, microwaves, dish and cloth washers, and dryers were manufactured by General Electric. (Testimony of Kenneth Nixon; Defendant's Exhibit TTT.) In addition to servicing and repairing those appliances, Plaintiff's responsibilities required him to purchase and handle gasoline, paint, caulk, carpeting, sheet rock, tiling and flooring, siding, window treatments, plumbing, air conditioning and electrical supplies, including filters and thermostats, light bulbs, mouse traps, chlorine and other pool chemicals, as well as sand and ice melt. (Testimony of Plaintiff; Plaintiff's Exhibit 9; Defendant's Exhibit N; Defendant's Exhibit DDD; Defendant's Exhibit TTT.) Plaintiff purchased those supplies and materials from national chain retailers including Mobil, Home Depot and Lowe's and transported them in a company-owned Dodge truck. (Testimony of Plaintiff; Testimony of Sherry DiMauro; Defendant's Exhibit N; Defendant's Exhibit DDD.) Defendant's coworkers, including Sherry DiMauro and Harold Garcia, performed the same and additional duties which directly involve commerce. (Testimony of Plaintiff; Testimony of Sherry DiMauro; Testimony of Harold Garcia.) As the porter, Mr. Garcia was responsible on a daily basis to "deliver any mail/memos to tenants as needed." (Defendant's Exhibit GG.)

3

### B. Facts Relevant to Hours Worked By the Plaintiff.

Plaintiff provided to the jury an estimate both of his hours worked, including specific days and hours claimed, as well as of the wages claimed. (Plaintiff's Exhibit 19; Plaintiff's Exhibit 20.) The estimate of hours worked was based upon Plaintiff's testimony and Ms. Coleman's corroborating testimony that Plaintiff regularly worked from 8:00 a.m. to 12:00 p.m. on "on duty" days and from 8:00 a.m. to 6:00 p.m. on "off duty" days. Plaintiff and Ms. Coleman testified at length that after 6:00 p.m. Plaintiff was regularly required to respond to tenant calls, perform maintenance duties, interact with and check the work of contractors, complete apartment cleaning and turnaround within 3 days, monitor and operate a trash compacting dumpster on an hourly basis, close down the tenant pool after 8:00 p.m. and a fitness center after 11:30 p.m., and monitor the grounds. Documentary evidence further demonstrated that Defendant, beginning in July, 2001, paid Plaintiff until 8:30 p.m. for "on duty" days and until 10:00 p.m. beginning in July, 2002. (Plaintiff's Exhibit 9; Plaintiff's Exhibit 13; Plaintiff's Exhibit 16.) Plaintiff's estimate of wages owed was based upon a comparison of Plaintiff's estimated hours with his actual compensation. (Testimony of Plaintiff; Testimony of Sheldon Wishnick; Plaintiff's Exhibit 20.)

### III. Argument

### A. Legal Standard.

In <u>TVT Records v. Island Defendant Jam Music Group</u>, 279 F.Supp.2d 366, 375

4

(S.D.N.Y. 2003), the court provided a detailed description of the standard applicable to Defendant's Motion for Judgment as a Matter of law under Fed.R.Civ.P. 50(b):

> The moving party bears a heavy burden to prevail on a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). Such an application is appropriately granted where "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." Merrill Lynch Interfunding, Inc. v. Argenti, 155 F.3d 113, 120 (2d Cir. 1998). The Court may not arrive at this determination by evaluating the credibility of witnesses or the relative weight of the evidence. Rather, in assessing a motion for judgment under Rule 50, the Court must view the evidence in the light most favorable to the non-movant. See Caruolo v. John Crane, Inc., 226 F.3d 46, 51 (2d Cir. 2000). To grant a Rule 50(b) application, there must be "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of mere surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against [it]." Concerned Area Residents for the Environment v. Southview Farm, 34 F.3d 114, 117 (2d Cir. 1994)(quoting Song v. Ives Labs, Inc., 957 F.2d 1041, 1046 (2d Cir. 1992)(citations omitted)).

In considering a Rule 50 motion, the court must defer "to all credibility determinations and reasonable inferences of the jury." Galdieri-Ambrosini v. Nat. Realty and Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998).

### B. Sufficient Evidence Exists From Which to Infer Defendant is a Covered Employer under the Fair Labor Standards Act ("FLSA").

Defendant's Motion for Judgment as a Matter of Law fails to accurately reflect the FLSA as amended and ignores substantial evidence in the record from which coverage under the FLSA may be reasonably inferred.

As an initial matter, the FLSA's provisions "are remedial" in nature and must be

5

interpreted broadly. Tennessee Coal, Iron & R.R. v. Muscoda, 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944). Thus, the term "commerce" as used in the FLSA has been liberally construed to extend the statute "throughout the farthest reaches of the channels of interstate commerce." Walling v. Jacksonville Paper Co., 317 U.S. 564, 567-68 (1943).

All of Defendant's arguments and case citations disregard the fact that the FLSA was amended in 1961, 1966 and 1974 to include "materials" moved in or produced for commerce and to expand coverage from employees "engaged in commerce" to employees "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. Sections 203(s)(1) and 207. "[The] amendment adding the words 'or materials' leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." Dunlop v. Industrial America Corp., 516 F.2d 498, 501-02 (5th Cir. 1975).

Baldwin v. Emigrant Industrial Savings Bank, 150 F.2d 524 (2d Cir. 1945), cited by Defendant as controlling law on the treatment of apartment building service employees, has no bearing upon this case since, in 1945, an FLSA claim was predicated upon proof of an employee's individual engagement in the production of goods for interstate sale. Baldwin is patently obsolete in light of the 1961, 1966 and 1974 amendments.

Indeed, the specific effect of the FLSA amendments upon apartment maintenance employees such as Plaintiff has been directly addressed by the courts. In Brennan v.

6

Jaffey, 380 F.Supp. 373 (D.Del. 1974), the court revisited a pre-1974 decision which had found that apartment maintenance workers were not engaged in interstate commerce. In applying "virtually identical facts" to the 1974 amendments, the court held that apartment maintenance employees who handled products moved in or produced for movement in interstate commerce were covered:

> [T]he amendment became effective on May 1, 1974, by inserting the word "materials" in section 203(s). It clearly discloses a legislative purpose to make ... the provisions of the Act applicable to employers, such as the defendants, after its effective date. Its actual effect was therefore to expand its future coverage ... The example provided by the Senate itself puts to rest any question of the applicability of the statute to the defendants: if a local laundry is covered because the soap which it uses moved in interstate commerce, then an apartment complex is covered because the materials used by its maintenance personnel moved in interstate commerce.

The approach to apartment complex maintenance employees adopted in Brennan has been consistently affirmed by other courts. See Marshall v. Baker, 500 F.Supp. 145 (N.D.N.Y. 1980)(operator of apartment complex covered by FLSA where maintenance employees handles items which traveled in interstate commerce, including light bulbs, cleaning chemicals, paints, floor finishing chemicals, replacement lock sets, panes of glass, refrigerator and stove parts, nails, screws, paint rollers, and glazier's putty); Hodgson v. Rivermont Corp. d/b/a Fox Meadows Apartments, 1973 WL 1177 (M.D.Fla. 1973)(Exhibit 1, attached)(operator of apartment complex covered by FLSA where maintenance employees purchased from local suppliers and handled products from the stream of

7

commerce such as cleansers, light bulbs, miscellaneous hardware, and appliances such as refrigerators, air conditioners and stoves); Mansdorf v. Ernest Tew & Associates, Inc., 1972 WL 959 (M.D.Fla. 1972)(Exhibit 2, attached)(Defendant Florida apartment complex covered by FLSA where court found that various maintenance employees used supplies and materials originally manufactured, produced and shipped from sources outside of Florida).

The only post-amendment cases cited by Defendant are inapposite. DaSilve v. Kinsho Intern. Corp., 229 F.3d 358 (2d Cir. 2000) involves a claim under Title VII and has no bearing upon what constitutes sufficient evidence, in an FLSA claim, that goods moved in commerce. Likewise, Joles v. Johnson County Youth Service Bureau, Inc., 885 F.Supp. 1169 (S.D.Ind. 1995) addresses the irrelevant issue of the FLSA's exemption and treatment of non-profit charitable organizations.

The question of whether Defendant as an "enterprise" is covered by the FLSA is a matter of reasonable inference from the evidence. Haley v. Lone Star Web, Inc.,1987 WL 42439 (N.D. Tex. 1987)(Exhibit 3, attached); Shelton v. Ervin, 646 F.Supp. 1011 (M.D.Ga. 1986)(court reasonably found FLSA coverage by inferring retail liquor sales were made to interstate travelers where the package store was located near a park frequented by such motorists).

"[T]he FLSA is to be given a liberal construction and whether an employee is

8

engaged in the production of goods for commerce within this chapter is determined by practical considerations, not by technical conceptions." Haley v. Lone Star Web, Inc.,1987 WL 42439 at *4(Exhibit 3, attached), citing Mitchell v. Empire Gas Engineering Co., 256 F.2d 781, 784 (5th Cir.1958). Thus, in Archie v. Grand Cent. Partnership, Inc., 997 F.Supp. 504, 530 (S.D.N.Y. 1998) the court found FLSA coverage on the grounds that janitors had used bags, brooms, shovels, pails, scrapers, radios, books, flashlights, clipboards, uniforms, "some of which undoubtedly moved in interstate commerce."

Plaintiff need only, and has, in fact, provided just such a list of materials which he handled and from which a reasonable inference of interstate movement can be made. Among the items Plaintiff purchased from national chain stores such as Mobil, Home Depot and Lowe's were gasoline, paint, caulk, carpeting, sheet rock, tiling and flooring, siding, window treatments, plumbing, air conditioning and electrical supplies, including filters and thermostats, light bulbs, mouse traps, chlorine and other pool chemicals, and sand and ice melt. (Testimony of Plaintiff; Plaintiff's Exhibit 9; Defendant's Exhibit N; Defendant's Exhibit DDD; Defendant's Exhibit TTT.) Plaintiff also handled the repairs and maintenance for General Electric appliances including stoves, refrigerators, microwaves, dish and cloth washers, and dryers. (Defendant's Exhibit TTT.) It is reasonable to infer from that litany of materials that some, or all, of those products were moved in or produced for interstate commerce. Archie v. Grand Cent. Partnership, Inc., 997 F.Supp. at 530; Marshall v.

9

Whitehead, 463 F.Supp. 1329 (M.D.Fla. 1978)(local fill dirt operation subject to FLSA coverage where employees handled, among other things, petroleum products in fueling defendant's trucks and equipment). In fact, "[i]n the absence of contrary evidence," such a conclusion of interstate movement is wholly warranted. Haley v. Lone Star Web, Inc.,1987 WL 42439 (N.D. Tex. 1987)(Exhibit 3, attached).

In addition to all the maintenance activities required of Plaintiff and his coworkers, Sherry DiMauro and Harold Garcia, Defendant expressly acknowledges that other employees regularly engaged in activities covered by the FLSA, including the use by Janet Coleman and Fran Velasco of fax machines and mail to send and receive payroll and management directives from New Jersey. In addition, Defendant regularly used interstate mail for the purpose of entering into rental agreements. (Plaintiff's Exhibit 3.) Defendant's own evidence also reveals that Harold Garcia, when employed as the porter, was responsible for the daily delivery of mail and memos to tenants. (Defendant's Exhibit GG.) Such activity alone is sufficient to trigger FLSA coverage. See Jones v. Cadillac Condominium Association, Inc., 1989 WL 49156, (D.Colo. 1989)(Exhibit 4, attached)(employee use of interstate mail and telephones to communicate with out of state owners regarding business along with the regular distribution of mail to tenants sufficient to bring apartment complex within scope of FLSA); Mansdorf v. Ernest Tew & Associates, Inc., 1972 WL 959 (M.D.Fla. 1972)(Exhibit 2, attached)(FLSA coverage appropriate where

10

use of interstate communication between employees and owners an essential part of Defendant's business); Sharp v. Warner Holding Co., 1972 WL 1022 (D.Minn. 1972)(Exhibit 5, attached)(caretaker's delivery of packages and mail to tenants after such items had been delivered to the buildings by the United States mail or other interstate carriers sufficient for FLSA coverage).

Defendant attempts to evade the logic of its admission of interstate activity by claiming that the interaction with New Jersey may involve the engagement of an "independent contractor" as opposed to "enterprise" activity. While such an assertion is directly contradicted by Defendant's own witnesses who testified that communication with New Jersey took place for the express purpose of obtaining ownership review, approval and payment of the payroll as well as to receive from ownership management directives, it is ultimately irrelevant. The enterprise concept is designed to aggregate or combine the revenues of businesses to meet the minimum gross sales amount required by the FLSA. Preston v. Settle Down Enterprises, Inc., 90 F.Supp.2d 1267, 1275-76 (N.D.Ga. 2000), citing Patel v. Wargo, 803 F.2d 632, 635 (11th Cir. 1986). No such issue of minimum gross sales amount is at issue in this case. Defendant's conduct in communicating and processing its payroll, tenant leases or management policies via interstate communication, whether with owners or through an "independent contractor", is sufficient to trigger FLSA coverage.

11

Defendant's reliance upon Mitchell v. Welcome Wagon, Inc., 139 F.Supp. 674 (W.D. Tenn. 1954) reveals the disingenuous nature of Defendant's arguments. Having already suggested that its interaction with New Jersey may constitute interaction with an "independent contractor", Defendant nevertheless cites Mitchell for the diametrically opposed proposition that the very same communications were internal and therefore not covered under the FLSA. Courts have, however, repeatedly found the interstate transfer and communication of "internal" paperwork sufficient to trigger coverage under the FLSA. Jones v. Cadillac Condominium Association, Inc., 1989 WL 49156, (D.Colo. 1989)(Exhibit 4, attached)(employee use of interstate mail and phones to communicate with out of state owners regarding business along with the regular distribution of mail to tenants sufficient to bring apartment complex within scope of FLSA); Mansdorf v. Ernest Tew & Associates, Inc., 1972 WL 959 (M.D.Fla. 1972)(Exhibit 2, attached)(FLSA coverage appropriate where use of interstate communication between employees and owners an essential part of Defendant's business).

In Hodgson v. Travers Edwards, Inc., 465 F.2d 1050 (5th Cir.), cert. denied, 409 U.S. 1076 (1972), the court held that office employees were "engaged in commerce" where they regularly mailed to the out-of-state corporate president and directors monthly reports, including building owner's and manager association reports reflecting profit and loss and balance statements, operating expense breakdown and summary of payroll and receipts

12

and disbursements, and monthly rent analysis. In so ruling, the Court stated *"[t]hough these documents may have no intrinsic value, and are for internal corporate use only, they are, in our view, nonetheless, sufficient to meet the unexacting standards of the statutory definition of 'commerce'"*. Id. at 1054 (emphasis added).

In any event, the Mitchell court's conclusion that housewives providing greeting services to local retailers were not engaged in the production, sale or shipment of articles of commerce has, for obvious reasons, no application to this case. The definition of commerce contained in the 1954 version of the FLSA has been superceded to now include the broader definitions described above.

### C. Plaintiff Provided Ample and Sufficient Evidence of Hours Worked From Which the Jury Could Have Reasonably Awarded Him Damages.

Contrary to Defendant's claim, Plaintiff provided testimony and documentary evidence of the specific days and hours he claims he worked as well as the wages he claimed. The jury credited that testimony, at least in part, by awarding Plaintiff $24,676.00 and finding that Defendant acted in bad faith in not paying to him overtime compensation. Defendant's motion now seeks to improperly disregard Plaintiff's Exhibits 19 and 20, the attendant and corroborated testimony of Plaintiff's hours and days of work, as well the jury's findings.

As with the other sections of its motion, Defendant's case citations with respect to the inadequacy of Plaintiff's evidence are inapposite. Tele-Sentry Security, Inc. v.

13

Secretary of Labor, 1991 WL 178135 (Exhibit 6, attached) involves the evaluation of the sufficiency of testimony from representative employees as a basis from which to infer the hours and extent of work for employees in the same job classification who did not testify. For obvious reasons, such a case has no bearing upon Plaintiff's individual claim. In Lee v. Vance Executive Protection, Inc., 2001 WL 108760 (4th Cir. 2001)(Exhibit 7, attached), the claimants failed to provide anything but a general description of overtime responsibilities with no evidence of the extent and amount of extra work. By contrast, Plaintiff not only provided specific corroborated testimony about the extent and amount of hours worked on each "on duty" and "off duty" day but provided to the jury a calendar of days and hours worked and a calculation of wages owed.  (Plaintiff's Exhibit 19; Plaintiff's Exhibit 20.)

In Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002), the Second Circuit Court of Appeals affirmed the judgment of the district court awarding former hotel workers damages pursuant to the FLSA. In doing so, the Court rejected the defendant's claim that the plaintiffs had failed to submit evidence sufficient to satisfy the dictates of Anderson v. Mt. Clemens Pottery, 328 U.S. 680, 66 S.Ct. 1187 (1946):

> The district court found that the plaintiff worked 91 hours in 1989-90 and 63 hours a week in the first half of 1991.  The testimony at trial clearly supports this conclusion with respect to the plaintiff's hours from 1989 to 1990. The plaintiff testified that he worked thirteen hours a day for seven days a week in 1989 and 1990. The plaintiff's testimony was corroborated by a co-worker who worked the same hours as the plaintiff. . . The district court essentially credited the plaintiff's corroborated testimony

14

over testimony that was ambiguous. While the district court could have permissibly reached a different conclusion, its choice to believe the plaintiff and his corroborating witness was not clearly erroneous. See <u>Anderson</u>, 470 U.S. at 574, 105 S.Ct. 1504 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

Plaintiff's testimony regarding the days and hours he worked was more specific than that found sufficient in <u>Tho Dinh Tran</u>, was corroborated by Ms. Coleman, and was ultimately supported by a calendar and calculation which accounted for days off and changes in Defendant's pay and scheduling policies. (Plaintiff's Exhibit 19; Plaintiff's Exhibit 20.) That Defendant presented a different version of the facts is neither surprising nor important. The jury, as is its place, chose to credit Plaintiff and reject Defendant's witnesses.

## IV. <u>Conclusion</u>.

For the foregoing reasons, Defendant's motion for judgment as a matter of law should be denied.

PLAINTIFF

By: _____
Marc P. Mercier
Beck & Eldergill, P.C.
447 Center Street
Manchester, CT 06040
(860) 646-5606
Fed Bar No: ct10886

15

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been mailed this 15th day of June, 2004, to the following parties:

Pamela J. Coyne, Esq.
Loraine M. Cortese-Costa, Esq.
Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C.
1057 Broad Street
Bridgeport, CT   06604

*Marc P. Mercier*
Marc P. Mercier

Estanislau\MemRule5006-04.pld

16

LAW OFFICES
**BECK AND ELDERGILL, P.C.**
447 CENTER STREET • MANCHESTER, CT 06040 • (860)646-5606 • JURIS No. 02702