UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARTHUR ESTANISLAU, | : | CIVIL ACTION NO. |
| | : | 3:02CV1515 (PCD) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MANCHESTER DEVELOPERS, LLC, | : | |
| | : | |
| Defendant. | : | JUNE 29, 2004 |

**DEFENDANT'S MEMORANDUM IN REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendant, by and through undersigned counsel, submits this memorandum of law in reply to Plaintiff's opposition to its motion for judgment as a matter of law pursuant to Rule 50(b).

**Preliminary Statement**

In response to Defendant's argument that there was no evidence at trial to establish coverage under the federal Fair Labor Standards Act ("the Act"), Plaintiff first suggests that Defendant's arguments as to controlling Second Circuit precedent on the individual coverage of building maintenance workers is "obsolete" due to amendments of the Act made after that date. (Pl. mem., p. 6). There have been no substantive amendments to the individual coverage standard since the Second Circuit cases cited by Defendant were decided. Plaintiff is apparently referring to the amendments pertaining to "enterprise" coverage although nowhere in his memorandum of law does he cite, quote or analyze them. Enterprise coverage under the Act was added by the 1961 amendments which provided:

> "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling or otherwise working on goods that have been moved in or produced for commerce by a person . . . . 29 U.S.C. §203(s) (1961).

The 1974 amendments to the Act substituted "or" for "including" and added "or materials" after the second "goods" in this section. Pub. L. No. 93-259, § 6(a)(5). With respect to these amendments, the Senate Report on the Fair Labor Standards Amendments of 1974, S.Rep. No. 93-690, 93rd Cong., 2d Sess. 17 (1974), stated:

> In addition to expanding coverage, the bill amends section 3(s) by changing the word "including" to "or," to reflect more clearly that the "including" clause was intended as an additional basis of coverage. This is, in fact, the interpretation given to the clause by the courts. The bill also adds the words "or materials" after the word "goods" to make clear the Congressional intent to include within this additional basis of coverage the handling of goods consumed in the employer's business, as, e.g., the soap used by a laundry.

In commenting upon that part of the enterprise definition which mirrors that found in the individual coverage provision, the United States Supreme Court stated that the "class of employers subject to the Act was not enlarged by the addition of the enterprise concept." *Maryland v. Wirtz,* 392 U.S. 183, 193 (1968).

Thus, although enterprise coverage is more expansive than the test for individual coverage, which Plaintiff tacitly admits is lacking in this case, it does not change what is required to establish individual coverage or enterprise coverage under the mirrored provisions of that section. Plaintiff argues that the Court may infer enterprise coverage, which is not pled in the Complaint, based upon evidence of goods and materials handled by Defendant's maintenance

-2-

employees despite the lack of any evidence that any of those goods actually moved in interstate commerce. (Pl. mem., p.8).  Plaintiff also contends that evidence of the internal use of fax machines[1] by Defendant's employees to send to, and receive documents from, "New Jersey" establishes it. (Pl. mem., p. 10).  As set forth below, neither premise provides a sufficient basis for a finding of FLSA coverage in this case.

In response to Defendant's argument that Plaintiff's testimony was insufficient as a matter of law to establish that he worked overtime hours for which he was not compensated, Plaintiff points only to the "collaboration" of his testimony by a witness, Janet Coleman, who admitted that she had no personal knowledge of what Plaintiff did and two exhibits, the accuracy of which were completely undermined by Plaintiff's own testimony and which Plaintiff asserted in opposition to a motion *in Limine* filed by Defendant were not intended as evidence but merely jury aids, and which were admitted on that limited basis.

**Argument**

**Point I**

**COVERAGE UNDER A FEDERAL
STATUTE CANNOT BE INFERRED**

The Second Circuit has explicitly recognized that coverage under a federal statute must be proven by the plaintiff and, although not necessarily depriving the Court of subject matter jurisdiction, implicates the authority of the Court to award relief, *DaSilva v. Kinsho International*, 229 F.3d 358 (2d Cir. 2000), and renders the facts required to establish coverage

---

[1]  Plaintiff also asserts that interstate mail was used for this purpose (Pl. mem., p. 2), however, he fails to cite any evidence of actual use of interstate mail to or from New Jersey or any other states.

jurisdictional facts, *id.* at 366 and n.9 (if fact pled defeats coverage, dismissal for lack of subject matter jurisdiction possible). Such facts cannot be made out with the aid of "presumptions or argumentative inferences." *Hahn v. U.S.,* 757 F.2d 581, 587 (3d. Cir. 1985), *quoting Norton v. Larney,* 266 U.S. 511, 515-16 (1925). *See also EEOC v. Die Fledermaus,* 77 F.Supp. 2d 460, 468 (S.D.N.Y. 1999). Thus, Plaintiff's claim that coverage under the Fair Labor Standards Act has been established by virtue of implication or inferences that he claims may be drawn from the record is insufficient to defeat Defendant's motion for judgment. *Id.*

Moreover, virtually every case cited by Plaintiff in support of his argument explicitly relies, not on inferences drawn from the record, but on specific and direct evidence of the handling of goods or materials which have moved in interstate commerce.

In *Brennan v. Jaffey,* 380 F.Supp. 373 (D.Del. 1974) (Pl. mem., pp. 6-7), the Court specifically noted that the defendant, a Delaware corporation, *id.* at 374, purchased the goods at issue from firms in Pennsylvania, *id.* at 376.

In *Marshall v. Baker,* 500 F.Supp. 145 (N.D.N.Y. 1980) (Pl. mem., p. 7), the Court detailed the evidence showing that the New York employer had purchased the goods from "out of state," *id.* at 147, including:

> an average of $400 per year over a two year period for repair parts for Cadet lawn mowers originating in Baltimore, Maryland and Chicago, Illinois; approximately $175 per month over a two year period for blower assemblies, heat exchangers, and compressors originating in Indianapolis, Indiana; approximately $80 per month over a two year period for cleaning machines and plumbing repair parts originating in McKees Rock, Pennsylvania; and approximately $78 per month over a two year period for appliance parts originating in Ferndale and Troy, Michigan and Chattanooga, Tennessee. In addition, during a twelve month period, $2,572.35

was spent on janitorial products and supplies which originated in
and were purchased directly from Cleveland, Ohio. *Id.*

In *Hodgson v. Rivermount Corp. d/b/a Fox Meadows Apartments*, 1973 WL 1177 (M.D.Fla. 1973) (Pl. mem., p. 7), the parties had stipulated that the Florida employees regularly ordered and purchased goods from "out of state," *id.* at 2.

In *Haley v. Lone Star Web*, 1987 WL 42439 (N.D.Tex. 1987) (Pl. mem., pp. 8, 10), the defendant employer was a printer of mailed advertisements for other businesses and there was evidence that some of its customers were located out of the state in which the defendant was located, *id.* at *4. The Court in *Haley* emphasized that the plaintiff could not rely on speculation or conjecture to prove such facts, *id.*, however, as set forth above, such facts cannot be made out even by inference.

In *Shelton v. Ervin*, 646 F.Supp. 1011 (M.D. Ga. 1986) (Pl. mem., p. 8), the defendant had admitted that part of its business was with motorists from a park frequented by interstate travelers, *id.* at 1014, and that the plaintiff had purchased and inventoried products which must have been produced out of state, *id.* at 1015.

In *Marshall v. Whitehead*, 483 F.Supp. 1329 (M.D. Fla. 1978) (Pl. mem., p.10), the Court made the unastounding holding that the employees of a dirt fill operator engaged in "construction of improvements to existing instrumentalities or facilities of interstate commerce" were involved in interstate commerce, *id.* at 1350-1351, and thereby covered under the Act. However, the case does not stand for the proposition, as Plaintiff asserts, that coverage was established because "employees handled, among other things, petroleum products in fueling defendant's trucks and equipment." (Pl. mem., p. 10). Indeed, the Court specifically rejected coverage of such

employees for the work they performed in connection with the construction of new roads in a privately maintained subdivision, *id.* at 1352.

The only case cited by Plaintiff arguably supporting his contention that facts necessary for coverage under the Act may be established without evidence is *Archie v. Grand Central Partnership*, 997 F.Supp. 504, 530 (S.D.N.Y. 1998) (Pl. mem., p. 9) which is contrary to the precedent established by the Supreme Court in *Norton v. Larney, supra,* and the Second Circuit in *Kinsho, supra.* It should be rejected by this Court as well.

### Point II

**PLAINTIFF DID NOT ESTABLISH THE ENGAGEMENT OF ANY OF DEFENDANT'S EMPLOYEES IN INTERSTATE COMMERCE VIA THE MAIL OR TELEFAX**

Plaintiff argues that:

> Defendant expressly acknowledges that other employees regularly engaged in activities covered by the FLSA, including the use by Janet Coleman and Fran Velasco of fax machines and mail to send and receive payroll and management directives from New Jersey. In addition, Defendant regularly used interstate mail for the purpose of entering into rental agreements. (Plaintiff's Exhibit 3.) Defendants own evidence also reveals that Harold Garcia, when employed as the porter, was responsible for the daily delivery of mail and memos to tenants. (Defendant's Exhibit GG.) Such activity alone is sufficient to trigger FLSA coverage. (Pl. mem., p. 10).

There was no testimony at trial that mail was used to send to, or receive materials from, New Jersey and Plaintiff cites no exhibit to establish it. Plaintiff's Exhibit 3 does not establish that interstate mail was ever used for any lease renewal. There was no evidence the Defendant's

Exhibit GG[2] was ever received by Harold Garcia; neither does it establish that any employee of Defendant ever regularly delivered mail to tenants or if they did, what kind of mail it was (e.g., U.S. mail, mail from other tenants, mail from Fran Velasco's office in Hamden, Connecticut etc.). Harold Garcia, who testified at trial, was never asked by Plaintiff's counsel whether he was every required to deliver mail to tenants and, if so, where the mail came from. This lack of evidence renders completely inapposite *Jones v. Cadillac Condominium Association, Inc.,* 1989 WL 49156 (D.Colo.1989)[3] (Pl. mem., pp. 10, 12), *Mandsdorf v. Ernest Ten & Assoc.,* 1974 WL 959 (M.D. Fla. 1972),[4] and *Sharp v. Warner Holding Co.,* 1972 WL 1022 (D.Minn. 1972)[5] (Pl. mem., p. 11), to the extent they rely upon proof of *regular* communication via interstate mail and distribution of items delivered from interstate carriers by the defendant's employees. Similarly, *Hodgson v. Travis Edwards, Inc.,* 465 F.2d 1050 (5th Cir.), *cert. denied,* 409 U.S. 1076 (1972) (Pl. mem., p. 12), which relied on *regular* use of the mail by defendant's employees, is not factually comparable to the evidence presented by Plaintiff in this case at trial. No use or handling of interstate mail was established by the evidence in this case, nevertheless any *regular* use thereof.

---

[2]  a memo sent by Plaintiff to a Duane Fernandez.
[3]  The extent of interstate commerce in *Jones* was extensive without consideration of the alleged use of interstate mail. *Id.* at p.1.
[4]  In *Mansdorf,* there was also proof of use of products "from sources outside of the State" in which the defendant was located. *Id.* at *1.
[5]  In *Sharp,* there was also proof of use of supplies and coal "originating outside the State of Minnesota" in which the defendant was located. *Id.* at p.3.

Plaintiff has cited not a single case to suggest that where, as here, the only evidence of interstate activity consists of employee use, with no evidence of regularity, of a fax machine[6] from one state to another, there is coverage under the FLSA. Although Plaintiff is correct (Pl. mem., p. 1) that there was evidence that Defendant's owners had an office in New Jersey to and from which faxes were sent and received in Connecticut, it is incorrect to suggest that the enterprise amendments to the FLSA render this sufficient for enterprise coverage as no "goods or materials" are moved via telefax. Neither do the amendments cast any doubt upon the continuing validity of cases such as *Mitchell v. Welcome Wagon*, 139 F.Supp. 674 (W.D. Tenn. 1954), *aff'd*, 232 F.2d 892 (6th Cir. 1956) (*per curium*) (Pl. mem., p. 13), holding that intracorporate interstate communication is insufficient to establish individual coverage under the Act (or after 1961, under the mirror provisions of the enterprise test) on the basis of engagement in commerce. *See also Stevens v. Welcome Wagon*, 390 F.2d 75, 78 (3d. Cir. 1968); *Shultz v. Travis-Edwards, Inc.*, 320 F.Supp. 834, 836-7 (W.D. La. 1970).

### Point III

**PLAINTIFF HAS CITED NO EVIDENCE
TO OVERCOME THE INSUFFICIENCY
OF HIS OWN TESTIMONY**

In its memorandum in support, Defendant outlines the reasons why Plaintiff's testimony as to hours he claims to have worked without compensation was insufficient evidence as a matter of law to submit the claim to the jury. In opposition, Plaintiff cites only the "corroborating" testimony of Janet Coleman and Plaintiff's Exhibits 19 and 20 which were "a calendar of days

---

[6] The cases cited by Plaintiff deal with interstate mail in which "goods or materials" are actually moved.

- 8 -

and hours worked and a calculation of wages owed." (Pl. mem., p. 14). Unlike the plaintiff in

*Tho Dinh Tram v. Alphonse Hotel Corp.*, 281 F.3d 23 (2d. Cir. 2002), cited by Plaintiff (*id.*),

Plaintiff did not testify in this case that he worked a certain amount of hours for which he was

not paid, *id.* at 21. Rather, he testified about things he claims to have done outside his regularly

scheduled working hours (he admitted he was always paid for his regularly scheduled working

hours) of varying claimed duration and regularity and much of which he was forced to admit on

cross-examination was actually performed during his regularly scheduled working hours. The

hours and calculations that appear in Plaintiff's Exhibits 19 and 20 were not reflective of

Plaintiff's actual testimony on cross-examination and, indeed, were proven completely unreliable

by Plaintiff's own admissions that he was engaging in personal activity, performing work for

others and/or not even in Connecticut for a large degree of the hours claimed as working time in

those exhibits. Plaintiff's heavy reliance upon and attempts to claim Plaintiff's Exhibits 19 and

20 as evidence is also directly contrary to the position taken by him in opposition to Defendant's

Motion In Limine to exclude their use at trial and the Court's ruling on that motion. Plaintiff

argued at that time that the exhibits were not evidence and that:

> **It is axiomatic that summaries that are used as aids are not
> evidence themselves, but are tools designed to assist the trier of
> fact in understanding complex testimony.** *Herman v. Davis
> Acoustical Corp.*, 21 F.Supp.2d 130, 135 (N.D.N.Y., Sep 09, 1998)
> (emphasis added). . . . Plaintiff's May 6, 2004 Memorandum In
> Opposition To Defendants' Motion In Limine To Preclude
> Plaintiff's Wage Calculation Calendar and Wage Calculation, p. 2)

The Court admitted them upon that limited basis. As to Janet Coleman's "corroborating"

testimony, Ms. Coleman, who did not work the same schedule or perform the same duties as

Plaintiff, which the witness in *Tho Dinh Tram* did, and who admitted that she had no personal knowledge[7] of Plaintiff's actual performance of the claimed work, merely reiterated Plaintiff's vague testimony about things he claims to have done outside regular working hours. Accordingly, Ms. Coleman's testimony added nothing to Plaintiff's testimony which was insufficient as set forth in Defendant's memorandum in support of this motion and the motion should therefore be granted.

      Done at Bridgeport, Connecticut this 29th day of June, 2004.

*Loraine M. Cortese-Costa/pjc*

Loraine M. Cortese-Costa
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT 06604
(203)366-3438
Federal Bar No. ct3984

ATTORNEYS FOR DEFENDANT

---

[7] Testimony is sufficient evidence only if based upon the witness' personal knowledge. *See Davis v. USPS*, 142 F.3d 1334, 1340 (10th Cir. 1998) ("Plaintiff's testimony that her attorney mailed the letter to USPS is insufficient because plaintiff has no personal knowledge that her attorney did so.")

## CERTIFICATION

This is to certify that I have caused to be served the foregoing via U.S. Mail, certified mail, return receipt requested, this 29th day of June, 2004 to all counsel and pro se parties as follows:

Marc Mercier, Esq.
Beck & Eldergill, PC
447 Center Street
Manchester, CT  06040

*Loraine M. Cortese Costa/pjc*
Loraine M. Cortese-Costa

P:\lit\LCC\586800\003\00040637.DOC