Slip Copy                                                                  Page 1
2004 WL 1110414 (S.D.N.Y.)
**(Cite as: 2004 WL 1110414 (S.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

AMERICAN NATIONAL FIRE INSURANCE CO. and Great American Insurance Co.,
Plaintiffs,
v.
MIRASCO, INC., Defendant.
MIRASCO, INC., Plaintiff,
v.
AMERICAN NATIONAL FIRE INSURANCE COMPANY, Defendant.

**No. 99 Civ.12405(RWS), 00 Civ.5098(RWS).**

May 19, 2004.

Kingsley & Kingsley, Hicksville, NY, By: Harold M. Kingsley, for American National Fire Ins. Co., of counsel.

Kenny, Stearns & Zonghetti, New York, NY, By: Joseph T. Stearns, Trial Counsel for American National Fire Ins. Co., of counsel.

Haight Gardner Holland & Knight, New York, NY, By: James M. Toriello, James V. Marks, for Mirasco, Inc., of counsel.

*OPINION*

SWEET, J.

***1** American National Fire Insurance Company ("American National") and Great American Insurance Co. ("Great American") (collectively the "Insurers"), the plaintiffs in *American National Fire Insurance Co. v. Mirasco,* 99 Civ. 12405, and defendants in *Mirasco v. American National Fire Insurance Co.,* 00 Civ. 5098, have moved for judgment as matter of law pursuant to Fed.R.Civ.P. 50(b) and, in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59. For the following reasons, the motion is denied.

*Prior Proceedings*

The parties and prior proceedings have been described in greater detail in *American Nat'l Fire Ins. Co. v. Mirasco, Inc.,* 249 F.Supp.2d 303 (S.D.N.Y.2003) (*"Mirasco I"* ), familiarity with which is presumed. In that opinion, it was concluded that, *inter alia:* (1) the M/V Spero cargo was rejected by the Egyptian government, and (2) the IBP cargo was rejected due to an "embargo," and thus under an applicable exclusion to the Open Cargo Policy (the "Policy") purchased by Mirasco, Mirasco was entitled only to return freight for that percentage of the cargo. It was concluded that the only issue left for trial was what percentage, if any, of the Monfort and Excel cargo was rejected for a covered reason.

On May 26, 2003, the motions for reconsideration from both parties were denied in *American Nat'l Fire Ins. Co. v. Mirasco, Inc.,* 265 F.Supp.2d 240 (S.D.N.Y.2003) (*"Mirasco II"* ). In that decision, this Court also ruled on *in limine* motions from both parties to preclude the testimony of various witnesses. Shortly before trial, two further reconsideration motions were decided on September 30, 2003, *see American Nat'l Fire Ins. Co. v. Mirasco, Inc.,* 99 Civ. 12405, 00 Civ. 5098, 2003 WL 22271226 (S.D.N.Y. Sept. 30, 2003) (*"Mirasco III"* ), and October 15, 2003. *See American Nat'l Fire Ins. Co. v. Mirasco, Inc.,* 287 F.Supp.2d 442 (S.D.N.Y.2003) (*"Mirasco IV"* ).

A jury trial was held between October 20 and October 30, 2003. The Insurers moved for judgment as a matter of law under Fed.R.Civ.P. 50(a) at the close of Mirasco's case and again at the close of the Insurers' case. After less than two hours

Slip Copy                                                                    Page 2
2004 WL 1110414 (S.D.N.Y.)
**(Cite as: 2004 WL 1110414 (S.D.N.Y.))**

deliberation, the jury found that: 1) the Iowa Beef Products ("IBP") cargo aboard the M/V Spero (the "Spero") was rejected by the Egyptian authority because of Egyptian Ministerial Decree No. 6 ("Decree 6"); 2) the Egyptian authority improperly applied Decree 6 to the IBP cargo aboard the Spero; 3) 9% of the Excel cargo was rejected for mislabeling, and 91% of the Excel cargo was rejected for other reasons, including arbitrary action; 4) 25% of the Monfort cargo was rejected for mislabeling, and 75% of the Monfort cargo was rejected for other reasons, including arbitrary action; 5) the Insurers did not prove that Mirasco had breached its duty under the sue and labor clause to exercise the care which a prudent uninsured owner would take under similar circumstances to insured property to prevent or minimize the occurrence from loss. Immediately after the verdict was published, the Insurers indicated that they would move for post-trial relief.

  **\*2** On November 25, 2003, the Insurers filed the present motion. After exchange of briefs, oral argument was heard on the motion on January 21, 2004, at which time the motion was deemed fully submitted.

  *Discussion*

  The court in *TVT Records v. Island Def Jam Music Group,* 279 F.Supp.2d 366, 375 (S.D.N.Y.2003) recently provided a comprehensive review of the standards in this Circuit for a post-trial Rule 50(b) motion:
  The moving party bears a heavy burden to prevail on a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). Such an application is appropriately granted where "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Merrill Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113, 120 (2d Cir.1998). The Court may not arrive at this determination by evaluating the credibility of witnesses or the relative weight of the evidence. Rather, in assessing a motion for judgment under Rule 50, the Court must view the evidence in the light most favorable to the non-movant. *See Caruolo v. John Crane, Inc.,* 226 F.3d 46, 51 (2d Cir.2000). To grant a Rule 50(b) application, there must be "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of mere surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against [it]." *Concerned Area Residents for the Environment v. Southview Farm,* 34 F.3d 114, 117 (2d Cir.1994) (quoting *Song v. Ives Labs., Inc.,* 957 F.2d 1041, 1046 (2d Cir.1992) (citations omitted)). Moreover, arguments not raised in a preceding Rule 50(a) application are not properly preserved for review in a subsequent Rule 50(b) motion. *See Holmes v. United States,* 85 F.3d 956, 963 (2d Cir.1996) ("The issue was not mentioned in the ... Rule 50(a) motion.... We therefore have no occasion to rule on this ... claim."); *Cruz v. Local Union No. 3,* 34 F.3d 1148, 1155 (2d Cir.1994) ("If an issue is not raised in a previous motion for a directed verdict, a Rule 50(b) motion should not be granted unless it is required to prevent manifest injustice." (citations omitted; internal quotations omitted)).
  The *TVT Records* court similarly laid out the standard for a Rule 59 motion:
  The standard for granting a Rule 59 motion is less stringent. First, the trial judge may weigh the evidence himself and need not view it in the light most favorable to the non-movant and, second, the motion may be granted even if substantial evidence may support the jury's verdict. *See DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 134 (2d Cir.1998); *Sharkey v. Lasmo (Aul Ltd.),* 55 F.Supp.2d 279, 283 (S.D.N.Y.1999), *aff'd,* 214 F.3d 371 (2d Cir.2000). The Court may grant a new trial "if it is convinced that the jury had reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Song,* 957 F.2d at 1047 (citations omitted; internal quotations omitted); *accord Katara v. D.E. Jones Commodities,* 835 F.2d 966, 970 (2d Cir.1987). While the Court may grant a new trial even where substantial evidence supports the jury's verdict, the Second Circuit has cautioned that "the jury is empowered and capable of evaluating a witness's credibility, and this evaluation should rarely be disturbed." *Dunlap-McCuller v. Riese Org.,* 980 F.2d 153, 158 (2d Cir.1992).
  **\*3** Moreover, absent plain error, the Court will not review issues set forth as bases for a new trial pursuant to Rule 59 for which no timely objection was raised at trial. *See, e.g.,* Fed.R.Evid. 103; *Schaafsma v. Morin Vermont Corp.,* 802 F.2d 629, 636 (2d Cir.1986) ("Unless this was plain error, plaintiffs' failure to

Slip Copy                                                                  Page 3
2004 WL 1110414 (S.D.N.Y.)
**(Cite as: 2004 WL 1110414 (S.D.N.Y.))**

> object to the [issues now raised] on this ground precludes our review.... Moreover, the purpose of the contemporaneous objection rule ... is to alert the trial judge to his error so that he can correct it...."); *Palmieri v. Celebrity Cruise Lines, Inc.*, 98 Civ.2037, 2000 WL 310341, at *4 (S.D.N.Y. Mar. 27, 2000) ("A principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result." (citations omitted; internal quotations omitted)); *see also Memorial Drive Consultants, Inc. v. ONY, Inc.*, 96 Civ. 0702E(F), 2001 WL 241781, at *6 (W.D.N.Y. Mar. 7, 2001) ("Pursuant to Rule 103 of the Federal Rules of Evidence, the party seeking a new trial must have made a timely objection or offer of proof to preserve the evidentiary issue for review."); *Hardy v. Saliva Diagnostic Sys., Inc.*, 52 F.Supp.2d 333, 340 (D.Conn. Mar. 17, 1999) ("The burden of showing the harmful error rests with the moving party ..., and unless there is 'plain error,' failure to object to an issue during trial precludes review of that issue on a motion for a new trial." (citations omitted)).
> *Id.* at 375-76.

As an initial matter, the Insurers' motion under Rule 50(b) and 59 was timely filed. "The trial court cannot enlarge the ten-day time period specified by Rule 50(b)" or Rule 59. *Meriwether v. Coughlin*, 879 F.2d 1037, 1041 (2d Cir.1989) (citing Fed. R. Civ. 6(b)). Therefore, a "request for an extension of time to file a motion seeking j.n.o.v. or a new trial is ineffective even if it is received without objection and granted by the court." *Id.* In this case, the Insurers did not file their motion papers until November 25, 2003, over three weeks after the trial ended, with the Court's permission. However, immediately after the verdict was published, counsel for the Insurers stated: "Your Honor, we will move with respect to the verdict." Tr. 1192. This statement is deemed a motion for timeliness purposes under Rules 50(b) and 59(b). *See Meriwether*, 879 F.2d at 1041 (agreeing "with the district court that the statement 'I would ... like to ... note that defendants wish to move' was a motion"); *see also Thomas v. Medco*, 95 Civ. 8401, 2000 WL 297186, at *3 (S.D.N.Y. Mar. 22, 2000) ("if the losing party makes an oral motion after the verdict, the application is timely even if the court permits the parties to supplement their presentation with written submissions at a date more than ten days after entry of judgment, at least if those submissions reflect elaborations of the arguments orally made and do not involve entirely new theories for relief.") (citing 12 *Moore's Federal Practice* ¶ 59.11[1][b] at 59-33). The affidavit served by the Insurers on December 2, 2003 raising another new argument will also be deemed to be part of the timely filed motion. *See Lightwave Technologies, Inc. v. Corning Glass Works*, 86 Civ. 759, 1991 WL 4737, at *8 (S.D.N.Y. Jan. 18, 1991) (considering new ground not raised in plaintiff's initial motion for j.n.o.v. or new trial).

*The Insurers' Arguments*

**\*4** The Insurers have argued that judgment as a matter of law or alternatively, a new trial should be granted on the following grounds: 1) Mirasco's losses are excluded by the Paramount Warranty under Clause 32(a)(I) of the Policy that restraint or detainment of the cargo aboard the M/V Spero ("Spero") would not occur; 2) Mirasco's losses are excluded by Clause 25 of the Policy which specifies that the cargo is warranted free from losses arising from delay; 3) the Court's holding that the entire cargo was rejected was in error; 4) the Court improperly took from the jury the issue of whether the Spero's cargo was refused entry into Egypt or was instead released (or could have been released) for import; 5) because the exclusion in the rejection insurance in the event of "embargo and prohibition" cannot create coverage where none existed, the Court improperly allowed the jury to find that Mirasco was covered as a result of the arbitrary or improper enforcement of Decree 6; 6) no evidence was introduced at trial to overcome the presumption of regularity attaching to the affairs of foreign governments; 7) the Court violated the Act of State doctrine in requiring a jury to find that the Egyptian government arbitrarily applied its own laws; 8) the Court improperly found that insurance coverage existed for apprehension of an insured peril such as "fear of rejection"; 9) the Court improperly refused to grant the Insurers judgment as a matter of law based on Mirasco's alleged acknowledgment that it had no other insurance coverage when it sought reimbursement for the cost of return freight on March 22, 1999 and refused to

Slip Copy                                                                    Page 4
2004 WL 1110414 (S.D.N.Y.)
**(Cite as: 2004 WL 1110414 (S.D.N.Y.))**

charge the jury on this defense; 10) the jury erroneously found that 25% of the Monfort cargo was mislabeled; and 11) several evidentiary errors, detailed below.

When the Insurers moved for judgment as a matter of law under Rule 50(a) at the close of Mirasco's case, the sixth ground listed above was raised, as was the argument that there was insufficient evidence that Decree 6 was applied to the IBP cargo aboard the Spero, which is equivalent to the third and fourth grounds. Trial Transcript ("Tr.") at 608-613. At the close of the Insurers' case, the Insurers renewed their 50(a) motion on the same grounds as in the motion at the close of Mirasco's case, and in addition argued that "a claim of an arbitrary withholding of an exemption from [Decree 6 by the Egyptian government with regard to the Monfort and Excel cargo] is insufficient ... to establish coverage under the rejection policy," Tr. 1048-49, a claim which is equivalent to the fifth ground above. [FN1] Both motions were denied. The Insurers are entitled to make a Rule 50(b) motion only on the grounds raised by their two Rule 50(a) motions, absent a "manifest injustice". *See* Holmes, 85 F.3d at 963; Cruz, 34 F.3d at 1155. Because the Insurers have made no argument that an injustice would be done by declining to consider the issues not raised on their Rule 50(a) motions, each of those issues are deemed not to have been properly preserved for review. Accordingly, the Rule 50(b) motion is restricted to the third, fourth, fifth and sixth grounds.

>   FN1. Mirasco argues that the Insurers moved at trial for judgment as a matter of law only on the grounds that the cargo was not rejected and that Mirasco failed to comply with its sue and labor obligations. While the former ground is present, in addition to the others listed, the Insurers did not raise the issue of Mirasco's alleged noncompliance with the sue and labor clause. *See* Tr. 1048-49.

*The Previous Holding that the Cargo was Rejected Will Not Be Disturbed*

**\*5** The third and fourth grounds both relate to the question of whether the cargo aboard the Spero was rejected by the Egyptian authorities. The rejection issue has been repeatedly relitigated by the parties, both before and at trial, and it has been repeatedly held that the cargo was rejected. *See* Tr. 1086; Mirasco IV, 287 F.Supp.2d at 445; Mirasco II, 265 F.Supp.2d at 247; Mirasco I, 249 F.Supp.2d at 320. No reason has been submitted by the Insurers to justify a different result.

Under the fifth ground, the Insurers argue that Clause D of the rejection insurance rider, *see* Mirasco I, 249 F.Supp.2d at 307-08, which excludes claims for other than return freight based on "embargo or prohibition," cannot create coverage based solely on the fact that the exclusion does not apply. While the legal principle on which the Insurers rely is correct, *see* Commercial Union Ins. Co. v. Flagship Marine Services, Inc., 190 F.3d 26, 33-34 (2d Cir.1999), its application in the present case is logically dependent on a finding that the cargo was not rejected, and therefore that the rejection insurance rider in the policy is not applicable. The cargo, however, has been held to be rejected, and the rejection insurance rider therefore creates coverage unless it is found that the exclusions listed in Clause D are applicable.

*Evidence Supports the Jury's Finding of Arbitrary Action*

The Insurers' final unwaived argument (the sixth ground) is that no substantial evidence was submitted at trial to overcome the presumption of regularity which attaches to the conduct of foreign governments. At trial, Mirasco argued that arbitrary action "has been shown here and that is exactly what the testimony has been from various witnesses, including Mr. Stellwag." Tr. 1049. The Insurers have made no showing that, with respect to the finding of arbitrary action on the part of the Egyptian government, there is such "a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of mere surmise and conjecture." Southview Farm, 34 F.3d at 117.

Each of the Insurer's unwaived arguments has been rejected. Accordingly, the Rule 50(b) motion is denied.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                Page 5
2004 WL 1110414 (S.D.N.Y.)
**(Cite as: 2004 WL 1110414 (S.D.N.Y.))**

*Rule 59* Motion

The Insurers have moved in the alternative for a new trial pursuant to Rule 59 on each of the grounds put forward on the Rule 50(b) motion. Each of the four unwaived arguments rejected on the Rule 50(b) motion are also rejected as to the Rule 59 motion because the Insurers have shown as to those grounds "that the jury had reached a seriously erroneous result or that the verdict is a miscarriage of justice." Song, 957 F.2d at 1047. Further, the eighth ground, that coverage cannot be based solely on a "fear of rejection," is, like the fifth ground, logically dependent on a finding that the cargo was not rejected. Because the cargo has been found to be rejected, the eighth ground may not form the basis for a new trial.

**\*6** The first, second and seventh grounds were not raised in the Insurers' disclaimer letters, pleadings, summary judgment motion, motions for reconsideration, motions for judgment as a matter of law or proposed jury charges. The Insurers also did not submit the required pretrial order. Mirasco argues that these defenses (the Paramount Warranty, the Delay Warranty and the Act of State doctrine) which have been waived by the Insurers for failing to raise them earlier, despite having raised other defenses, such as the loss of market exclusion and sue and labor defenses. In support, Mirasco cites *State of New York v. AMRO Realty Corp.,* which holds that under New York law, "an insurer is deemed, as a matter of law, to have intended to waive a defense to coverage where other defenses are asserted, and where the insurer possesses sufficient knowledge (actual or constructive) of the circumstances regarding the unasserted defense."). 936 F.2d 1420, 1431 (2d Cir.1991). The waiver doctrine, however, is subject to a major limitation:
> The New York Court of Appeals held in [Albert J. Schiff Assoc., Inc. v. Flack, 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 975, 417 N.E.2d 84, 87 (1980) ], that where the issue is the existence or non-existence of coverage (e.g., the insuring clause and exclusions), the doctrine of waiver is simply inapplicable. *See also* Juliano v. The Health Maintenance Org. of New Jersey, 221 F.3d 279, 288 (2d Cir.2000). The waiver cases cited by [insured] typically involve an insurer's attempt to disclaim coverage on the basis of lack of notice or failure of the insured to cooperate, where the disclaimer of coverage letter had cited no such grounds. In other words, they address forfeiture of coverage. A waiver, however, may not apply to create coverage where none exists.
>
> *Westport Resources Investment Servs. v. Chubb Custom Ins. Co.,* 02 Civ. 3096, 2003 WL 22966305, at \*6 (S.D.N.Y. Dec. 16, 2003); *see also* National Union Fire Ins. Co. of Pittsburgh v. Travelers Indemnity Co., 210 F.Supp.2d 479, 484 (S.D.N.Y.2002) ("If the rule were otherwise, the insured would be allowed to extend its coverage beyond what was originally bargained for."). The defenses based on the Paramount Warranty and the Delay Warranty fall within the limitation laid out in *Westport Resources,* as they raise the issue of the existence or non-existence of coverage, and cannot be waived. The Act of State doctrine defense, however, falls outside the waiver limitation, and accordingly, has been waived by the failure to raise it earlier. [FN2]

> FN2. The Insurers contend that the Act of State doctrine was raised at the Rule 50(a) motion at the close of evidence in Mirasco's case. The Insurers argued in that motion that the evidence was not insufficient to overcome the presumption of regularity of actions and decisions of foreign governments and their agencies, Tr. 608, and emphasized that "[t]his is a matter of some sensitivity," because "[t]he minister of trade and supply stands in this court accused of having violated Egyptian law, including the Egyptian constitution." *Id.* at 609. However, such an argument is insufficient to put Mirasco on notice that the Insurers were disclaiming coverage based on a violation of the Act of State doctrine. Mirasco did not address the Act of State doctrine in its opposition to the motion, *see id.* at 609-11, and the Insurers did not note Mirasco's silence on the issue in reply. *See id.* at 611-13. While the Act of State doctrine was raised tentatively by the Insurers before the jury was selected, *see id.* at 28, this brief mention is not enough to have raised the issue at trial.

Even though the Insurers have not formally waived the Paramount Warranty and Delay Warranty defenses, they may not be considered as grounds for relief because they

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 6
2004 WL 1110414 (S.D.N.Y.)
**(Cite as: 2004 WL 1110414 (S.D.N.Y.))**

have been raised for the first time in the Rule 59 motion, they may not form the basis for relief "unless the error was so fundamental that gross injustice would result." TVT Records, 279 F.Supp.2d at 376 (quoting Palmieri, 2000 WL 310341, at *4). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'...." Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir.1998); see also Ciralsky v. C.I.A., 355 F.3d 661, 673 (D.C.Cir.2004) ("Ordinarily Rule 59 motions [for a new trial or a rehearing] are not granted by the District Court where they are used by a losing party to request the trial judge to reopen proceedings in order to consider a new defensive theory which could have been raised during the original proceedings.") (quoting Kattan by Thomas v. District of Columbia, 995 F.2d 274, 276 (D.C.Cir.1993)); Topps v. U.S. Fidelity & Guar. Co., 871 F.Supp. 284, 294-95 (S.D.Tex.1994), rev'd on other grounds, Topps v. Gulf Coast Marine, Inc., 72 F.3d 483 (5th Cir.1996) (declining to grant Rule 59 motion despite potentially dispositive caselaw cited by insurer, because insurer "had its fair bite at the apple in this Court"); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2805 (2d ed.1995).

  **\*7** The ninth ground, that judgment as matter of law should have been granted based on Mirasco's alleged acknowledgment that it had no other insurance coverage when it sought reimbursement for the cost of return freight on March 22, 1999, was first raised by the Insurers in a letter to the Court dated October 14, 2003, less than one week before trial. This argument, which amounts to a belatedly raised affirmative defense of estoppel or accord and satisfaction, has been waived by failure to raise it earlier. See AMRO, 936 F.2d at 1431. Like the Act of State doctrine defense, the estoppel defense does not raise issues going to "the existence or non-existence of coverage," Westport Resources, 2003 WL 22966305, at *6, and the waiver doctrine is therefore appropriately applied here. Even if the estoppel defense was not waived, Mirasco proffered evidence at trial showing that Mirasco had always indicated its intention to seek coverage for a full rejection claim.

   *The Jury's Finding as to the Percentage of Mislabeled Monfort Cargo Will Not Be Disturbed*

  In an affidavit submitted over a week after the Insurers filed the briefs for their motion for a new trial, the Insurers argue that the percentage of mislabeled Monfort beef livers should be held as a matter of law to be 43.6% of Monfort cargo, rather than 25%, as the jury found. The Insurers are apparently arguing that the verdict was against the weight of the evidence. However, the Insurers have not established that the evidence submitted with the affidavit in support of the 43.6% figure was admitted into evidence.

  As discussed above, to set aside the jury's verdict and enter judgment as a matter of law, it must be established that "the jury's findings could only have been the result of sheer surmise and conjecture, or where the evidence overwhelmingly compels a different verdict." Cweklinsky v. Mobil Chemical Co., 364 F.3d 68, 75 (2d Cir.2004) (internal quotations omitted). The Insurers have not met that high standard. Evidence was introduced that Monfort intended to reimburse Mirasco for the cost of the mislabeled cargo. The insured value of the Monfort cargo was $418,444.08, and the amount Monfort paid Mirasco for the mislabeled cargo was $115,000. The jury could have reasonably concluded therefore that approximately 25% of the Monfort cargo was mislabeled. The jury's verdict will accordingly not be disturbed.

   *Any Evidentiary Errors are Insufficient to Warrant a New Trial*

  The Insurers argue that a new trial is warranted in light of numerous evidentiary errors allegedly made by the Court. They allege that the following errors were made: a) the refusal to compel production of Fadi Rizk for deposition; b) the admission of the testimony of Mohammed El Shafy ("El Shafy") despite Mirasco's alleged improper conduct at his deposition in Egypt; c) the admission of Egyptian newspaper accounts relating to United States beef products in addition to improper characterizations of the newspaper accounts by Mirasco's counsel in their summation; d) the exclusion of aspects of the testimony of Ahmed El Beah; and e) the exclusion of the testimony of

         Copr. ©  2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 7
2004 WL 1110414 (S.D.N.Y.)
**(Cite as: 2004 WL 1110414 (S.D.N.Y.))**

Assem Elbendary.

*\*8* In order for evidentiary errors to form the basis for a new trial, the standard of Fed.R.Civ.P. 61 must be met:
> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed.R.Civ.P. 61; *see also* Perry v. Ethan Allen, Inc., 115 F.3d 143, 150 (2d Cir.1997) ("even an erroneous evidentiary ruling will not lead to reversal unless affirmance would be 'inconsistent with substantial justice' "). "The Second Circuit has clarified that a substantial right has been affected only where a jury's judgment was likely to have been 'swayed by the error." ' Parrish v. Sollecito, 280 F.Supp.2d 145, 165 (S.D.N.Y.2003) (quoting Perry, 115 F.3d at 150).

While the Insurers have argued why they believe each of the evidentiary rulings was erroneous, they have made no attempt to show that their substantial rights have been affected, or to show that the jury's judgment would have been affected by any error. In addition, the issue of Mirasco's conduct at the deposition of El Shafy has already been considered, and the Insurers' allegations of improper conduct rejected. *See* Mirasco II, 265 F.Supp.2d at 250-51. Further, the admission of the newspaper articles was followed by the instruction to the jury that they were not to be considered for the truth of their contents and that counsel's statements were not to be taken as evidence. Tr. at 1136, 1175-76. The Insurers, accordingly, are not entitled to a new trial on the basis of the evidentiary errors they have alleged.

*Conclusion*

For the reasons set forth above, each of the Insurers arguments for judgment as a matter of law under Rule 50(b) and for a new trial under Rule 59 have been rejected. Accordingly, the motion is denied.

It is so ordered.

2004 WL 1110414 (S.D.N.Y.)

Motions, Pleadings and Filings (Back to top)

- 1:00CV05098 (Docket) (Jul. 12, 2000)

- 1:99CV12405 (Docket) (Dec. 23, 1999)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.