1997 WL 362311                                                                    Page 1
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac. Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**


United States District Court, S.D. New York.

Staci BONNER, Plaintiff,

v.

Robert GUCCIONE, Jr., Individually and as Publisher and Editor of Spin Magazine, Spin Magazine, Camouflage Associates, Camouflage Publishing, Inc., Camouflage Publishing, Inc., d/b/a Spin Magazine, Stephen C. Swid Corp., and SCS Communications, Inc., Defendants.

**No. 94 CIV. 7735.**

July 1, 1997.

For Plaintiff: Hillary Richard, Esq. Laurie Edelstein, Esq. RABINOWITZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C. 740 Broadway--5th Floor New York, New York 10003(212) 254-1111

For Defendants: Bettina B. Plevan, Esq. John Daly, Esq. PROSKAUER, ROSE, GOETZ & MENDELSOHN, L.L.P. 1585 Broadway New York, New York 10036(212) 969-3065

*OPINION & ORDER*

DENISE COTE, District Judge:

***1** The parties have submitted briefs with regard to entering judgment in this action, following a jury trial. Additionally, defendants move for judgment as a matter of law, pursuant to Rule 50(b), Fed.R.Civ.P., with respect to defendant Robert Guccione Jr.'s personal lability under the Equal Pay Act ("EPA") and the New York State Human Rights Law ("NYSHRL"). Plaintiff opposes this motion.

BACKGROUND

Plaintiff filed this action on October 25, 1994, alleging violations of federal and state law with regard to her employment at Spin Magazine ("Spin"). This Court conducted a jury trial from March 10, 1997 to April 9, 1997. The only defendants left in the case at the time of trial were Camouflage Associates, the publisher of Spin, and Robert Guccione, Jr., one of the owners of Spin. The following issues went to the jury: (1) hostile work environment sexual harassment under Title VII and the New York State Human Rights Law ("NYSHRL"); (2) quid pro quo sexual harassment under Title VII and the NYSHRL; (3) intentional gender discrimination under Title VII and the NYSHRL; (4) constructive discharge under Title VII and the NYSHRL; (5) a violation of the federal Equal Pay Act ("EPA"); and (6) a state law claim of intentional infliction of emotional distress against Camouflage Associates.

The jury returned a verdict for the plaintiff on her claim of hostile work environment sexual harassment under Title VII and the NYSHRL, against both Camouflage Associates and Mr. Guccione; the jury also returned a verdict for the plaintiff on her claim under the EPA, against both Camouflage Associates and Mr. Guccione. In its determination of Mr. Guccione's personal liability, the jury found him liable as an owner or person with power over personnel decisions at Spin, but not as an active participant in the sexual harassment. The jury found for the defendants on all other counts. The jury initially awarded the plaintiff $10,000 in back pay, and $10,000 under the EPA. In response to a supplemental charge and special verdict questions that will be discussed in great detail in this Opinion, the jury awarded the plaintiff $90,000 in compensatory damages for her claim of hostile work environment sexual harassment under the NYSHRL.

A central dispute at this juncture in the litigation is the completeness of a jury charge regarding the statute of limitations--and its exception, the continuing violation doctrine--for the plaintiff's claims under Title VII and the NYSHRL. The original jury charge described the statute of limitations for Title VII, but did not

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                                  Page 2
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac. Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

instruct the jury with regard to the three-year statute of limitations under the NYSHRL. The error was not noticed until after the jury was charged. At that time, the plaintiff asked that the jury not be given the correct charge while it was deliberating. After the jury delivered its verdict, the Court through a special interrogatory determined that the statute of limitations charge had affected the verdict, and thus gave a corrected charge with regard to the statute of limitations. The second verdict rendered the same determinations as to liability, but increased the plaintiff's compensatory damages for hostile work environment sexual harassment under the NYSHRL from $0 to $90,000. Given the importance of the jury charges to the two verdicts rendered, I will describe in some detail the events that led up to and flowed from these charges.

**\*2** This Court prepared a draft jury charge, see Ct.Exh. 6, and held a charging conference with the parties in the morning of April 1, 1997. The parties had an hour to read the draft charge, then this Court held a charging conference that lasted approximately two hours. The parties gave the Court additional comments on the charge at the end of the day and that night sent the Court by facsimile additional comments and proposed instructions. The final requests regarding the charge were made the morning of April 2, 1997. While there were numerous objections and comments about various issues in the charge during the charging conference and the later submission of requested instructions, neither party objected to the sections of the charge instructing the jury on the statutes of limitations. [FN1]

The draft jury charge included two instructions regarding statutes of limitations. One charge addressed the plaintiff's employment discrimination claims, but not her claim for constructive discharge as there was no dispute that her complaint was timely filed with respect to that one claim. The first charge instructed the jury that
> Finally, there is one issue that you must decide with regard to [the plaintiff's claims of hostile work environment sexual harassment, quid pro quo sexual harassment and intentional gender discrimination]. The law requires a plaintiff to act with some speed in order to protect her rights.
> *A plaintiff must file a complaint with an agency within 300 days of allegedly discriminatory conduct.* The rule is that only the conduct that occurred within the 300 days before the filing is the basis for a legal claim. If the conduct falls outside this 300-day period, the plaintiff cannot recover for that alleged discrimination.
> *There is an exception to this rule for a plaintiff who has experienced a continuous policy and practice of discrimination.* Discrete incidents of discriminatory treatment that are not related to discriminatory policies or mechanisms, however, cannot be considered by you. Instead, the plaintiff must prove that there were specific ongoing discriminatory policies or practices. If a defendant was aware of specific and related instances of discrimination and permitted them to continue unremedied over a significant period of time, you may find that those instances reflect the existence of a discriminatory policy or practice. If you find that there was a continuous policy of discrimination, then the plaintiff can recover for all the discrimination, no matter when it occurred, so long as the last discriminatory act in furtherance of the policy and practice fell within the 300-day period.
> *This means that for Ms. Bonner to recover* on [the claims of hostile work environment sexual harassment, quid pro quo sexual harassment or intentional gender discrimination], *she must prove that there was a continuous policy and practice of discrimination at Spin, and that one act in furtherance of this policy or practice occurred after September 11, 1993, and before Ms. Bonner left Spin on November 24, 1993.*

**\*3** *See* Ct.Exh. 6 at 26-27 (emphasis supplied).

The second charge on the statute of limitations related to the plaintiff's state law claim for intentional infliction of emotional distress. That charge read as follows:
> *I have already charged you with regard to the statute of limitations for the*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                                Page 3
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac.
Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

> *plaintiff's claims under Title VII and New York law.* The same principle applies to Ms. Bonner's claim for intentional infliction of emotional distress, although the cut-off date is different. You must find with respect to the conduct that constituted intentional infliction of emotional distress, that some of this conduct occurred after October 25, 1993 and before November 24, 1993. Specifically, you must find that there was a course of outrageous conduct toward Ms. Bonner that was so severe as to constitute intentional infliction of emotional distress and that an act in furtherance of this course of conduct occurred after October 25, 1993.

*See* Ct.Exh. 6 at 37 (emphasis supplied). There were no differences between these draft charges on the statutes of limitations and the final charge given to the jury. *See* Ct.Exh. 11 at 27-28, 39.

After the charge was read to the jury on April 2, 1997, but before the Court instructed the jury to deliberate, the Court again asked the parties at sidebar whether they had any objections to the charge. Plaintiff's counsel stated:
> In your [second] charge on the statute of limitations, you mentioned New York law. There is no statute of limitations issue with respect to New York law. It's three years back. I didn't see it, I just heard it. I don't know if you intended that.... It wasn't in the actual Title VII charge, so I don't know if it needs to be corrected. I just wanted to bring it to your attention.

When this Court asked plaintiff's counsel whether she wanted the Court to do anything about this issue, plaintiff's counsel replied in the negative. The jury retired to deliberate.

Without further request from the parties, on April 3, 1997, the Court gave the parties draft charges to supplement the previous charge on the statute of limitations for the employment discrimination claims. *See* Ct.Exhs. 17-19. The supplemental charges noted that while the statute of limitations under Title VII required a plaintiff to file with the EEOC within 300 days--and for a continuing violation exception, required one event in furtherance of the policy to occur within the period not barred by the statute of limitations--the NYSHRL allowed a party three years to file a lawsuit. Plaintiff responded that it would be prejudicial to give the supplemental charge to the jury at that juncture because it would emphasize the statute of limitations issue. Plaintiff suggested that the problem of the incomplete charge could be corrected by a special interrogatory after the verdict. Defendants stated that they wanted the charge given.

The Court decided not to give the charge, stating that if any party was prejudiced by the original charge it was the plaintiff and since the plaintiff did not want the charge read, the Court would not do so. The Court did, however, state that counsel should consider whether, depending on the verdict rendered by the jury, additional clarifying questions should be given to the jury.

**\*4** On Friday, April 4, 1997, the Court gave the parties three additional documents to be used if the jury returned a verdict for the defendants on any of the first three claims--hostile work environment sexual harassment, quid pro quo sexual harassment and intentional gender discrimination. The first document was a simple special interrogatory that asked the jury whether the statute of limitations affected their decision with regard to each employment discrimination charge. *See* Ct.Exh. 22a. The second document was an additional charge in the event that the answer to the first question was "yes." *See* Ct.Exh. 23a. The additional charge laid out the different statutes of limitations for Title VII and the NYSHRL. Finally, the third document was a special verdict form which asked the jury to reconsider the issues of liability and damages in light of the new charge. *See* Ct.Exh. 24a. The defendants objected to any additional charge on the grounds that plaintiff had already twice waived her right to such a charge, and that it would be tantamount to the Court telling the jury that its decision was wrong and should be changed.

At 4:25 p.m., the jury sent in a note stating that they had only one issue left to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                                    Page 4
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac. Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

decide and with respect to that issue, the jury was at an impasse. The jury asked that they be dismissed and return to the issue fresh on Monday. *See* Ct.Exh. 21. The Court dismissed the jury for the day.

At 2:25 p.m., on Monday, April 7, the jury sent a note to the Court stating that "we are at a complete impasse at this juncture with respect to the imposing of damages in this case." *See* Ct.Exh. 22. After discussing the note with the parties, the Court gave an *Allen* charge to the jury.

On Tuesday, April 8, the jury returned a verdict for the plaintiff on her claim for hostile work environment sexual harassment against Camouflage Associates under Title VII and the NYSHRL. *See* Ct.Exh. 24. With regard to Mr. Guccione's liability under the NYSHRL, the jury found that he was liable as an owner or person with power over personnel decisions but not through his active participation. The jury also returned a verdict for the plaintiff on her claim of a violation of the EPA, against both Camouflage Associates and Mr. Guccione, finding in each instance that the violation was willful. The jury returned a verdict for the defendants on all other counts. The jury awarded the plaintiff $10,000 on her EPA claim and $10,000 in back pay for the period she was employed by Spin, but not after she left Spin. The jury awarded her no compensatory damages and no punitive damages.

After excusing the jury for a brief period, the Court discussed with the parties an apparent inconsistency with respect to the award of back pay. That is, the jury found for defendants on all claims that allowed back pay, and found for the plaintiff only on her claim for hostile work environment sexual harassment, yet that claim did not allow an award of back pay. The defendants took the position that judgment could only be entered for $10,000 under the EPA claim; the plaintiff asked that the Court inquire of the jury about the apparent inconsistency. The Court decided not to make further inquiry at that point with respect to that inconsistency.

**\*5** The plaintiff requested that the special interrogatory regarding the effect of the statute of limitations be posed, as well as the additional charge, if necessary. The defendants objected on the grounds that it was coercive and prejudicial to the defendants. The special interrogatory--in a form marked Second Special Verdict Form--was given to the jury. *See* Ct.Exh. 26. It asked whether they reached their verdict for the defendants with regard to quid pro quo sexual harassment and intentional gender discrimination solely because (1) plaintiff did not prove a policy or practice of sexual harassment or (2) that plaintiff did not prove one act in furtherance of this policy or practice within the statute of limitations period. As the Court explained the interrogatory to the jury, many of the jurors nodded yes and three of the jurors indicated orally that the statute of limitations issue had been the reason for their verdict. [FN2] After a brief deliberation, the jury answered yes to both questions. That is, they indicated that their verdicts on the claims for quid pro quo sexual harassment and intentional gender discrimination were based solely on the statute of limitations. Since it was near the end of the day, the jury was then dismissed with instructions to return on April 9.

After discussion with counsel, and over the objection of the defendants, the Court decided that it was appropriate to resubmit all the questions of liability under the NYSHRL as the longer period allowed under the New York statute of limitations might affect each of the decisions. In its charge, *see* Ct.Ex. 32, the Court described the three-year statute of limitations for the NYSHRL claims. The Court explained that it was resubmitting questions regarding the sexual harassment hostile work environment claim to the jury even though it had already returned a verdict for the plaintiff under that claim so that the jury could determine whether the law on the statute of limitations changed its determination as to the bases for Mr. Guccione's liability and the award of compensatory damages. The jury was instructed not to change its award of damages unless it determined that its findings on liability, as governed by the newly explained statute of limitations, affected the damage award. A Third Special Verdict Form posed these questions, and clarified the confusion regarding the $10,000 back pay award. On the advice and agreement of counsel, the Court determined that the best way to approach the back pay issue was to ask the

Copr. ©  2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                                    Page 5
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac. Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

following question in the Third Special Verdict Form: "Did the plaintiff prove by a preponderance of the evidence that she is entitled to back pay under the NYSHRL, that is, in addition to the $10,000 already awarded on the Equal Pay Act?" *See* Ct.Exh. 32.

On April 9, 1997, the Court read the supplemental charge to the jury. *See* Ct.Exh. 32. After deliberating for a period, the jury sent a note to the Court asking for clarification on the back pay and EPA awards. *See* Ct.Exh. 34. The Court discussed this note with the parties. The Court suggested that it read a section of a proposed supplemental charge which had not been given because of the objections of all the parties on April 8. The Court modified that draft, found in Ct.Exh. 31, to read as follows:

*6 We are assuming that the $10,000 that you awarded yesterday was awarded on the plaintiff's Equal Pay Act claim. As explained at page 40 of the Jury Charge, the plaintiff may not recover Back Pay for sexual harassment hostile work environment, but may recover Back Pay for quid pro quo sexual harassment, intentional gender discrimination, constructive discharge, and a violation of the Equal Pay Act. Therefore, we assume that you entered an award of $10,000 of Back Pay on the Equal Pay Act claim and that if you enter an award of Back Pay on the Third Special Verdict Form it is for an amount in addition to the $10,000 you have already awarded on the Equal Pay Act claim.

Plaintiff requested that this charge be given, and, in addition, that the Court re-read the original charge on back pay and compensatory damages, as the jury seemed confused about these issues. The defendants objected to reading the charge on back pay and compensatory damages. The Court ruled that it would not re-read the charge on those two types of damages as there was nothing in the jury's note to indicate that they were confused about the standard for awarding these types of damages.

The defendants requested that the jury be told that it could award additional damages only if it found that the plaintiff "suffered additional damages, besides those damages for which she was compensated on the Equal Pay Act." In response to this request, the Court inserted a phrase in the middle of the charge to read as follows:

Therefore, we are assuming that you have entered an award of $10,000 of back pay on the Equal Pay Act claim and that if you enter an award of back pay on the third special verdict form it is *because you have found that the plaintiff is entitled to an award of back pay* in an amount in addition to the $10,000 you have already awarded on the Equal Pay Act claim.

(Addition emphasized.) The plaintiff objected to this insertion, but the Court included it when it read the charge to the jury.

At the end of the charge, one juror said that she was "still confused." The Court then explained the charge in more simplified terms, relating it to the verdict rendered by the jury and explaining that back pay was not available for a claim of hostile work environment sexual harassment. The Court instructed the jury not to hesitate to send out another note if it needed further clarification.

Plaintiff's counsel asked for a sidebar where she noted that the same juror who said she was confused had held up two fingers to indicate that the jury intended to give two awards. Plaintiff's counsel stated that she felt that the jury needed to be told that they could award compensatory damages. Defendants objected since the jury had not asked a single question about compensatory damages and there was no reason to think they were confused. The Court gave no further charges on the issue. There were no other objections made to the charge just given to the jury. As the Court directed the jury to return to its deliberations, the foreperson indicated that the charge had been helpful.

*7 Later that afternoon the jury returned a verdict. This verdict reached the same conclusion for liability on the claims under the NYSHRL as had the first verdict--that is, the jury found for the plaintiff on her claim of hostile work environment sexual harassment, and for the defendants on the claims of quid pro quo

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                            Page 6
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac.
Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

sexual harassment, intentional gender discrimination and constructive discharge. The finding with regard to Mr. Guccione's personal liability for hostile work environment sexual harassment also did not change-- that is, he was found liable as an owner and as a person with power over personnel decisions but not as an active participant. With regard to damages, however, the jury awarded the plaintiff $90,000 in compensatory damages under the NYSHRL for her claim of hostile work environment sexual harassment.

The parties have submitted briefs in connection with the entering of judgment and defendants have made a motion for judgment as a matter of law with regard to Mr. Guccione's personal liability under the NYSHRL and the EPA.

*DISCUSSION*

A. *Post-Verdict Questions and Charges*

Defendants contend that the post-verdict questions were improper because such questions cannot be given in the circumstances of this case and because they were coercive. I disagree with both contentions.

First, post-verdict questions and instructions are used in a variety of contexts. They are proper where a verdict is inconsistent, *Auwood v. Harry Brandt Booking Office, Inc., 850 F.2d 884, 890-91 (2d Cir.1988)*; *Interpool Ltd. v. Patterson, 874 F.Supp. 616, 625 (S.D.N.Y.1995)* (citing *Auwood* ), or, for special verdict questions, where a party

> belatedly noticed the failure to submit a needed question to the jury [and thus] could ask the court to submit that question in a postverdict interrogatory, and the trial court would have discretion to submit such an interrogatory.

*Metromedia Co. v. Fugazy, 983 F.2d 350, 363 (2d Cir.1992)*. In the context of a criminal case, the Second Circuit held that "[i]f a supplemental charge is legally correct, the district court enjoys broad discretion in determining how, and under what circumstances, that charge will be given." *United States v. Civelli, 883 F.2d 191, 195 (2d Cir.1989)* (supplemental charge given in response to jury note, but before the verdict). [FN3]

The Second Circuit has held that "it is clear that in some instances additional instructions may be given even after a jury ... returns a verdict." *Manufacturers Hanover Trust v. Drysdale Sec. Corp., 801 F.2d 13, 27 (2d Cir.1986)*. The special instance in that case was that the jury had returned a general verdict of liability in a case involving six weeks of trial time and a number of claims and defendants. The jury's post-verdict enumeration of the claims on which it found the defendants liable permitted the court to avoid a retrial should there have been an error in the charge relating to a single claim.

**\*8** The parties make much of the timing of the objections and questions. Defendants contend that post-verdict questions may not be used where the Court and a plaintiff are aware of a missing charge when the jury is charged and nothing is done to correct that omission. Defendants maintain that it would be proper if the error in the jury charge was noted for the first time only after the verdict was returned. Defendants contend that plaintiff waived her right to the supplemental charge because she twice declined the Court's offer that the charge be given. Plaintiff argues persuasively that the defendants cannot claim prejudice when they requested at an earlier stage that the supplemental charge be read to the jury, but only decided to object to such a charge after a verdict was returned that was substantially in their favor. Moreover, the plaintiff did not waive her right to the charge since she merely asked that it be given in a different form, as a post-verdict interrogatory, and not a charge during deliberations.

Second, the supplemental charge and special verdict questions were not coercive. Defendants contend that the questions were coercive because they asked the jury to consider questions on which they had already rendered a verdict, asked them to reconsider damages, and improperly emphasized compensatory damages. Defendants

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                         Page 7
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac. Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

cite two cases as support for their argument: McCollum v. Stahl, 579 F.2d 869, 871 (4th Cir.1978), *cert. denied,* 440 U.S. 912 (1979), and Perricone v. Kansas City S.R.R. Co., 704 F.2d 1376 (5th Cir.1983). Both these cases, however, are inapposite.

In *McCollum,* where the jury made a finding of no liability but assessed damages, the court submitted post-verdict questions to clarify the inconsistent verdict. The Fourth Circuit held that this was improper as the court had "an unequivocal finding of no liability" and therefore should not have proceeded. McCollum, 579 F.2d at 871. The Fourth Circuit held that the questions regarding damages were "surplusage" after the jury had rendered a verdict on the determinative issue of liability. *Id.* The Second Circuit distinguished *McCollum* in Manufacturers Hanover, 801 F.2d at 26, where the Court noted that a post-verdict interrogatory regarding the legal basis for a verdict may be particularly useful and is not tantamount to encouraging the jury to alter its previous verdict. Id. at 26.

In *Perricone,* the Fifth Circuit affirmed the *sua sponte* submission of a supplemental instruction by the trial court to cure an inconsistent verdict, given the absence of a contemporaneous objection. Perricone, 704 F.2d at 1377. [FN4] The court observed, however, that "[t]here is a substantial risk that such a supplemental instruction given immediately to the jury on its return is coercive." Id. at 1378. The court continued to say that this risk was reduced by the instruction given since it was phrased "in a neutral manner and accurately expressed the law," yet the risk was still so high that it ought not to have been given. Id. at 1378-79. Since *Perricone,* the Fifth Circuit has held that when a verdict is inconsistent, "[m]ere submission [of a post-verdict question] does not necessarily coerce a verdict." Richard v. Firestone Tire & Rubber Co., 853 F.2d 1258, 1260 (5th Cir.1988).

**\*9** I find that it was within this Court's discretion to submit the Second Special Verdict Form to the jury to ascertain whether their verdict had been affected by a purely legal question regarding the statute of limitations. In its instructions to the jury, this Court stated that
> for legal reasons, I need to know whether you reached this verdict on [the quid pro quo sexual harassment and intentional gender discrimination] for the sole reason that the plaintiff did not prove by a preponderance of the evidence that the defendants maintained a continuous policy or practice of discrimination, or that one act in furtherance of this policy or practice occurred after September 11, 1993.

Once the jury indicated that its verdict had been affected by this issue, it was proper for the Court to give further instructions on the statute of limitations under the NYSHRL and ask the jury to reconsider the plaintiff's claims that were affected by that issue.

While the defendants contend that the supplemental charge was coercive, they do not point to any specific language that was coercive. Indeed, the supplemental charge contained a number of limiting instructions to counterbalance any possible coercive effect it might have. For example, the charge stated "[b]y giving you these instructions and questions I am not in any way suggesting what your answers should be. Remember, you are the sole judges of the facts." At the end of the charge, the Court stated
> [d]o not alter your initial finding that the plaintiff is not entitled to either Back Pay or Compensatory Damages unless you determine that your findings on liability, as governed by the law on the statute of limitations as I have just explained it, affect the damage award. I emphasize again that I am expressing no view on whether or not you should make an award of either Back Pay or Compensatory Damages.

These comments neutralized any potential coercive or prejudicial effect the supplemental charge might have had.

The defendants also contend that the charge given in response to the jury's

1997 WL 362311                                                                Page 8
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac.
Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

question regarding its award of $10,000 in back pay was coercive because it encouraged the jury to award compensatory damages. This is clearly not the case as the Court explicitly decided--rejecting a request by plaintiff--not to re-read the charge on compensatory damages. Instead, the charge on the $10,000 was given in more neutral language that referred to making an additional award of damages. Moreover, while the defendants had objected to this clarifying charge prior to the receipt of the jury's note, they did not object to the substance of the Court's charge when given in response to the jury's note.

Finally, it is clear that the supplemental charge was not coercive as the jury did not change any of its findings on liability. That is, the jury did not find that Mr. Guccione was an active participant and did not find for the plaintiff on her claim of quid pro quo sexual harassment, constructive discharge, or intentional gender discrimination. Indeed, the instant case is similar *Litton Sys., Inc. v. American Tel. & Tel. Co., 700 F.2d 785 (2d Cir.1983)*. In that case, after the jury returned a verdict that found for the defendant on two of four theories of liability under the antitrust laws and divided on a third, the trial court posed special interrogatories to the jury to elicit further findings on the theory over which they were divided, as well as an issue of proximate cause. The jury subsequently found for the plaintiff on the divided theory. The Second Circuit held that the defendant could not claim that the additional special interrogatories were coercive since the jury clearly was not predisposed to find in favor of the plaintiff since it had already found in the defendant's favor for some of the earlier bases of liability. *Id. at 803.* Similarly, in the instant case, defendants cannot argue that the jury was predisposed to find in favor of the plaintiff since the jury had already found for the defendants on four of her six claims. That the additional questions did not change the jury's verdict with regard to liability is further evidence of an absence of coercion.

**\*10** Next, defendants claim that even if some of the post-verdict questions were proper, the questions regarding hostile work environment sexual harassment in the Third Special Verdict Form were improper. Defendants maintain that since the jury was not asked in the Second Special Verdict Form whether the statute of limitations affected their verdict on hostile work environment sexual harassment, the additional questions on this claim were based purely on speculation and thus the award should be disregarded.

There is no difference in logic between the reason for giving the jury the supplemental charge on quid pro quo sexual favoritism and intentional gender discrimination and the reason for giving it for the claims of hostile work environment sexual harassment and constructive discharge. That is, if the statute of limitations affected the first two claims, there is no reason why it would not also have affected the latter two claims.

Defendants argue that since the jury found for the plaintiff on her claim of hostile work environment sexual harassment, they must have done so on a theory of continuing violations, since very little actually occurred within the statute of limitations period. Thus, defendants argue, the jury considered the entire period and there was no need to ask them again about this period with regard to the NYSHRL, because under the continuing violations doctrine, all events could have been reached under either federal or state law. As a result of this syllogism, defendants contend that the second verdict is inconsistent as it awards damages for the same period that the jury initially considered and did not award damages.

Although the findings of liability were the same in both verdicts, the jury could have found in their initial verdict that not enough events took place within the statute of limitations to warrant an award, but when that period was expanded there were enough events within the recoverable period to warrant an award of compensatory damages. If the jury found no continuing violation, then in its initial verdict the jury's award reflects only the conduct occurring between September 11 and November 24, 1994, that is, the period that was within the statute of limitations under Title VII.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                              Page 9
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac. Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

In a similar vein, defendants argue that if the award was made only for the conduct during the period of the Title VII statute of limitations and was not based on the continuing violation doctrine, this Court should grant judgment as a matter of law for defendants as very little was actually said or done during that period.  The standard for granting judgment as a matter of law is well settled.

> In ruling on a motion for ... [judgment as a matter of law], the district court is required to deny the motion unless, viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached.

**\*11** *Binder v. Long Island Lighting Co.*, 57 F.3d 193, 199 (2nd Cir.1995) (quoting *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038-39 (2nd Cir.1992)) (internal quotations and citations omitted).  Further, a motion for judgment as a matter of law should only be granted when

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair-minded [persons] could not arrive at a verdict against it.

*Eagleston v. Guido*, 41 F.3d 865, 875 (2nd Cir.1994) (citation omitted) (brackets in original), *cert. denied,* 116 S.Ct. 53 (1995).  I find that defendants have not met this rigorous standard with regard to their contention that no hostile work environment sexual harassment could be found during the last ten weeks of plaintiff's employment at Spin. The jury was entitled to find that the comments that were made during that period did constitute sexual harassment, a determination that falls squarely on the factfinder.  Defendants cite four examples of alleged sexual harassment during the recoverable period.  [FN5]  The harassment plaintiff described to the jury cannot be cabined as neatly as the defendants urge.  The jury had ample evidence on which to find that plaintiff's supervisor treated the plaintiff in a nasty, insulting, derogatory and abusive manner that had the effect of unreasonably interfering with her work performance and created a hostile work environment, that such treatment was based on plaintiff's gender and was known to occur by Spin's management and was tolerated because the victims of the worst abuse were low-level female employees.  Plaintiff testified that the abuse she amply described was at its worst in late 1993, and thus I do not find that the verdict was the result of sheer surmise or conjecture, nor do I find that no reasonable person could have arrived at it, and, therefore, will not grant judgment as a matter of law

Finally, defendants contend that nothing in the charge limited the jury's consideration of damages to a certain period and thus there was no reason to submit the Second Special Verdict Form to the jury.  I find this argument unpersuasive as the charge as a whole is about what the plaintiff may recover. The liability section, and in particular the charge on the statute of limitations, instructs the jury as to what is actionable and what is not.  The damages section instructs the jury that "[i]f you find in favor of [plaintiff], there are three types of damages that you may consider."  This was intended, and I have no reason to believe was not understood, to instruct the jury that they could award damages based on a finding of liability made under the previous instructions--instructions that included a charge on the statute of limitations.  Moreover, this objection to the charge was never made by defendants until these post-trial submissions and therefore is too late.

B. *Entering Judgment*

1. *Any Award Under Title VII*

**\*12** Defendants contend, and I agree, that no damages should be awarded under Title VII. Plaintiff contends that the $90,000 the in compensatory damages awarded in the Third Special Verdict Form should be entered under Title VII and the NYSHRL, and not just the NYSHRL.  I find such argument unavailing as the Third Special Verdict Form--under which the jury awarded the $90,000 in compensatory damages--did not address the Title VII claim.  It merely asked about liability under the NYSHRL.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                              Page 10
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac. Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

In its initial verdict, when the jury could have made an award of compensatory damages under Title VII, it did not do so.  [FN6]

  2. *Mr. Guccione's Personal Liability*

 Defendants contend that personal liability should not be imposed against Mr. Guccione under either the EPA because that statute does not allow a cause of action against an individual, nor the NYSHRL, as courts have read in the need for a finding of active participation by the defendant.

                               a. *Equal Pay Act*

 The EPA was enacted in 1963 as an amendment to the Fair Labor Standards Act ("FLSA") and is codified at Section 206(d), Title 29, United States Code. The FLSA defines an employer to
  include [ ] *any person acting directly or indirectly in the interest of an employer* in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

 29 U.S.C. §  203(d) (emphasis supplied).  Defendants argue that this language is similar to the definition of an employer under Title VII, which defines an employer as
  *a person* engaged in an industry affecting commerce *who has fifteen or more employees ... and any agent of such a person,* but ... does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia ... or (2) a bona fide private membership club....

 42 U.S.C. §  2000e(b) (emphasis supplied).  Defendants contend that the similarity in language requires this Court to interpret the definition of an employer under the FLSA in accordance with the Second Circuit's decision in *Tomka v. Seiler,* 66 F.3d 1295 (2d Cir.1995), which found there was no personal liability under Title VII.

 In *Tomka,* the Second Circuit held that although a literal reading of Section 2000e(b)--in particular, the phrase "and any agent of such a person"--would allow for the imposition of personal liability, such an interpretation would be at odds with "Congress' clearly expressed intent in enacting [the] statute."  *Id.* at 1314.  This finding of intent was deduced from the exclusion of liability for employers with fewer than fifteen employees.  The Second Circuit, following the reasoning of a Ninth Circuit decision, determined that Congress could not have intended to impose liability on an individual when it did not even do so for small entities with only a handful of employees.  *Id.* (citing *Miller v. Maxwell's Int'l Inc.,* 991 F.2d 583, 587 (9th Cir.1993), *cert. denied,* 114 S.Ct. 574 (1994)).  The Second Circuit also noted that the remedies initially available under Title VII--reinstatement and back pay--could only reasonably be provided by the employing entity and not an individual.  *Id.* at 1314-15.  When Congress passed the Civil Rights Act of 1991, 42 U.S.C. § 1981a, it provided for compensatory and punitive damages under Title VII, but fixed those damages to the number of employees of the defendant and did not discuss individuals.  *Id.* at 1315.

 **\*13** Defendants have not pointed to any similar evidence of congressional intent under the FLSA that would instruct a court to ignore the plain meaning of the language of Section 203(d) which refers to a "person acting ... in the interest of an employer."  More persuasively, the FLSA's definition of an employer does not limit liability to the number of employees.

 While the Second Circuit has not directly addressed the issue of personal liability under the EPA, other Courts of Appeals have found that an employer under the FLSA includes an individual responsible for FLSA obligations.  [FN7]  Under this analysis, courts examine the economic realities of the workplace, including whether the individual has operational control of the defendant corporation, an ownership interest, controls significant functions of the business or determines salaries and

Copr. ©  2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                         Page 11
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac. Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

makes hiring decisions. *United States Dep't Lab. v. Cole Enterprises, Inc., 62 F.3d 775, 778 (6th Cir.1995)*; *Reich v. Circle C. Investments, Inc., 998 F.2d 324, 329 (5th Cir.1993)* (if individual dominates day-to-day control, no need for ownership interest to impose personal liability under Section 203(d)); *Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir.1983)*; *Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1469-70 (9th Cir.1983)* (adopting "economic reality" test and impliedly applying it to determine individual liability). [FN8]  A court in this district reached a similar conclusion when interpreting Section 203(d).  After surveying the case law interpreting Section 203(d), the court found that courts had been guided by the economic reality of the relationship between the alleged employer and employee and have held liable only those individuals who "exert control over those aspects of employment covered" by the statute at issue. *Rubin v. Tourneau, Inc., 797 F.Supp. 247, 252 (S.D.N.Y.1992)* (construing FLSA definition incorporated into the Employee Polygraph Protection Act) (MBM).

 In sum, the definition of an employer within Section 203(d) does include an individual such as Mr. Guccione who has an ownership interest in the employing entity, dominates the day-to-day operating decisions, and makes major personnel decisions. [FN9]  For these reasons, I will not grant defendants' motion for judgment as a matter of law regarding Mr. Guccione's personal liability under the EPA.

b. *NYSHRL*

 While the NYSHRL generally tracks Title VII, the NYSHRL allows for the imposition of personal liability. *Tomka,* 66 F.3d at 1317. [FN10]  As described by the Second Circuit in *Tomka,* there are two alternative theories for finding an individual liable under the NYSHRL.  First, an individual may be found liable under Section 296(1)(a), New York Executive Law, [FN11] if he has an ownership interest in the defendant company or has power over personnel decisions. *Id.* (citing *Patrowich v. Chemical Bank,* 483 N.Y.S.2d 659, 660 (N.Y.1984) (per curiam)).  Alternatively, an individual may be found liable pursuant to Section 296(6), New York Executive Law, [FN12] which provides for individual liability for aiding, abetting or inciting the discrimination, even without an ownership interest or power over personnel decisions. *Id. But see Trovato v. Air Express Int'l,* 655 N.Y.S.2d 656, 657 (N.Y.App.Div.1997) (finding no liability under § 296(6) absent ownership interest or power over personnel decisions).

 ***14** The defendants contend that these are not alternative bases of liability, but rather that to impose personal liability on an individual, a jury must find that the defendant was an active participant in the discriminatory conduct at issue.  That is, defendants contend that Section 296(6) should be read into Section 296(1)(a). The New York Court of Appeals has not spoken on this question. [FN13]  Under such circumstances, this Court's task is to predict how the state's highest court would decide the issue. *Gasperini v. Center for Humanities, Inc.,* 66 F.3d 427, 430 (2d Cir.1995), *cert. denied,* 116 S.Ct. 805 (1996).

 In addition to *Tomka,* several district courts have explicitly treated these bases of liability as alternatives.  For example, in a motion to dismiss in *Abdullajeva v. Club Quarters, Inc.,* 1996 WL 497029, (S.D.N.Y. Sept. 3, 1996), the court stated that five of the named individual defendants did not actively participate in the discrimination and thus could not be liable in their official capacity under federal anti-discrimination statutes. *Id.* at *2. The court did hold, however, that these individuals--individuals who had an ownership interest or power over personnel decisions--could be personally liable. *Id.* at *5. The court explicitly found that "[a]s an alternative basis of liability," the plaintiff could allege liability for aiding and abetting under Section 296(6). *Id.* In *Bridges v. Eastman Kodak,* 885 F.Supp. 495 (S.D.N.Y.1995), the court found that ownership was sufficient by itself to impose liability, relying on *Patrowich,* and did not discuss Section 296(6). *Id. at 499.*  In *Fruchter v. Sossei,* 1995 WL 274457 (S.D.N.Y. May 10, 1995), the court found that power over personnel decisions was sufficient to impose liability on an individual defendant, and also noted that Section 296(6) would be an alternative basis. *Id.* at *5.

Copr. ©  2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                                    Page 12
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac. Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

In a case where a district court addressed a motion to dismiss, that court noted that the plaintiff had alleged active participation--the defendant, who had power over personnel decisions, made the defendant's decision to terminate the plaintiff's employment--but the court did not incorporate this allegation into the legal standard for the imposition of personal liability. Dirschel v. Speck, 1994 WL 330262, at *6 (S.D.N.Y. July 8, 1994).

At least one court in this Circuit has addressed whether active participation is necessary to impose personal liability on an owner or person with power over personnel decisions. In McNulty v. New York Dep't of Finance, 941 F.Supp. 452 (S.D.N.Y.1996), the court addressed the issue but ultimately did not resolve it since it found that the plaintiff had sufficiently alleged active participation. Id. at 458-60. Similarly, the court in Leykis v. NYP Holdings, Inc., 899 F.Supp. 986 (E.D.N.Y.1995), appeared to require that the plaintiff allege personal participation by the owner to support personal liability under the NYSHRL, but did not expressly discuss the impact of its ruling on *Patrowich.* Id. at 993-94.

**\*15** Following the Second Circuit's decision in *Tomka,* and drawing on the district court cases discussed above, I find that there are two alternative bases of personal liability under the NYSHRL and, therefore, that Mr. Guccione can be held personally liable even absent a finding of active participation.

Finally, I note that there is no unfairness in holding an owner or person with power over personnel decisions liable in an action for hostile work environment sexual harassment when the company itself is found liable. To establish liability, a plaintiff must prove that the company was liable because it was on notice of the harassment. There is no unfairness in imputing this knowledge to an owner or a person high enough up in a company's hierarchy that she or he has power over personnel decisions. In the instant case, the jury found that Camouflage Associates was liable and that Mr. Guccione was an owner or a person with power over personnel decisions. On these facts, I find it both reasonable and fair to impute the knowledge of Camouflage Associates of the hostile work environment to Mr. Guccione. Mr. Guccione ownership interest was not disputed and the evidence at trial amply established Mr. Guccione's control over personnel decisions. Indeed, the evidence was compelling that Mr. Guccione had actual knowledge of the abusive conduct underlying the hostile work environment claim.

3. *Liquidated Damages Under the EPA*

Defendants contend that the plaintiff should not receive liquidated damages on her award under the EPA. A plaintiff who wins her EPA claim is entitled to liquidated damages. 29 U.S.C. § 216(b). Under Section 260, however,
> if the employer shows to the satisfaction of the court that the act or omission giving rise to [liability] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [Act], the court may, in its sound discretion, award no liquidated damages or award any [lesser] amount thereof....

29 U.S.C. § 260. The burden is on the defendants to prove good faith compliance. As the Second Circuit held in Brock v. Wilamowsky, 833 F.2d 11 (2d Cir.1987), "[t]his defense requires plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it." Id. at 19. That court also held that "[t]he burden is a difficult one to meet ... and double damages are the norm, single damages the exception." *Id.* (internal quotations and citation omitted). Moreover, some courts have held that a finding of willfulness by the jury--a finding that extends the statute of limitations to three years instead of two under 29 U.S.C. § 255(a)--precludes a court from finding good faith compliance under Section 260. Brinkman v. Department of Corr. of Kansas, 21 F.3d 370, 372-73 (10th Cir.1994); EEOC v. City of Detroit Health Dept., 920 F.2d 355, 358 (6th Cir.1990).

There was no evidence produced at trial to show that defendants made a good faith

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                          Page 13
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac. Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

effort to ascertain their obligations under the law and comply with those obligations. Moreover, there was evidence that a male employee--employed as a copy editor, a position not dissimilar to the plaintiff's position as a Research Editor-- was paid $8,500 more than the plaintiff.

**\*16** Based on the jury's finding of willfulness, the absence of any evidence presented at the trial regarding the defendants' attempt to comply with the law, see Brock, 833 F.2d at 19; Ottaviani v. State Univ. of N.Y. at New Paltz, 679 F.Supp. 288, 340 (S.D.N.Y.1988), the evidence regarding the pay differential, and as an exercise of my discretion, I will award the plaintiff liquidated damages in the amount equal to the jury award under the EPA. Thus, the plaintiff is entitled to a total of $20,000 for her EPA claim.

CONCLUSION

For the reasons given above, it is hereby

ORDERED that the plaintiff shall prepare and serve a proposed judgment in accordance with the rulings in this Opinion by July 7, 1997.

IT IS FURTHER ORDERED that defendants' motion for judgment as a matter of law is denied.

SO ORDERED:

  FN1. In the Pretrial Order the defendants listed as the first issue for trial whether the plaintiff was subjected to intentional gender discrimination during "the period September 14, 1993 through November 24, 1993, in violation of Title VII ... and the New York State Human Rights Law?" As issues 19 and 20 the defendants listed the statute of limitations periods as September 14, 1993 for Title VII and October 25, 1991 for the NYSHRL. The parties' Trial Memoranda of Law and Requests to Charge did not mention the statute of limitations with regard to the plaintiff's claims for employment discrimination. Defendants did note in their Request to Charge # 24, in a single paragraph and not as a separate charge, that to prove her claim for intentional infliction of emotional distress, the plaintiff needed to prove some unlawful conduct occurred during the last two months of her employment.

  FN2. In response to these oral comments, the Court instructed the jury, "Don't say anything out loud."

  FN3. Defendants do not contend that the supplemental charge regarding the NYSHRL statute of limitations was legally incorrect. Indeed, although Title VII requires a person to file a complaint with the EEOC within 300 days of the allegedly discriminatory act, the NYSHRL statute of limitations is three years. NYCPLR § 214(2). See also Alaimo v. New York City Dep't of Sanitation, 611 N.Y.S.2d 245, 245 (N.Y.App.Div.1994). As the New York Court of Appeals noted in Murphy v. American Home Prod. Corp., 461 N.Y.S.2d 232, 238-39 (N.Y.1983), a party may file with the New York State Division of Human Rights under Section 297(9), New York Executive Law, and the statute of limitations for such a filing is one year, but where the claim is made in a judicial forum, the statute of limitations is three years. Id. at 239.

  FN4. After the jury awarded the plaintiff $105,000 but found him 70% liable, the court immediately advised it that the plaintiff could not recover at all if the jury found him over 50% liable. The jury reduced the finding of contributory negligence to 50%. *Id.* at 1378.

  FN5. Defendants claim that plaintiff testified as to four instances of sexual harassment during the statute of limitations period, although there is a dispute about the timing of one of the instances. Specifically, defendants refer to (1) plaintiff's testimony that one of her supervisors told her "Typical. Women just don't understand. You are just stupid. You obviously can't understand this--my jokes, especially the smart ones;" (2) the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1997 WL 362311                                                         Page 14
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac. Dec. P 44,932
**(Cite as: 1997 WL 362311 (S.D.N.Y.))**

same supervisor made advances toward a female freelancer in the plaintiff's presence; (3) again, the same supervisor made "abusive comments" to the plaintiff when she was factchecking a column; and (4) the plaintiff described an incident where Mr. Guccione invited a female intern to an editorial meeting--not a typical business practice, except for Mr. Guccione who frequently dated interns--and also discussed story ideas with her while ignoring the plaintiff.

FN6. Before the jury sent in the note regarding the back pay award of $10,000, the parties both agreed that the back pay award was a reiteration of the EPA award. In light of the responses by the jury to the charge on the back pay, it appears that the jury did intend to award the plaintiff $10,000 on her Title VII claim for hostile work environment sexual harassment. I will not enter such an award, however, since Title VII does not allow for an award of back pay for a claim of hostile work environment sexual harassment.

FN7. I find that defendants' argument to this Court regarding Mr. Guccione's personal liability under EPA falls far below the standard of professionalism which, based on the other work by defense counsel in this case, the Court has come to expect. Defendants wholly disregard all Circuit authority and a host of recent district court opinions--authority which explicitly adopts a position contrary to the one they propose--and cite only district court opinions which predated the Court of Appeals decisions.

FN8. While defendants argue that the Second Circuit has not adopted the "economic reality" test, in fact the Second Circuit has done so in determining whether an individual is an employee covered by the FLSA. *See, e.g., Frasier v. General Elec. Co., 930 F.2d 1004, 1008 (2d Cir.1991); Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-59 (2d Cir.1988)*.

FN9. Defendants contend, citing *Bates v. High Beach Co., 1990 WL 102938 (E.D.Pa. July 17, 1990)*, that an individual may be sued under the EPA only if that individual alleges that the institutional employer is not liable. *Id.* at *4. I find no other authority to support this reasoning, and am unpersuaded by it.

FN10. This is true even though the NYSHRL defines an employer to exclude "any employer with fewer than four persons in his employ." N.Y.Exec.Law § 292(5).

FN11. That statute states that
[i]t shall be an unlawful discriminatory practice [f]or an employer ... because of the sex ... of any individual ... to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment. N.Y.Exec.Law § 296(1)(a).

FN12. That statute states that
[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.
N.Y.Exec.Law § 296(6).

FN13. *Patrowich* affirmed the dismissal of a Complaint against an individual defendant sued under the NYSHRL, the EPA and the federal Age Discrimination in Employment Act ("ADEA") who had not been shown to have any ownership interest or any power to do more than carry out personnel decisions made by others. In doing so, it surveyed federal case law under Title VII and the ADEA. Since *Patrowich, Tomka* has changed the landscape of federal jurisprudence and eliminated all individual liability under both federal statutes. *See, e.g., Canelinia v. Hilton Int'l, 1996 WL 479439, at *3 (S.D.N.Y. Aug. 23, 1996)* (no individual liability under ADEA). It is conceivable that the New York Court of Appeals, if confronted anew with the question, would today align state law with federal law and hold that there is no individual liability under the NYSHRL--at least absent individual participation under Section 296(6).

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

```
1997 WL 362311                                                          Page 15
1997 WL 362311 (S.D.N.Y.), 74 Fair Empl.Prac.Cas. (BNA) 479, 71 Empl. Prac.
Dec. P 44,932
(Cite as: 1997 WL 362311 (S.D.N.Y.))
```

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.