Westlaw.

Not Reported in F.Supp.2d
8 Wage & Hour Cas.2d (BNA) 461
**(Cite as: 2002 WL 31512816 (S.D.N.Y.))**


**H**

United States District Court,
S.D. New York.

Keun-Jae MOON, Plaintiff,
v.
Joon GAB KWON; 43 West 32nd Street Corp., d/b/a Hotel Stanford; Beautri Realty
Corp., d/b/a Seoul House; "ABC Corporation"; Stanford Hotel New York
Corporation, LLC; Central Palace LLC; Han Ah Reum Inc., Defendants.

**No. 99 Civ. 11810(GEL).**

Nov. 8, 2002.


  Following court verdict for employee in his action for overtime wages under the
Fair Labor Standards Act (FLSA) and New York Labor Law, 2002 WL 31011866, employee
moved for attorney fees and costs. The District Court, Lynch, J., held that: (1)
employee's nonprofit attorneys were entitled to fees that were comparable to those
awarded to private attorneys with fee-paying clients; (2) hourly rate of $ 350.00
for attorney director of non-profit legal organization, who had 30 years of
experience, was reasonable; (3) hourly paralegal rate of $ 100.00 was reasonable;
(4) reasonable hourly rate for attorney, who sat second chair, was $ 250.00; (5)
reasonable hourly rate for work performed by law students was $ 80.00; (6) reduction
in lodestar amount of fees to which employee was entitled, i.e., $198,022.40, was
not warranted; and (7) employee could recover costs associated with taking
deposition that was not used at trial, as well as pretrial interpretation costs
incurred to enable employee to communicate with his attorneys.

  Motion granted.


West Headnotes

**[1] Federal Civil Procedure ☜═2737.4**
170Ak2737.4 Most Cited Cases

When analyzing attorney fee rate under lodestar method, lawyers for individual
plaintiffs receive same hourly rates as lawyers who represent large classes of
plaintiffs.

**[2] Labor and Employment ☜═2405**
231Hk2405 Most Cited Cases
(Formerly 232Ak1571  Labor Relations)

Nonprofit civil rights attorneys for employee, who prevailed on his overtime claims
under the FLSA and New York Labor Law, were entitled to fees that were comparable to
those awarded to private attorneys with fee-paying clients.  Fair Labor Standards
Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); McKinney's Labor Law § 198.

**[3] Labor and Employment ☜═2405**
231Hk2405 Most Cited Cases

EXHIBIT A

(Formerly 232Ak1572  Labor Relations)

Hourly fee rate of $ 350.00 was reasonable for attorney director of non-profit legal organization, who represented prevailing employee in overtime wage action under the FLSA and New York Labor Law; rate was within range charged by lawyers within community with similar experience, and attorney had 30 years of experience in civil rights and labor litigation.  Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); McKinney's Labor Law § 198.

**[4] Labor and Employment** ◇═⇒2405
231Hk2405  Most Cited Cases
(Formerly 232Ak1572  Labor Relations)

Requested rate of $ 100.00 per hour for paralegal work performed by attorneys, who represented prevailing employee in overtime wage action under the FLSA and New York Labor Law, was reasonable; rates were within range that paralegals in community were paid, and attorneys had extensive experience as attorneys, such that they could presumably have performed tasks more efficiently than typical paralegal.  Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); McKinney's Labor Law § 198.

**[5] Labor and Employment** ◇═⇒2405
231Hk2405  Most Cited Cases
(Formerly 232Ak1572  Labor Relations)

Reasonable hourly rate to prevailing employee's attorney in overtime action under the FLSA and New York Labor Law, was $ 250.00, rather than requested $ 300.00, where attorney had four years' full-time practice experience, and eight years' experience as a clinical professor; most attorneys in community with comparable experience were awarded $ 250.00 per hour.  Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); McKinney's Labor Law § 198.

**[6] Labor and Employment** ◇═⇒2405
231Hk2405  Most Cited Cases
(Formerly 232Ak1572  Labor Relations)

Reasonable hourly rate for work performed by law students for non-profit legal organization, on prevailing employee's overtime wage action under the FLSA and New York Labor Law, was $ 80.00, rather than $ 100.00 requested; prevailing market rates for such work in community ranged from $70.00-$90.00 dollars. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); McKinney's Labor Law § 198.

**[7] Labor and Employment** ◇═⇒2405
231Hk2405  Most Cited Cases
(Formerly 232Ak1569.1  Labor Relations)

Reasonable hours worked by prevailing employee's attorney on liability phase of overtime action under the FLSA and New York Labor Law were 325.8; attorney arrived at figure by tallying his recorded hours and then reducing total by 20% to account for excessive and redundant hours, 3 hours that attorney spent waiting for court conferences or hearings to begin were appropriately billed to client, and other disputed hours were more than accounted for by attorney's overall 20% reduction in his claimed hours.  Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); McKinney's Labor Law § 198.

**[8] Federal Civil Procedure** ◇═⇒2737.4
170Ak2737.4  Most Cited Cases

Attorney hours spent on fee applications are fully compensable, as long as total claimed is not inordinately high in relation to hours spent on case as a whole.

**[9] Labor and Employment** ◇═⇒2405
231Hk2405  Most Cited Cases

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

(Formerly 232Ak1569.1  Labor Relations)

Reasonable hours spent by prevailing employee's attorney, in overtime wage action under the FLSA and New York Labor Law, preparing application for attorney fees were 32.84, rather than the 41.05 applied for; billed hours had to be reduced by 20% to account for fact that fee application took longer because attorney was working with law students.  Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); McKinney's Labor Law § 198.

**[10] Labor and Employment** ⟜2405
231Hk2405 Most Cited Cases
(Formerly 232Ak1569.1  Labor Relations)

Reasonable paralegal hours spent by lead attorney on prevailing employee's overtime wage action under the FLSA and New York Labor Law, were 22.5, including 4.25 hours spent preparing attorney fee application, as such time was necessary to proper preparation of application and not redundant.   Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); McKinney's Labor Law § 198.

**[11] Labor and Employment** ⟜2405
231Hk2405 Most Cited Cases
(Formerly 232Ak1569.1  Labor Relations)

Reasonable hours spent by prevailing employee's attorney in overtime wage action under the FLSA and New York Labor Law were 99.98, which included the 18.5 hours she spent at trial sitting second-chair; it was common practice for law firms with paying clients to send more than one lawyer to trials and other court proceedings, and thus there was no reason why employee should not recover fees for second-chair attorney's time spent at trial.  Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); McKinney's Labor Law § 198.

**[12] Labor and Employment** ⟜2405
231Hk2405 Most Cited Cases
(Formerly 232Ak1569.1  Labor Relations)

Reasonable paralegal hours worked by second-chair attorney in prevailing employee's overtime action under the FLSA and New York Labor Law were 24.5, as such hours were not duplicative or unnecessary.  Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); McKinney's Labor Law § 198.

**[13] Labor and Employment** ⟜2405
231Hk2405 Most Cited Cases
(Formerly 232Ak1569.1  Labor Relations)

Reasonable hours worked by law students on prevailing employee's overtime wage action under the FLSA and New York Labor Law were 519.98, rather than the claimed 569.15; hours had to be reduced to take into account one student's recorded hours that were impermissibly vague, and time spent on clerical tasks, although no reduction was warranted for time spent rehearsing depositions or court proceedings. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); McKinney's Labor Law § 198.

**[14] Labor and Employment** ⟜2405
231Hk2405 Most Cited Cases
(Formerly 232Ak1571  Labor Relations)

Reduction in lodestar amount of attorney fees for prevailing employee, in overtime wage action under the FLSA and New York Labor Law, was not warranted, although employee did not prevail on all his claims; employee obtained excellent result in action, in that, he established his basic claim and received substantial amount of damages, and verdict for employee was not result of fortuity, rather it reflected merits of his case, as ably presented by his counsel.  Fair Labor Standards Act of

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1938, § 16(b), <u>29 U.S.C.A. § 216(b)</u>; <u>McKinney's Labor Law § 198</u>.

**[15] Labor and Employment** ⌖2405
231Hk2405 <u>Most Cited Cases</u>
(Formerly 232Ak1572  Labor Relations)

Reduction in lodestar attorney fee amount of $198,022.40, in prevailing employee's overtime wage action under the FLSA and New York Labor Law, was not warranted, although employer asserted that employee was able to take advantage of free legal representation to make unrealistic settlement offers and run up excessive litigation costs; employee's documented settlement offer, which employer did not accept, was reasonable, in that, it was less than employee received in damages following bench trial.  Fair Labor Standards Act of 1938, § 16(b), <u>29 U.S.C.A. § 216(b)</u>; <u>McKinney's Labor Law § 198</u>.

**[16] Labor and Employment** ⌖2405
231Hk2405 <u>Most Cited Cases</u>
(Formerly 232Ak1573  Labor Relations)

In considering whether award of attorney fees to prevailing employee in overtime wage action under the FLSA and New York Labor Law was excessive in proportion to employee's total recovery, entire amount of damages awarded to employee, including liquidated damages would be considered; lawyers working on contingency would not deduct liquidated damages from recovery before calculating their fee, and fact that employee received liquidated damages under both statutes reflected his attorneys' successful efforts to prove that employer's violations were not in good faith.  Fair Labor Standards Act of 1938, § 16(b), <u>29 U.S.C.A. § 216(b)</u>; <u>McKinney's Labor Law § 198</u>.

**[17] Labor and Employment** ⌖2405
231Hk2405 <u>Most Cited Cases</u>
(Formerly 232Ak1572  Labor Relations)

Award of $198,022.40 in attorneys' fees to prevailing employee, in overtime wage action under the FLSA and the New York Labor Law, was not excessive in proportion to plaintiff's total recovery of $442,160.80.  Fair Labor Standards Act of 1938, § 16(b), <u>29 U.S.C.A. § 216(b)</u>; <u>McKinney's Labor Law § 198</u>.

**[18] Labor and Employment** ⌖2402
231Hk2402 <u>Most Cited Cases</u>
(Formerly 232Ak1568  Labor Relations)

Under local rule, prevailing employee, in overtime wage action under the FLSA and the New York Labor Law, could recover costs associated with taking deposition of witness, even though transcript was not used at trial, where deposition was taken with reasonable expectation that it would be used for trial preparation.  Fair Labor Standards Act of 1938, § 16(b), <u>29 U.S.C.A. § 216(b)</u>; <u>McKinney's Labor Law § 198</u>.

**[19] Labor and Employment** ⌖2402
231Hk2402 <u>Most Cited Cases</u>
(Formerly 232Ak1568  Labor Relations)

Prevailing employee, in overtime wage action under the FLSA and New York Labor Law, could recover $ 1,970.00 for pretrial interpretation costs incurred to enable employee to communicate with his attorneys; such costs were not included in law office's routine overhead, and would customarily be charged to client as disbursements in local market, rather than included in firm's hourly rates, interpreting rates charged were reasonable, and employee's attorneys relied on free interpretation as much as possible.  Fair Labor Standards Act of 1938, § 16(b), <u>29 U.S.C.A. § 216(b)</u>; <u>McKinney's Labor Law § 198</u>.
<u>Kenneth Kimerling</u>, Asian American Legal Defense and Education Fund, New York, N.Y. (Elizabeth B. Cooper, Marcia Griffith, <u>Anna Meresidis</u>, Ryan Weiner, and Jamie

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Mowder, Lincoln Square Legal Services, Inc., New York, NY,), for Plaintiff, [FN1] of counsel.

> FN1. Ms. Griffith, Ms. Meresidis, Mr. Weiner, and Mr. Mowder, all law students at the Fordham University School of Law, have appeared in this action under the supervision of Mr. Kimerling and Ms. Cooper pursuant to the Student Practice Rule of this Court.

Jeffrey A. Hill (Richard M. Zaroff and Jennifer L. Marlborough,), Wormser, Kiely, Galef & Jacobs LLP, New York, NY, for Defendants, of counsel.

*OPINION AND ORDER*

LYNCH, J.

*1 Plaintiff Keun-Jae Moon is the prevailing party in his action against defendants under the Fair Labor Standards Act ("FLSA") and the New York Labor Law, and now moves for an award of reasonable attorneys' fees and costs. For the reasons discussed below, plaintiff's motion is granted.

*BACKGROUND*

On December 6, 1999, Moon filed a complaint in this Court, alleging that the defendants, acting as joint employers, violated FLSA, by failing to pay him minimum wage and overtime, and the New York Labor Law, by failing to pay minimum wage, overtime, and a premium for days on which his spread of hours exceeded ten hours. *Moon v. Kwon*, No. 99 Civ. 11810(GEL), 2002 WL 31011866, at *24 (S.D.N.Y. Sept.9, 2002). After a bench trial in November 2001, the Court found that almost all of Moon's claims were credible and that all defendants were jointly and severally liable for the violations, and awarded him substantial compensatory and liquidated damages. *Id.* at *30-*32. Specifically, Moon was awarded $227,201.84 in compensatory damages under FLSA and the Labor Law for unpaid wages, and $124,448.62 in liquidated damages under both statutes, based on the finding that the defendants' violations were willful. *Id.* at *31-*32; *Moon v. Kwon*, No. 99 Civ. 11810, Order (S.D.N.Y. Oct. 24, 2002). With prejudgment interest, the Court entered a total judgment for plaintiff of $442,160.80.

Plaintiff now applies for attorneys' fees and costs under FLSA, 29 U.S.C. § 216(b) (2000) and the Labor Law, N.Y. Lab. Law §§ 198, 663 (McKinney 2002). He seeks a total of $220,021.50 in fees, which breaks down into $130,662.50 for the services of Kenneth Kimerling, Legal Director of the Asian American Legal Defense and Education Fund ("AALDEF"); $56,915.00 for the work of the AALDEF's student interns; and $32,444.00 for the services of Elizabeth Cooper and Lincoln Square Legal Services, Inc. In addition, plaintiff seeks $13,686.80 in reimbursable costs.

*DISCUSSION*

Both FLSA and the state Labor Law provide that a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs, to be paid by the defendants. 29 U.S.C. § 216(b) (2000); N.Y. Lab. Law § 198 (McKinney 2002). The parties agree that Moon "substantially prevailed" on all of his claims (Defs. Mem. at 2), and that therefore he is entitled to an award of fees and costs. [FN2]

> FN2. While conceding at the outset that plaintiff is entitled to an award of attorneys' fees as the prevailing party, defendants go on to make a number of ultimately unpersuasive arguments that the award should be reduced because Moon did not prevail on every aspect of his claims. These arguments will be dealt with below.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

## I. *Attorneys' Fees*

In ascertaining the amount of fees to award, the Second Circuit uses the "lodestar" method of calculation, which involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the lodestar amount, which represents a presumptively reasonable fee award. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763-64 (2d Cir.1998). After determining the lodestar amount, the court may use its discretion to increase or reduce the amount based on the particular circumstances of the case. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

## A. *Reasonable Hourly Rates*

**\*2** [1][2] To determine the reasonable hourly rate for each attorney, the Court must look to current market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir.1998). Since this case was brought in the Southern District of New York, the relevant community to which the Court should look is that of Manhattan civil rights attorneys. *Marisol A. v. Guiliani*, 111 F.Supp.2d 381, 386 (S.D.N.Y.2000). Because the reasonable rate is based only on the attorney's community and her comparative experience and skill, it does not vary with the complexity of the case or the identity of the lawyers involved. Thus, contrary to defendants' contentions (Defs. Mem. at 2), lawyers for individual plaintiffs receive the same hourly rates as lawyers who represent large classes of plaintiffs. *See Marisol A.*, 111 F.Supp.2d at 386-87 (considering different rates awarded without reference to number of plaintiffs); *Gavin-Mouklas v. Information Builders*, No. 97 Civ. 3085(LAP), 1999 WL 728636, at \*1-\*2 (S.D.N.Y. Sept.17, 1999). In addition, nonprofit civil rights attorneys are entitled to fees that are comparable to those awarded to private attorneys with fee-paying clients, despite defendants' claim that nonprofit attorneys have lower overhead costs and no built-in profit margins. [FN3] *Blum v. Stenson*, 465 U.S. 886, 892- 94, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

> FN3. Defendants' claim is illogical as well as inconsistent with Supreme Court precedent. If the measure is the market rate, what matters is the value placed on lawyers' services by clients in the market, not whether the lawyers who receive that value spend it on fancy offices and extravagant salaries, or plow it back into subsidizing public interest activities.

## 1. *Kenneth Kimerling*

[3] With respect to Kenneth Kimerling, the Legal Director of the AALDEF and the lead attorney on the case, plaintiff requests an hourly rate of $350. Plaintiff has provided adequate evidence that this rate is within the range charged by civil rights lawyers with comparable experience. Mr. Kimerling is a 1969 Columbia Law School graduate with thirty years' experience in civil rights and labor litigation, first with the Puerto Rican Legal Defense and Education Fund, and, since 1997, with the AALDEF. (Kimerling Affirm. ¶¶ 8-9 & Ex. B.) Courts in this district have often awarded as much as $390 per hour to civil rights attorneys with three decades of legal and supervisory experience. [FN4] *See, e.g., Marisol A.*, 111 F.Supp. at 386-87 (concluding that attorneys with more than fifteen years' experience should receive $350 an hour); *Gonzalez v.. Bratton*, 147 F.Supp.2d 180, 211-212 (S.D.N.Y.2001) (finding rate of $390 per hour reasonable for experienced civil rights attorney); *Skold v. American Int'l Group, Inc.*, No. 96 Civ. 7137(HB), 1999 WL 405539 (S.D.N.Y. June 18, 1999), *aff'd* 205 F.3d 1324 (2d Cir.2000). In addition, plaintiff has submitted the declaration of Richard Bellman, a partner at Steel Bellman Ritz & Clark, P.C., a small Manhattan civil rights firm, in which Mr.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Bellman states that his firm would bill Mr. Kimerling's time at $400 an hour. (Kimerling Affirm. Ex. C.) Thus, Mr. Kimerling is entitled to an hourly rate of $350.

> FN4. Contrary to defendants' assertions (Morin Aff. ¶ 14), a rate above $300 does not appear to be reserved for attorneys with especially long experience or particularly prestigious records. *See, e.g., Altman v. Part Authority of New York and New Jersey,* 879 F.Supp. 345, 353 (S.D.N.Y.1995) (stating that the reasonable range of rates for all employment discrimination attorneys is $175 to $375, regardless of relative prestige).

[4] In addition, Mr. Kimerling performed paralegal tasks on occasion, and plaintiff seeks a rate of $100 for these hours. Plaintiffs may seek fees for paralegals' work at the prevailing market rate for paralegal services in the community. *United States Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir.1989). In the Southern District, paralegal fees have recently been awarded at rates ranging from $75 to $130, depending on the amount of experience possessed by the paralegal. *Rodriguez v. McLoughlin,* 84 F.Supp.2d 417, 427 (S.D.N.Y.1999); *Marisol A.,* 111 F.Supp. at 389. Since plaintiff's requested rate is well within the reasonable range, and Mr. Kimerling has extensive experience as an attorney, and thus can presumably perform these tasks more efficiently than the typical paralegal, the Court finds that $100 per hour is a reasonable rate for Mr. Kimerling's paralegal services:

### 2. Elizabeth Cooper

**\*3** [5] Plaintiff requests a rate of $300 an hour for the services of Elizabeth Cooper, an Associate Professor at Fordham University School of Law and a Supervising Attorney at Lincoln Square Legal Services, Inc. Ms. Cooper has had twelve years' practice experience, first with public interest organizations such as the ACLU, and then as a full-time clinical law professor at Fordham. The market rate for attorneys with comparable experience ranges from $200 to $300 an hour, with most courts awarding $250 to attorneys (including law firm partners) with seven to twenty years of experience. *See, e.g., Robinson v. Instr. Systems, Inc.,* 105 F.Supp.2d 283, 286-87 (S.D.N.Y.2000); *Pascuiti v. New York Yankees,* 108 F.Supp.2d 258, 266 (S.D.N.Y.2000); *Skold,* 1999 WL 405539, at \*7; *Gavin-Mouklas,* 1999 WL 728636, at \*6. Since Ms. Cooper has had four years' full-time practice experience, and eight years' experience as a clinical professor, her rate is more reasonably placed in the middle of the range, rather than at the high end of it. *See Gavin-Mouklas,* 1999 WL 728636, at \*6 (awarding clinical law professor a rate of $200 per hour). Therefore, Ms. Cooper's fees should be calculated using a rate of $250 an hour. [FN5]

> FN5. Ms. Cooper is also entitled to a rate of $100 an hour for the paralegal tasks she performed, for the reasons stated with regard to Mr. Kimerling.

### 3. Fordham Law Students

[6] Plaintiff seeks a rate of $100 per hour for the services of seven law students who worked as student interns for the AALDEF through Fordham University School of Law's clinic, Lincoln Square Legal Services, Inc. Like paralegals, law student clerks are compensated at prevailing market rates. *Gavin-Mouklas,* 1999 WL 728636, at \*6. Students are generally billed at rates similar to those of paralegals, *Krauth v. Executive Telecard, Ltd.,* No. 95 Civ. 3967(RWS), 1996 WL 29420, at \*17 (S.D.N.Y. Jan.24, 1996), and these rates have been steadily rising over the past decade. While students were awarded a rate of $50--the rate that defendants assert is reasonable--in 1990, *Burr v. Sobol,* 748 F.Supp. 97 (S.D.N.Y.1990), courts in more recent cases have awarded between $70 and $90. *See, e.g., Gavin-Mouklas,* 1999 WL

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

728636, at *6 (awarding rate of $90); *Krauth,* 1996 WL 29420, at *17 (holding that rates between $70 and $85 were reasonable). Accordingly, the Court finds that $80 per hour is a reasonable rate.

B. *Reasonable Number of Hours*

After determining the reasonable hourly rates for each attorney, the Court must examine the hours expended by counsel to determine their reasonableness, excluding "excessive, redundant, or otherwise unnecessary" hours. *Hensley,* 461 U.S. at 434 (1983). In lieu of making minute adjustments to individual timekeeping entries, a court may make across-the-board percentage cuts in the number of hours claimed, "as a practical means of trimming fat from a fee application." *In re Agent Orange Product Liability Litigation,* 818 F.2d 226, 237 (2d Cir.1987) (internal citation omitted).

The potential difficulty in calculating the hours expended in this matter is that the litigation was conducted in association with a law school legal clinic, making substantial use of law students. While such use of student labor in some respects reduces the cost of litigation, substituting lower-priced law students for more expensive junior associates and paralegals, clinical legal education by its nature combines the practice of law with instruction, and thus may increase the number of hours spent on a case, not only because less experienced student attorneys must spend more time accomplishing a task than more experienced personnel, but also because the best clinical instruction deliberately invests more time in supervision and instruction than a law office can provide. Moreover, the frequent turnover of law students rotating in and out of clinical courses each year or even each semester requires more time in getting new staff up to speed than would typically be the case in a law firm setting. Careful examination of the hours claimed in a case litigated by a clinic is thus in order, and substantial reductions in the hours charged may be warranted.

**\*4** In this case, however, plaintiff's application has already commendably addressed these issues. The attorney supervisors attest, and this Court has no reason to doubt their testimony, that they did not record time spent on purely instructional tasks, and cut all instructional hours from the students' time records. (Kimerling Affirm. ¶¶ 3, 16.) Moreover, as more fully discussed below, they then took further, substantial across-the-board discounts in their own hours, and even steeper deductions in the students' hours, to account for the unavoidable inefficiency, and overlap between instruction and litigation, inherent in clinical law practice. *Cf. Gavin-Mouklas,* 1999 WL 728636, at *6 (finding across-the-board cuts of students' hours to be inadequately documented). Having carefully examined the hours that remain, and considered the difficulty of litigating a case in which the client and most of the witnesses do not speak English, the Court is satisfied that the substantial across-the-board cuts in the hours claimed appropriately adjust for this inefficiency, and also more than account for most of defendants' arguments with regard to the propriety of individual time entries. [FN6]

> FN6. The calculations made by defendants in the process of contesting the claimed hours are often internally inconsistent or mathematically incorrect. All amounts that are stated by the Court as representing defendants' suggested totals are therefore figures that the Court, after careful calculation and review of the defendants' submissions, has determined to be the amounts that defendants actually contest.

1. *Kenneth Kimerling*

[7] Mr. Kimerling claims a total of 325.8 hours spent on the liability phase of the case, 41.05 hours spent on the fee application, and 18 hours of paralegal work. (Kimerling Reply Affirm. ¶ 25.) With respect to the liability phase, he arrived at the figure of 325.8 by tallying his recorded hours and then reducing the total by

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

20% to account for excessive or redundant hours. (Kimerling Affirm. ¶ 5 & Ex. A.)
Defendants question individual time entries on a variety of grounds, including 3
hours of "waiting time," and other entries (totaling 31 hours) that are allegedly
duplicative or clerical rather than legal. (Marlborough Aff. ¶¶ 13-14.) An
attorney's time spent waiting for court conferences or hearings to begin is time
that is appropriately billed to a client, and thus plaintiff can recover it here.
Since the other 31 disputed hours are more than covered by Mr. Kimerling's 20%
overall reduction in his hours, defendants' argument that they were improperly
claimed is rejected.

[8][9] Mr. Kimerling also claims 41.05 hours spent on preparing the application for
attorneys' fees. Contrary to defendants' contentions, hours spent on fee
applications are fully compensable, as long as the total claimed is not inordinately
high in relation to the hours spent on the case as a whole. *Quarantino v. Tiffany &
Co. .*, 166 F.3d 422, 428 (2d Cir.1998); *Wilder v. Bernstein,* 975 F.Supp. 276, 283
(S.D.N.Y.1997). Plaintiff's requested hours are a minor percentage of the hours
spent by the attorneys on the liability phase, so the time spent on the fee
application is compensable. The 41.05-hour total should be reduced by 20%, however,
since Mr. Kimerling's rationale for reducing his liability phase hours, that some of
his activities took longer because he was working with students, also applies to the
fee application. [FN7] Thus, the total hours claimed for the fee application should
be 32.84, and Mr. Kimerling's total legal hours are 358.64. [FN8]

   FN7. This reduction moots defendants' objection that the amount of time Mr.
   Kimerling spent on the fee application was excessive because he had to reduce
   the students' claimed hours. (Marlborough Aff. ¶ 15.)

   FN8. Defendants calculate Mr. Kimerling's hours by taking his liability phase
   claimed hours, 325.8, and subtracting 66.3 disputed hours from it, to reach a
   new figure of roughly 259. (Defs. Mem. at 4.) This calculation is incorrect
   for two reasons. First, Mr. Kimerling's total recorded hours were actually
   407.25, after which he took a 20% deduction to reach 325.8. By beginning their
   calculations from the already reduced total, defendants double-count the
   disputed hours. The correct calculation would be to take the original total,
   407.25, and then subtract the 66.3 disputed hours from it. Second, defendants
   subtract the disputed fee application hours, 31.05 (now 41.05, including time
   spent on plaintiff's Reply) as part of the 66.3 hours, even though the 325.8
   figure does not include Mr. Kimerling's hours spent on the fee application.
   Thus, they essentially subtract the fee hours three times. The defendants'
   liability phase total should therefore be 374.25 (407.25 less 33), and their
   fee application total should be 0 (41.05 less 41.05, assuming that defendants
   contest all of the claimed hours). Taking only the liability phase hours,
   defendants' correctly calculated total, 374.25, is far higher than 325.8, Mr.
   Kimerling's claimed amount. Looking at the combination of liability phase and
   fee application hours, defendants' total is still higher than the combined
   total of 366.85 (325.8 plus 41.05) that Mr. Kimerling seeks.

*5 [10] Finally, Mr. Kimerling claims a total of 22.5 paralegal hours, divided
between the liability phase and the fee application. Defendants do not challenge the
18 hours devoted to the liability phase (Letter from John T. Morin to the Court of
10/23/02, at 2), but argue that the 4.25 hours spent on the fee application should
not be compensated, because they represent time spent reducing students' claimed
hours. (Marlborough Aff. ¶ 15.) These hours appear to have been necessary to proper
preparation of the fee application and not redundant, and so they will be awarded in
full.

2. *Elizabeth Cooper*

[11][12] Ms. Cooper claims 99.98 hours spent on the liability phase of the case.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Like Mr. Kimerling, Ms. Cooper reached this figure by deducting 20% from her recorded hours. Defendants dispute 20.3 hours of the total, including the 18.5 hours Ms. Cooper recorded for second-seating the trial. (Marlborough Aff. ¶¶ 16, 26.) Defendants neglect to mention, however, that they were represented by a three-person trial team (Tr. at 3), and presumably were properly charged for the time of all three. Since it is common practice for law firms with paying clients to send more than one lawyer to trials and other court proceedings, there is no reason why Moon should not recover fees for Ms. Cooper's time spent at trial. Only 1.8 of Ms. Cooper's hours are legitimately disputed, therefore, and so the Court finds that the claimed 99.98 hours are reasonable. [FN9]

> FN9. Ms. Cooper also claims 24.5 paralegal hours. Defendants do not dispute this amount, and the hours are not duplicative or unnecessary, so she is entitled to the full amount.

### 3. *Fordham Law Students*

[13] Plaintiff claims a total of 569.15 hours of work by the seven student interns at the AALDEF and Lincoln Square Legal Services. While the students' initial recorded total was 2466 hours, Mr. Kimerling and Ryan Weiner, one of the students, trimmed the hours to 1246 by subtracting hours that were duplicative, excessive, or spent on instructional activities. [FN10] Mr. Kimerling then deducted 50% from the new total, to account for any other duplicative or excessive hours, to come up with a figure of 623.15. (Kimerling Affirm. ¶ 16.) After defendants disputed 54 hours of trial preparation time recorded by Mr. Weiner (Marlborough Aff. ¶ 25), Mr. Kimerling agreed that these hours should not be counted (Kimerling Reply Affirm. ¶ 24), and reduced the total claimed hours to 569.15. Mr. Kimerling's subtraction of the 54 hours from the post-deduction total resulted in the 54 hours being counted too heavily, however; he should have subtracted 54 from the actual total of 1246.3. Thus, the total recorded hours should be 1192.3, and the 50% deduction brings the claimed hours to 596.15.

> FN10. The 1220 hours trimmed by Mr. Kimerling were discarded entirely, and the records provided to the Court document only the resulting 1246 hours.

At the outset, defendants argue that 128.25 of Jamie Mowder's recorded hours (the entirety of his entries for the 2001-2002 academic year) should be disallowed because the time entries are impermissibly vague, such that the Court cannot evaluate the reasonableness of the time spent. *Shannon v. Fireman's Fund Ins. Co., 156 F.Supp.2d 279, 301 (S.D.N.Y.2001)*. Since all of Mr. Mowder's entries consist of descriptions like "brief writing" and "legal research," without reference to specific issues or events in the case, they are too vague to be awarded. *Id.* Therefore, 50% of the 128.25 hours should be subtracted from the claimed total of 596.15, for a new total of 532.03. [FN11]

> FN11. This calculation is the equivalent of first subtracting the full amount, 128.25, from the initial total of 1,192.3, and then taking the 50% across-the-board deduction. For simplicity's sake, the Court will use the shorter method of simply taking 50% of the number of hours to be deducted, and subtracting that from 596.15.

*6 Defendants also dispute a number of individual entries made by each of the students on grounds of excessiveness, lack of necessity, and improperly billed activities, totaling 404.9 hours [FN12] (after subtracting the 54 hours no longer sought by plaintiff). [FN13] In particular, defendants argue that 65.45 hours of "mooting," or rehearsing a deposition or other court proceeding, represents

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

pedagogical activities that would not have been performed in a private law firm, (Morin Aff. ¶¶ 9, 11), and thus are not properly billed to defendants. *Gavin-Mouklas*, 1999 WL 728636, at *4. However, private law firms often use mooting to prepare even the most experienced litigators for trials and oral arguments, and would be ill-advised to allow their attorneys to "perform" in court unrehearsed; indeed, lawyers have been known to rehearse entire trials before mock juries, for similar reasons. Such time is appropriately billed to clients.

> FN12. This total does not include the 18.5 hours Mr. Weiner spent at the trial, which defendants dispute for the same reasons that they disputed Ms. Cooper's trial hours. Plaintiff claims only one student's trial time, which makes their trial team comparable to defendants' trial staffing. Mr. Weiner's trial hours are properly included in the fee award.

> FN13. Of these hours, defendants challenge 44 of Mr. Weiner's recorded hours as impermissibly vague. (Marlborough Aff. ¶ 25.) Unlike Mr. Mowder's entries, however, Mr. Weiner's entries, while not as detailed as they could be, allow the Court to discern what he was working on from the context of his record as a whole. Thus, when one entry states that Mr. Weiner was working on the post-trial brief, and the entry below it simply says "brief writing," the meaning of the second entry is fairly clear. The argument that the entries are excessively vague is therefore rejected, and these hours will be treated as part of the hours that defendants challenge as excessive or redundant.

In addition to mooting time, defendants argue that 38.2 hours were spent on clerical tasks performed by various students. (Marlborough Aff. ¶¶ 18, 19, 23.) Clerical tasks, such as filing and typing up notes, may be included in the calculation of hours, but must be billed at a reasonable clerical rate, which in this district is $50 per hour. *See, e.g., Lawson ex rel Torres v. City of New York*, No. 99 Civ. 10393(LAP), 2000 WL 1617014, at *2 (S.D.N.Y. Oct.27, 2000). Having reviewed the students' time entries, the Court finds that 24.1 hours were devoted to clerical activities, and thus 12.05 hours should be subtracted from the claimed hours, for a new total of 519.98 hours. The 24.1 clerical hours will be included in the fee award, at a rate of $50 per hour.

The remaining 301.25 hours contested by defendants are disputed on the grounds of excessiveness and inefficiency. Since the 50% reduction taken by plaintiff's counsel was designed to account for the inefficiency inherent in the students' work, and the contested' hours amount to only 28% of the total recorded hours (1,064.05), defendants' objections are mooted by the overall 50% deduction. [FN14] The resulting total of 519.98 student hours appears reasonable, particularly considering that the ratio of student hours to the approximately 450 hours spent by the senior attorneys on the case reflects a very modest ratio of associate/paralegal hours to senior attorney hours expended on the case.

> FN14. Defendants do not appear to argue that the 319.75 hours should be deducted from the initial total of 1,192.3 (1,246.3 less 54), and then the 50% deduction taken, since this would be redundant and would result in an understatement of the students' hours. *See* note 3, supra.

C. *The Lodestar Calculation*

[14] Based on the foregoing analysis, the lodestar amount of fees to which plaintiff is entitled is $198,022.40. This amount represents $127,774 for Mr. Kimerling's work ($2,250 of which is paralegal time); $27,445 for Ms. Cooper's services ($2,450 of which is paralegal time); and $42,803.40 for the services of the student interns.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

While the lodestar amount is presumptively a reasonable fee, the Court may use its discretion to adjust the fee upward or downward based on a number of factors, including the degree of the plaintiff's success, awards in like cases, and the time and labor required. _Hensley, 461 U.S. at 430 n. 3, 434._ Defendants argue that the lodestar should be reduced because plaintiff did not prevail on his "overtime hours" claim or on some aspects of his "spread of hours" claim, _Moon, 2002 WL 31011866, at *26, *32,_ and because his victory on his overtime hours claim was the result of "fortuity" rather than his attorneys' contributions. (Morin Aff. ¶¶ 16, 17.) It is well-established, however, that plaintiff does not have to prevail on all of his claims in order for his attorneys to receive "fully compensatory" fees. _Hensley, 461 U .S. at 434._ Plaintiff has obtained "excellent results," _id.,_ establishing his basic claim and receiving a substantial amount of damages, representing almost all of what he sought. _Cf. Proulx v. Citibank, 709 F.Supp. 396, 400 (S.D.N.Y.1989)_ (reducing fee award because "only in the sense in which Pyrrhus of Epirus prevailed over the Romans can [plaintiff] be said to have prevailed"). Contrary to defendants' claim, the fact that the Court credited aspects of Moon's testimony and claims, and aspects of defendants' evidence, in the process of reaching its verdict, does not render the decision a "fortuity" for Moon. The Court's crediting of Moon's testimony reflects not luck but the merits of his case, as ably presented by counsel. Thus, no downward adjustment to the lodestar amount is warranted for Moon's failure to prevail on every aspect of his claims.

*7 [15] Defendants suggest that the overall award of attorneys' fees is excessive because plaintiff was able to take advantage of free legal representation to make unrealistic settlement offers and run up excessive litigation costs. (Morin Aff. ¶ 22.) But plaintiff's documented settlement offer of $288,000 (Kimerling Affirm. ¶ 9), to which defendants evidently made no reply, was lower than the amount that he received in damages after the bench trial. Clearly, the offer was reasonable, and had defendants accepted it, they could have saved a great deal of litigation expense for both sides. Defendants argue that this proposal was higher than would have been made by a party paying her own fees, and this illustrates the way in which fee-shifting statutes "skew [ ] the civil litigation system ... by discourag[ing] pretrial resolution." (Morin Aff. ¶ 22.) To the extent that this is so, it is not an argument for reducing the fees properly earned by counsel in a particular case, but rather a policy argument about the advisability of such statutes that is best addressed to the legislature. Congress evidently concluded that plaintiffs in cases of this kind should not be handicapped by the cost of counsel into accepting cheap settlements that fall far short of their rights. The wisdom of this conclusion is fairly debatable, but that debate is for Congress. [FN15]

> FN15. In any event, plaintiffs looking forward to potential fee awards, like
> other plaintiffs, must take into account the uncertainties of litigation. If
> Moon sought a relatively large settlement, that may simply have reflected
> confidence in the justice of his case and the likelihood of
> success--confidence that proved amply justified--rather than excessive
> aggressiveness fostered by the potential for fee-shifting.

[16][17] Finally, defendants argue that the overall award is excessive in proportion to Moon's substantive recovery. [FN16] Defendants reach this conclusion, however, by comparing the fees sought not with the overall award, but only with the $225,000 in actual damages, ignoring approximately $125,000 in liquidated damages prescribed by FLSA and the Labor Law. (Morin Aff. ¶ 19.) This is unrealistic; certainly, lawyers working on contingency would not deduct liquidated damages from the recovery before calculating their fee. There is no reason that the amount of the award that represents statutory penalties should not be considered part of Moon's substantive "actual recovery" (id.), since the purpose of the liquidated damages provisions is to compensate the plaintiff, as well as to penalize the defendants for willful or bad-faith violations. _Moon, 2002 WL 31011866, at *30-*31._ In addition, since section 198 of the Labor Law requires the violations to be willful before liquidated damages are awarded, N.Y. Lab. Law § 198 (McKinney 2002), and the Court

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

could have declined to award liquidated damages under FLSA on a finding that the violations were in good faith, *Moon, 2002 WL 31011866, at *30-*31,* the fact that Moon received liquidated damages under both statutes reflects his attorneys' successful efforts to prove that defendants' violations were not in good faith. Thus, the entire amount of the damages award is attributable to plaintiffs' attorneys' efforts, and should be considered part of Moon's substantive recovery.

> FN16. Notably, defendants do not suggest that the fees claimed by plaintiff's lawyers for winning a meritorious case and vindicating the statutory rights of a poor laboring man are significantly disproportionate to the amounts spent by the wealthier defendants in an unsuccessful effort to defeat his claims by the presentation of unmeritorious defenses.

An award of $198,022.40 in attorneys' fees is not excessive in proportion to plaintiff's total recovery of $442,160.80. While it is a higher percentage of the damages recovery than a contingency fee would be, the Second Circuit has expressly rejected a method of calculation that would tie fees to the amount of damages recovered, *Quarantino,* 166 F.3d at 426 (rejecting "billing judgment" method based on policy behind fee-shifting statutes), and has approved fees that represent an even higher proportion of the substantive award. *See, e.g., Quarantino,* 166 F.3d at 424, 427 (approving a fee of $124,645 where damages were $158,145, and remanding only for correction of minor mistakes); *Gierlinger,* 160 F.3d at 882 (holding that fees of $104,949 were too low in case where damages award was $117,739). This result is consistent with the policy behind fee-shifting provisions in civil rights and employment law statutes, since the potential damages awards in these cases may be "too small to attract effective legal representation." *Quarantino,* 166 F.3d at 426. To compensate for this market effect, and to encourage the civil rights or labor law plaintiff "to vindicate important civil ... rights that cannot be valued solely in monetary terms," statutory fee awards are designed to be independent of the eventual monetary value of the claim. *Blanchard v. Bergeron,* 489 U.S. 87, 96, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (internal citations omitted). Thus, the Court declines to reduce the fee award on the ground that it is disproportionate to the amount of the underlying damages award.

## II. *Reasonable Costs*

*8 Plaintiff seeks reimbursement for $13,686.80 in costs. Since plaintiff has provided an invoice for each expense, as required by Local Rule 54.1(a), defendants do not contest the documentation of the costs (Morin Letter at 1), and the Court considers the costs adequately documented.

[18] Of the $13,686.80, $11,716.80 represents taxable costs that are normally shifted to the losing party under 28 U.S.C. § 1920 and Local Rule 54.1. The only taxable cost that defendants contest is the $1,024 cost of the deposition of Heejung Kang ($514 for the transcript and $510 for interpreting), which plaintiff took "to discover defendants' factual position on their wage treatment of Mr. Moon," but did not use at trial. (Kimerling Affirm. ¶ 20.) The costs associated with taking a deposition (other than attorneys' fees and expenses, Local Rule 54.1(c)(2)) are taxable if the deposition was "necessarily obtained for use in the case," 28 U.S.C. § 1920(2) (2000), rather than "solely for discovery." Local Rule 54.1(c)(2). Thus, even if the transcript is ultimately not used at trial, it is a taxable cost if "at the time the deposition was taken it was reasonably expected that the transcript would be used for trial preparation." *Anderson v. City of New York,* 132 F.Supp.2d 239, 246 (S.D.N.Y.2001) (citations omitted). Here, plaintiff took Mr. Kang's deposition in order to determine defendants' factual position as to plaintiff's wages, information that was necessary in preparing to present his case, since the facts surrounding the payment of Moon's wages were pivotal to his claim. The deposition was therefore taken in reasonable expectation that it would be used for trial preparation, and both the transcript and the interpreting services are taxable under Local Rule 54.1.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

[19] The remaining $1,970 represents non-taxable costs that would normally be billed to the client, but are shifted to the losing defendant when a statute provides for shifting of attorneys' fees. _LeBlanc-Sternberg, 143 F.3d at 763_. These must be "identifiable, out-of-pocket disbursements," rather than items that should be included in routine office overhead and absorbed in the attorney's hourly rates. _Kuzma v. IRS, 821 F.2d 930, 933-34 (2d Cir.1987)_. All of plaintiff's claimed non-taxable costs are for pretrial interpreting to enable Moon to communicate with his attorneys, costs that are not included in a law office's routine overhead. _Fuentes v. White, 709 F.Supp. 1026, 1032 (D.Kan.1989)_. Such fees would customarily be charged to the client as disbursements in the New York market, rather than included in the firms's hourly rates. Because the interpreters' rates (ranging from $85 to $100 per hour) were reasonable, and plaintiffs' attorneys relied on free interpreting as much as possible (Kimerling Affirm. ¶ 19), the $1,970 in interpreting fees is reasonable.

## CONCLUSION

  For the foregoing reasons, plaintiff's motion for attorneys' fees and costs is granted. The Court awards Moon $198,022.40 in attorneys' fees and $13,686.80 in costs, as calculated above.

**9 SO ORDERED:

2002 WL 31512816 (S.D.N.Y.), 8 Wage & Hour Cas.2d (BNA) 461

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works