**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **ARTHUR ESTANISLAU,** | : | **CIVIL ACTION NO. 3:02CV1515 (PCD)** |
| **Plaintiff,** | : | |
| **v.** | : | |
| **MANCHESTER DEVELOPERS, LLC,** | : | |
| **Defendant.** | : | **APRIL 21, 2005** |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR LIQUIDATED OR DOUBLE DAMAGES AND ATTORNEY'S FEES AND COSTS**

Defendant, by and through its undersigned counsel, submits this memorandum of law in opposition to Plaintiff's Motions For Liquidated or Double Damages and Attorney's Fees and Costs.

**Background**

In this action, Plaintiff sought damages of just under $200,000.00 (see Plaintiff's Trial Exhibit 26) for allegedly unpaid overtime. On May 21, 2004, a jury awarded Plaintiff $24,676.00 in damages under the Fair Labor Standards Act ("FLSA") and $0 in damages under the Connecticut wage payment law ("state law"). Plaintiff now seeks to amend or alter the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedures to add liquidated damages under the FLSA or double damages under state law. He also seeks pursuant to Rule

54(d)(2)(B) to be awarded attorney's fees and costs in the staggering amount of over $160,000.00.

**Interpreting the Jury's Verdict**

Plaintiff apparently interprets the jury's award of no damages under the state law claim as a mistake and his motions imply, contrary to the verdict, that the FLSA damages award also applies to his state law claim. However, it must be presumed that the jury followed the Court's instructions and understood the Court's answer to any questions it posed. *Weeks v. Angelone*, 528 U.S. 225, 233, 120 S.Ct. 727, 732 (2000). The verdict should be interpreted as consistent with the jury instructions to the extent possible. *Id.; see also U.S. v. Potanitis,* 739 F.2d 784, 790 (2d Cir.), *cert. denied*, 469 U.S. 934 (1984) (jurors presumed to follow jury instructions). In this case, the jury was instructed that:

> The plaintiff alleges that he is entitled to overtime wages under both the federal Fair Labor Standards Act and Connecticut law. You will have to determine whether he is so entitled. In many respects the law of both state and federal jurisdictions are similar. If they differ, I will point out to you in what ways they differ, otherwise you should assume that they the – the law and the standards that are to be applied are the same, and that if the plaintiff is entitled to recover under one, he is entitled to recover in the same manner under the other. The differences between the two laws may, however, require that you submit more than one verdict.

(Excerpt of Trial, Volume II, p. 61[1]).

---

[1] hereinafter cited as "Excerpt, p. __"; cited pages are attached as Exhibit A hereto.
Only the transcript from the final day of trial has been obtained by Defendant. Cites to evidence or testimony from other days of trial are based upon counsel's recollection and notes.

To interpret the $0 damages award under the state law as a mistake presumes not that the jury followed this instruction but that it was disregarded. The favored reading of the verdict would be one which presumes that a difference between the two laws, as also set forth in the jury instructions, was the cause of the difference in the damages awards, *id.* There were differences between the two laws and those differences related to the treatment of Plaintiff's lodging as a credit or deduction from wages due and/or as part of determining the applicable overtime rate

**Argument**

**PLAINTIFF IS NOT ENTITLED TO**
**LIQUIDATED OR DOUBLE DAMAGES**

**A. Plaintiff's Rule 59(e) Motion Was Not Timely Filed With The Court.**

Although Defendant does not contest that Plaintiff's motion for liquidated or double damages was served within the time prescribed by Rule 59(e), it was not *filed* within that timeframe as required by the Rule. See *Midwest Employers Casualty Co. v. Williams,* 161 F.3d 877, 879 (5th Cir. 1998) (where Rule 59 motion was timely served but filed late with Court due to counsel's misreading of applicable rules, motion was properly denied by trial court). In this case, like in *Midwest Employee's Casualty, supra,* Plaintiff apparently believed the motion was governed by the Court's Scheduling Order which delays actual filing until after the parties have exchanged their proposed filings, and allows a Certificate of Service to be filed to reflect compliance with a deadline. However, the Scheduling Order explicitly exempts from its coverage Rule 59 motions. Moreover, the filing requirement of Rule 59 is mandatory and

provides no exceptions like those found in Rule 54(d)(2)(B). The clarity of the Rule as well as the Scheduling Order virtually precludes a finding of excusable neglect. *Id. See also Canfield v. Van Atta Buick,* 127 F.3d 248, 251 (2d Cir. 1997) ("Where, as in *Weinstock,* the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose…"). Plaintiff's Rule 59 motion should be denied as untimely.

**B. Plaintiff Is Not Entitled To Liquidated Or Double Damages**

If the Court somehow finds that Plaintiff's motion to alter the judgment for an assessment of liquidated or double damages meets the requirements of Rule 59(e), his motion should be denied in any event.

**1. There can be no doubling under state law.**

First, there can be no "double" damages under the state law because the jury awarded no damages under the state law.

**2. The Court is not bound to the finding of the jury under state law.**

Second, with respect to liquidated damages under the FLSA, Plaintiff first contends that the jury's finding in its state law verdict, that Defendant "acted in bad faith, arbitrarily or unreasonably" precludes any defense to an award of liquidated damages under the FLSA. (Pl. Mem. In Support of Motion For Liquidated Or Double Damages[2], p. 2). Plaintiff cites *Guzman v. Bevona*, 90 F.3d 641, 647 (2d Cir. 1996); *Song v. Ives Laboratories,* 957 F.2d 1041, 1048 (2d

[2] hereinafter cited as "Pl. Liq. Dam. Mem."

Cir. 1992); and *Wade v. Orange Co. Sheriff's Office*, 844 F.2d 951, 954 (2d Cir. 1988) for the proposition that "[t]he jury's factual finding . . . must be followed by the court in evaluating Plaintiff's motion for liquidated and/or double damages." (Pl. Liq. Dam. Mem., p. 3). Each of the cases cited, however, stands only for the proposition that, where equitable and legal claims are tried together, factual determinations by the jury necessary to its verdict on the legal claims, collaterally estop the Court from making contrary factual findings in deciding the equitable claims. These cases are inapposite here because the determination of liquidated damages involves a legal issue not an equitable one, see *Peich v. SNET*, 121 F.3d 58, 70 (2nd Cir. 1997) (characterizing liquidated damages sought under section 216(c) of the FLSA as "legal relief"); *EEOC v. Ford Motor Company*, 732 F.2d 120, 121 (10th Cir. 1984), *citing*, *Lorillard v. Pons*, 434 U.S. 575 (1977) ("the EEOC seeks liquidated damages, which claim has been recognized in *Lorillard* as legal in nature, thus properly brought under § 16 of the FLSA.")

Although Plaintiff may have had a right to have his claim for liquidated damages tried by the jury, *see Peich*, *supra*, he waived that right when Defendant's counsel inquired after the jury instructions were read whether the factual issue on the verdict form under the state law claim would be applicable under the FLSA and Plaintiff's counsel interjected that the FLSA issue would go to the Court. (See Excerpt, pp. 79-80).

Further, no collateral estoppel effect can be applied to the jury's finding under the state law claim. As found by the Second Circuit in *Jim Beam Brands v. Beamish & Crawford*, 937 F.2d 729, 734 (2nd Cir. 1991), a decision on an issue which "was not necessary to the judgment"

has no collateral estoppel effect. Applying this holding and others to the one cited by Plaintiff in *Guzman*, supra, the United States District Court for the Southern District of New York held that "a jury's finding of fact is not 'essential' within the meaning of [*Guzman*] unless the court can determine with confidence that the verdict actually relied on it." *Local 32B-32J v. Port Authority of New York and New Jersey*, 3 F.Supp. 2d 413, 416 (S.D.N.Y. 1998). The jury's finding in this case cannot be given any collateral estoppel effect because it was not necessary to the judgment or the verdict; it related only to the state law claim for which the jury awarded no compensation. For these reasons, if the Court finds the motion for liquidated damages was timely, it may make its own determination as to whether liquidated damages should be awarded.

**3. The Court may deny liquidated damages in the circumstances of this case.**

A court may refuse to award liquidated damages under the FLSA if:

> the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act. 29 U.S.C.A. § 260 (West 1985); *see also Lyle v. Food Lion, Inc.*, 954, 987 (4th Cir. 1992). *Roy v. County of Lexington, S.C.*, 141 F.3d 533, 548 (4th Cir. 1998).

Factors leading to the Circuit Court's approval of the trial court's denying an award of liquidated damages in *Roy* included:

> the district court could reasonably find that, because the County compensated EMS employees more generously in certain instances than the Act required, the County acted in good faith. Finally, as the district court noted, the County

> demonstrated reasonableness and good faith in putting forward well-reasoned, sound legal arguments justifying its payment plan as to all of the liability issues. *Id.*

The *Roy* court further found that "[a]lthough an employer may not simply remain blissfully ignorant of FLSA requirements, it need not seek an opinion letter to avoid paying liquidated damages later." *Id.* at 548-9, quoting, *Burnley v. Short,* 730 F.2d 136, 140 (4th Cir. 1984).

In *Burnley,* 730 F.2d at 140, the Court held that:

> The district court found that Short had acted in good faith. The record amply demonstrates that Short innocently believed that the FLSA did not cover employees at his two motels. More problematical, though, is the objective prong of the test outlined in section 260. As we said in *Wright v. Carrigg,* 275 F.2d 448, 449 (4th Cir.1960), the exception to the general rule of liquidated damages puts upon the employer the "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict."
>
> * * *
>
> We are persuaded that Short's reliance on the Virginia Motel Association's newsletters to keep informed of FLSA coverage combined with the transitory and marginal FLSA coverage may not be characterized as an "ostrichlike attitude of self-delusion."

In this case too, Plaintiff does not dispute, and the exhibits reflecting Defendant's pay practices document, that Defendant regularly paid overtime when it was not required to do by so including lunch breaks and paid time off as "hours worked" for purposes of determining when overtime became payable. There was also substantial evidence in the testimony of Plaintiff and

Sherry Di Mauro to establish that Defendant often paid several hours of overtime for various assignments which everyone, including Fran Velasco, knew took an hour or less time to complete. Further, Fran Velasco testified at trial that she attended seminars to keep apprised of wage and hour issues and installed a timeclock as recommended by a Department of Labor investigator who met with her regarding a former employee who had also received lodging from Defendant. Ms. Velasco also testified about her discussions of the lodging issue with that investigator and the unrefuted testimony was that no violations in Defendant's treatment of the former employee were found.

As in *Roy* and *Burnley*, Defendant also "demonstrated reasonableness and good faith in putting forward well-reasoned, sound legal arguments" justifying its treatment of lodging (*see* Defendant's Memorandum In Opposition To Plaintiff's Motion *In Limine* Regarding Lodging Providing to Plaintiff dated April 21, 2004) which proper interpretation dictates was the basis for the jury's verdict on the FLSA claim. These arguments as well as the Court's own jury instructions demonstrating the difficulty of properly interpreting the provisions regarding lodging and the substantial differences between the federal and state laws in that regard, satisfy the objective and subjective standards required to prove "reasonable grounds" for avoiding the imposition of liquidated damages. *Roy, supra; Burnley, supra.*

For these reasons, as well as the untimely filing of his motion, the Court should deny Plaintiff's motion for liquidated or double damages.

**POINT II**

**PLAINTIFF'S PETITION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS IS UNREASONABLE, EXCESSIVE AND NOT PROPERLY SUPPORTED**

A "fee applicant bears the burden of establishing entitlement to an award [of attorney's fees] and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933 (1983). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet Sheet*, 148 F.3d 149, 173 (2d Cir. 1998). The Court should exclude from the fee calculation hours that were not reasonably expended. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. "[H]ours that an attorney would not properly bill to his or her client in the private sector cannot properly be billed to the adverse party under a fee-shifting statute such as the FLSA." *Id.* at 434. Hours that are excessive, redundant, or otherwise unnecessary should also be excluded. *Kirsch*, 148 F.3d at 173. "The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).

The Court should:

> examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. Efforts put into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns form such further efforts . . . . In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties. *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998), *quoting, DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985)).

**A.    Plaintiff's Assertions Of A Reasonable Hourly Rate Are Unsubstantiated and Excessive.**

In determining a reasonable hourly rate, the Court should look to prevailing market rates in the community for similar services by lawyers of comparable skill and experience, *id.* "The burden of proving the 'market rate' is on the fee applicant; . . . ." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999). Self-serving affidavits are insufficient. *See Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541 (1984) (fee applicant must produce "satisfactory evidence - in addition to the attorney's own affidavits - that the requested rates are in line with those prevailing in the community . . . ."). In addition to his own affidavit and those of the other attorneys in his firm, Plaintiff's counsel cites his agreement with Plaintiff for a $250 hourly rate (Mercier aff., ¶ 9); the "usual" rate he claims to have charged paying clients since 2002, without any reference to how many paying clients he actually has or how many of them actually pay him at that rate for all hours expended (Mercier aff., ¶ 7); a Connecticut Supreme

Court case, *Di Martino v. Richens*, 263 Conn. 639 (2003) in which that court recited that a jury had awarded plaintiffs attorney's fees and that Mr. Mercier represented them, but which says nothing about what the hourly rate was, who determined it or how (Mercier aff., ¶ 8); and several cases from the Southern District of New York (Manhattan and White Plains) establishing that $250 is likely the prevailing rate in those communities.  (Pl. Mem. in Support, p. 3).[3]  No additional support for a $300 per hour rates for Attorneys Beck and Eldergill[4] and the $250 rate for Attorney Ortis is provided.  Although Defendant does not question the skill or experience of these attorneys, Plaintiff, as the fee applicant, has failed to meet his burden of showing that it results in a market rate as proposed.

In *Detje v. James River Paper Corporation*, 167 F.Supp. 2d 248, 250-251 (D.Conn. 2001), Judge Burns was faced with a similar lack of resources from which to determine a reasonable hourly rate for two employment attorneys in Bridgeport, Connecticut:  Brian Mangines, a 1991 law school graduate (see Martindale-Hubbell listing, attached as Exhibit B) and Daniel Kryzanski who, according to New England Law School Class Notes (www.nesl.edu/alumni/classnote) graduated in 1993.  Judge Burns allowed a rate of  $175 per hour for Mr. Mangines and $125 per hour for Mr. Kryzanski based upon their years of experience.

---

[3]    The fact that Plaintiff asserts $250 per hour as the prevailing rate in the Southern District of New York, standing alone, dictates that the rate is not anywhere near the prevailing rate in and around Manchester, Connecticut where Plaintiff and the other attorneys in his firm practice.

Reference to the 2004 effective[5] billing rates for attorneys in the office of Defendant's counsel, who almost exclusively represent clients on an hourly basis, provide a more meaningful reference. For Loraine Cortese-Costa, who graduated from law school in 1986, five years prior to Mr. Mercier, and who has been employed in New York and at her current firm, specializing in labor and employment law litigation, the effective billing rate for 2004 was $215.97. (Affidavit of Loraine Cortese-Costa, ¶2). For Christopher Hodgson, a 1985 law school graduate, who also specializes in labor and employment litigation, the effective hourly rate was $209.98 (*Id. at* ¶3). For David Kelly, a 1998 law school graduate who was with Durant, Nichols from 1998 through 2004 and practiced almost exclusively in the areas of labor and employment litigation, the effective rate was $164.67. (*Id.* at ¶4). These rates suggest that the hourly rates proposed for each of the attorneys in Beck and Eldergill who worked on this matter are not reasonable and should be at least thirty percent less than what is suggested.[6]

---

4 Judge Sullivan in *Citano v. City of Hartford*, 2000 WL 1397757, *4, (Conn. Super. 2000) (copy attached) awarded a rate of $185 for Kathleen Eldergill's testimony in that matter.

5 These are the hourly rates actually charged to paying clients on average. The Court should also consider that in employment matters which go to trial, further reductions of 20%-30% in the amounts billed are customary. (Affidavit of Loraine Cortese-Costa, ¶5).

6 The "law clerk" rate and time entries should be deleted in their entirety as no information is provided as to who the person was, what his or her education or experience is or what she or he did for this case other than "research."

**B. Entries Lacking Detail and Showing Excessive Time Spent Should Be Deleted Or Discounted**

**1. Plaintiff's Request for Fees for His Supplemental Brief Should Be Disallowed**

Judge Dorsey's Order Requiring Supplemental Briefing, dated August 31, 2004, posed the following question to counsel:

> whether Defendant's waiver of its right to put the issue before the jury should also be deemed a waiver of its ability to put the issue before the Court now, especially when Defendant made no specific reservation of the objection for that purpose.

Judge Dorsey directed Defendant to file a brief by September 17, 2004 and Plaintiff to file his response by November 1.

On September 17, 2004, Defendant filed its supplemental brief, addressing the question in two parts: (1) Plaintiff, not Defendant, had the burden of proof as to FLSA coverage and waived his claim; and (2) a renewed Rule 50 motion cannot be, and was not, waived.

Plaintiff's response dated November 1, 2004 attacked the timeliness of Defendant's argument that Plaintiff waived his FLSA claim because the argument was not raised until the supplemental brief. Defendant did not acknowledge that it was the Court that requested supplemental briefing on the issue of waiver or that Defendant had claimed since the time of trial that Plaintiff had the burden of proof as to FLSA coverage and entirely failed to plead or present evidence of any kind as to that issue.

Plaintiff also claimed that Defendant waived its right to challenge the presumption of FLSA coverage. Plaintiff did not directly address the Court's posed question. For example, the

case *Bonner v. Guccione*, cited by Plaintiff, does not distinguish between issues presented to a jury and those presented to the court, or whether refusing a specific charge forever relinquishes the right to present the sufficiency of the evidence on a legal issue. *See Bonner v. Guccione*, No. 94CIV7735, 1997 WL 362311, at * 8 (S.D.N.Y. July 1, 1997) (discussing a party's right to a post-verdict question to the jury).

The Court agreed with Defendant and ruled that it properly preserved its right to challenge the presumption of coverage, and considered Defendant's motion on the merits. *See* Ruling on Defendant's Rule 50(b) Motion for Judgment, dated Mar. 22, 2005.

Plaintiff's claim of 43.2 hours, for a total of $7,645.00, in preparing his response to Defendant's supplemental brief is clearly excessive, in that he did not even answer the question asked by the Court, and far exceeds the amount of time spent on research for all other issues in the case. (*See* Exhibit C, attached hereto.)  Plaintiff spent more hours on research responding to the Court's Order Requiring Supplemental Briefing than he did for all his pre-trial and trial work (which totaled 30.6 hours and $7,151.50) or in responding to Defendant's Rule 50 motions (which totaled 31.5 hours and $7,523.00), without even addressing the Court's question.  Plaintiff should not be expected to pay for any costs associated with Plaintiff's supplemental brief.

Should the Court choose to allow a portion of Plaintiff's submission for his supplemental brief, Defendant contends that several entries are so vague that it is impossible to determine how the time was actually spent.  For example the entries for "Research Regarding Supplemental Briefing" and/or "Research Preparation of Pleading -Supp Brief" provide an insufficient basis to

determine how the time was actually spent. (*See* Billing Entries dated 10/25/2004, 10/26/2004 (two entries), 10/27/2004, 10/28/2004, 10/29/2004, 11/1/2004, for a total of 12.9 hours and $2,740.00.) Further, Plaintiff's entry dated 9/27/2004 for "Research-MPM-" (totaling 0.6 hours and $120.00) provides no indication whatsoever of what was researched or why. Clearly, Defendant cannot be held responsible for such vague entries and excessive fees.

Finally, Plaintiff included an entry dated 3/16/2005 for "Correspondence to Client; Telephone Conference with Client Regarding Retaliation Claim; Research Regarding Retaliation Claim" for a total of 2.7 hours and $675.00. This was far past submission of Plaintiff's supplemental brief on November 1, 2004 and entirely unrelated to any issues addressed therein, or any claim brought by Plaintiff against Defendant. This amount should also be deducted from the total bill.

**2. Plaintiff's Other Vague, Redundant and Excessive Entries Should Be Deducted**

**a. Damages Analysis**

In addition to the foregoing, Plaintiff's claim for 45.0 hours and $11,250.00 for damage analysis should be disallowed as clearly excessive and obviously redundant. These charges began on July 30, 2002 and continued through May 6, 2004 (for a meeting with his economic expert, Sheldon Wishnick).[7] First of all, it is incomprehensible that it would take an attorney 45

---

[7] The specific entries are dated: 7/30/2002, 8/3/2002, 8/6/2002, 8/7/2002, 8/8/2002, 11/20/2002, 11/25/2002, 12/2/2002, 12/4/2002, 12/5/2002, 12/17/2002, 12/20/2002, 1/9/2003, 1/10/2003, 3/24/2003, 3/25/2003, 4/1/2003, 4/2/2003, 4/3/2003, and 5/6/2003.

hours to add hours worked and hours paid. Secondly, this is in addition to the fees charged by Plaintiff's expert for the same analysis, for which Plaintiff also requests reimbursement. Defendant requests that all fees for damage analysis be deducted, or in the alternative, a reasonable amount be allowed.

**b. Deposition Preparation**

Similarly, Plaintiff's entries for deposition preparation are clearly redundant, and the descriptions are so vague that in many instances the deponent isn't even identified. For example, Plaintiff's entries dated 1/10/2003,[8] 1/13/2003, 1/14/2003, 1/15/2003, 2/11/2003, 2/28/2003, 3/11/2003, 3/12/2003, 3/13/2003, 3/17/2003 and 3/18/2003, merely say "Deposition Preparation," or "Preparation for Deposition" without more. The total time spent was 26.4 hours for a total of $6,600.00. This time is not only excessive, but the entries are clearly insufficient to warrant reimbursement.

**c. Trial Preparation**

In the same vein, Plaintiff's entries for "trial preparation," for a total of 120.0 hours and $29,8666.00, which resulted in a jury award of $24,676.00, is clearly unwarranted. Furthermore, this number does not even include Plaintiff's compliance with the Court's Supplemental Order and preparation of Parts A and C of the Trial Memorandum, for which he requested payment for 37.4 hours ($9,350.00) and 46.10 hours ($11,600.00) respectively. Each and every one of the

[8] This entry includes time spent on damage calculation.

entries on the attached spreadsheet for trial preparation should be deducted from Plaintiff's submission. (*See* Exhibit D, attached hereto.)

**d. Miscellaneous**

Finally, Defendant draws the Court's attention to Plaintiff's entry of 6/4/2004 by "DVO" for 2.3 hours and $460.00, with a typewritten notation in the margin of "NEW," and questions whether this is actually a contemporaneous entry.

**C. The Attorneys Fee Request Should Be Reduced For Plaintiff's Very Limited Success**

The most " 'import factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), *quoting, Hensley*, 461 U.S. at 436, 103 S.Ct. 1933). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley*, *461 U.S. at 434, 103 S.Ct. 1933.*

In *Thomas v. Board of Trustees,* 599 F.Supp. 331 (D.Conn. 1984), Judge Dorsey applied a fifty percent reduction of the attorney's fees requested by the plaintiff reasoning that:

> If plaintiff has achieved only partial success, the court may reduce the overall award or eliminate specific hours to reflect plaintiff's limited overall success.
>
> * * *
>
> Where plaintiff has been successful on certain claims but unsuccessful on other related claims, and the results or "the significance of the overall relief obtained" are partial or limited, *id.* at 1940, "the court must explicitly consider whether the fee is a reasonable one in light of the level of plaintiff's success." *Illinois*

> *Welfare Rights Organization,* 723 F.2d at 567. While plaintiff has been appointed to the position principally at issue, she has also waived her claims to substantial aspects of the relief sought.... Plaintiff has derived neither the declaratory nor the injunctive relief she sought, either in her behalf or that of other potentially similarly situated Mattatuck employees. Accordingly, a one-half reduction of the fees claimed is deemed a reasonable reflection of limited or partial success. *Id.* at 334 and 336 (some citations omitted).

Although difficult to determine exactly, Judge Dorsey appears to have based his fifty percent reduction on the fact that the plaintiff had achieved about half of what she sought by bringing her lawsuit. In this case, Plaintiff has been awarded a little over ten percent of what he sought in the lawsuit which will amount to a little over twenty percent if his claim for liquidated damages is successful. If the verdict is interpreted consistently with the jury instructions, it should be read as pertaining only to the lodging issue which was separate and distinct from his attempts to prove vast amounts of unpaid overtime, the successful defense of which required the bulk of the work in this case on both sides. Under *Thomas*, an additional overall reduction of at least 75% is warranted after the hourly rates are adjusted and the unsupportable time entries are eliminated. Alternatively, the Court should not allow or discount any time entries which cannot be tied to the lodging issue or for which the lodging issue was but a minimal part. *Id.* This would include all the discovery and the trial.

**D. The Court Should Make Further Reductions In Attorney's Fees Claimed For Plaintiff's Bad Faith**

It has also been recognized that courts can exercise their equitable powers in making attorneys fee awards and consider the bad faith, if any, of the parties. *See U.S. v. G.E.*, 41 F.3d 1032, 1048 (6th Cir. 1994). In this case, Defendant proved at trial that Plaintiff's testimony at trial directly contradicted much of the testimony he had provided at deposition and that both his deposition testimony and his testimony at trial, as well as contradicting each other, directly contradicted much of an affidavit he had provided to the Court in support of a motion for summary judgment. Defendant was also able to prove that Defendant had been to and won jackpots in Las Vegas, gone to Mohegan Sun and Foxwoods, conducted his own landscaping business with Defendant's equipment on Defendant's time, suntanned and engaged in other personal activities at times for which he was claiming unpaid overtime wages in Court. There was also testimony that Defendant had conveyed threats through a Mark Healy to two of Defendant's employees who were witnesses in the case in an attempt to discourage them from testifying. When Plaintiff had Mark Healy testify on his rebuttal case, Mary Healy did not deny that he had made those threats or that they had come from Plaintiff. There was an abundance of evidence of Plaintiff's bad faith in the prosecution of this claim.

In his fee application, Plaintiff asserts that a substantial amount of attorney time was spent addressing attempts to impeach him on "collateral" issues. All that evidence went directly to proving the frivolous bad faith aspects of his case, was not subject to any motion *in limine* and

was all admitted at trial. Defendant should not be required to pay for the time it took Plaintiff's counsel to try and reconcile it with his claims. Neither should Defendant be required to pay for the extensive amounts of preparation time that must have been required to try and reconcile all of his conflicting testimony. All of this warrants a substantial, if not complete, denial of his claim to attorney's fees.

**E. Plaintiff Is Not Entitled To Payment Of Expert Witness Fees Or Undocumented And Unnecessary Costs**

Defendant objects to Plaintiff's request for payment of the following costs incurred as listed in the attachments to his motion:

| | | |
|---|---|---|
| 1/13/03 | Actuarial Litigation Service – Litigation Fee | $900 |
| 4/11/03 | Actuarial Litigation Service – Expert/Actuarian | $712.50 |
| 4/21/04 | IRIS, LLC – Investigative Report | $239.08 |
| 4/30/04 | Personal Courier Service Delivery of documents To U.S. District Court | $60.30 |
| 5/10/04 | Actuarial Litigation Service – Document Review and Calculations | $1,856.50 |
| 5/12/04 | Town Clerk of Manchester Copies of Deeds | $30.00 |

| | | |
|---|---|---|
| 5/27/04 | Actuarial Litigation Service – File Review and Calculations | $731.25 |
| 6/2/04 | Personal Courier Fees – 3 Courier Fees to Court/CT Financial/ Durant | $140.00 |
| 11/1/04 | Personal Courier – Courier Fee for Document Filing with U.S. District | $70.00 |

The Actuarial Litigation Service fees are apparently for Mr. Wishnick, Plaintiff's expert witness. At least two Circuit Courts have held that expert fees are not recoverable in an FLSA action. *See Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399 (7th Cir. 1999); *Gray v. Phillips Petroleum Co.*, 971 F.2d 591, 596-7 (10th Cir. 1992). Moreover, they should certainly not be allowed where, as here, no invoices showing hours spent, work done or fees charged have been provided. The cost of the IRIS, LLC report should be rejected because no supporting documentation is provided, the report has not been shown as necessary to Plaintiff's case (indeed, there is no way of telling what the report was for) and such costs are not contemplated under 29 U.S.C. §216. The deeds from the Town of Manchester fall into the same category. The courier fees are all unnecessary given that regular mail is appropriate for service and filing of Court papers. *See Spegon*, 175 F.3d at 559 ("district court should disallow costs that are unreasonable. . .because they should not have been incurred at all.")

**CONCLUSION**

For all these reasons, the Court should deny Plaintiff's Motions For Liquidated or Double Damages and For Attorneys Fees and Costs.

Done at Bridgeport, Connecticut this 21st day of April, 2005.

Loraine M. Cortese-Costa
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT 06604
(203)366-3438
Federal Bar No. ct03984

ATTORNEYS FOR DEFENDANT

**CERTIFICATION**

This is to certify that I have caused to be served the foregoing via e-mail and U.S. Mail, certified mail, return receipt requested, this 21st day of April, 2005 to all counsel and pro se parties as follows:

Marc Mercier, Esq.
Beck & Eldergill, P.C.
447 Center Street
Manchester, CT 06040

Loraine M. Cortese-Costa

P:\lit\LCC\586800\003\00046156.DOC