UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARTHUR ESTANISLAU, JR. : | CIVIL ACTION NO: 3:02CV1515(PCD) |
|     Plaintiff : | |
| : | |
| VS. : | |
| : | |
| MANCHESTER DEVELOPERS, LLC : | |
|     Defendant : | MAY 9, 2005 |
| : | |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**

Pursuant to Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct., 76 L.Ed.2d 40 (1983), Plaintiff is a "prevailing party" for the purpose of awarding attorney's fees because he has in fact succeeded "on ... significant issue[s] in litigation which achieve[d] some of the benefit the party sought in bringing suit."

In determining the propriety of Plaintiff's requested fee, it is appropriate for the trial court to look to its own familiarity with the case, its experience, both with the case and generally, and the evidentiary submissions and arguments of the parties. DiFilippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985). Where a Defendant objects to a fee petition, it is Defendant's burden to come forward with evidence of hours that are excessive, duplicative or unnecessary. See Foley v. City of Lowell, Mass., 948 F.2d 10, 21 (1st Cir. 1991). Our Supreme Court has held that a "request for attorney's fees should not result in a second

1

major litigation." Hensley, 461 U.S. at 437.

The fee award begins with the court's determination of the lodestar "based upon the hours reasonably spent by counsel ... multiplied by the reasonable hourly rate." Cruz v. Local Union Number 3 of the International Brotherhood of Electrical Workers, 34 F.3d 1148, 1159 (2d Cir.1994) (internal quotation marks omitted). There is a "strong presumption. . . that the lodestar figure represents the reasonable fee" to be awarded a prevailing party, and the "party advocating. . .a departure [from such an award]. . . bears the burden of establishing that an adjustment is necessary to the calculation of a reasonable fee." Grant v. Bethlehem Steel Corp., 973 F.2d 96, 101 (2d Cir. 1992)(citations and quotations omitted).

While the verdict is not all of what Plaintiff sought (although subject to doubling) it is well-settled that "[a] presumptively correct 'lodestar' figure should not be reduced simply because a plaintiff recovered a low damage award." Cowan v. Prudential Insurance Co., 935 F.2d 522, 526 (2d Cir. 1991). Indeed, "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation." Quarantino v. Tiffany & Co., 166 F.3d 422, 426 (2d Cir. 1999).

As recognized by the Second Circuit in Cowan, supra:

The intention of Congress was to encourage successful civil rights litigation, not to

2

create a special incentive to prove damages and shortchange efforts to seek effective injunctive or declaratory relief. . .[W]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefitting only the individual plaintiffs whose rights were violated.   Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms.

While Defendant made broad and absolute objections to any and all award of attorney's fees, the specific bases of its critiques, where identified, are not supported by the events at trial or by the applicable legal standards.

### A. Plaintiff Has Sufficiently Established His Hourly Rate Is Consistent With The 'Market Rate'

Contrary to Defendant's arguments set forth on pages 10 through 12 of its memorandum in opposition, Plaintiff has provided detailed affidavits to establish not only his experience, skill, hourly rate and hours devoted to litigation but also those of his partners, Attorney Kathleen Eldergill and Attorney Derek Oatis, who also committed hours to research and preparation.

It is well established that an attorney's affidavit regarding fees, with detailed support, together with the courts own experience and reasoned judgement, are sufficient to establish to established hourly rate in relation to 'market rate'.

3

> In determining the enhanced hourly rate, the court looks to the prevailing hourly rate in the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputation. See Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Over the past several years, other District of Connecticut judges who have considered this issue have concluded that an hourly rate of $250--$300 is the prevailing market rate for attorneys with high degree of expertise in their field of law.

Connecticut State Dept. of Social Services v. Thompson, 289 F.Supp.2d 198, 205 (D.Conn. 2003).

While Defendant claims that Attorney Mercier's affidavit is insufficient, its only Second Circuit authority flatly contradicts this assertion. In Detje v. James River Paper Corp., 167 F.Supp.2d 248, (D.Conn. 2001), Judge Burns, using her own experience and affidavits, awarded two of the petitioning attorneys the requested rate. Only for the two attorneys who had not provided affidavits did the court reduce the requested rate award to $175 and $125. See e.g., Marisola A. v. Giuliani, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000) (awarding fees of $350 per hour for attorneys with more than fifteen years of experience); See also cases cited therein.

Defendant's only evidence challenging Attorney Mercer's rate is a single affidavit of less than two pages proffering a novel and irrelevant formula that is not the standard used by our courts. Defendant's theory of "effective hourly rate" appears to be based not upon an attorney's rate but upon a retrospective calculation of monies eventually collected from clients. That approach would, in effect, leave compensation to the whim of a client's

4

solvency. Indeed, the "effective hourly" rate in a case in which either a plaintiff or a defendant were unable to pay would be $0.

Defendant further departs from the legal standard of rate calculation by averaging their affiant's rate over a period of decades. However, never have our courts used an attorney's career "effective hourly rate" to set the award of fees. To the contrary, courts, recognizing the economic disadvantage to the delay in payment of attorneys' fees, use only the attorney's current rate. See eg., <u>Tsombanidis v. City of West Haven, Connecticut</u>, 208 F.Supp.2d 263, 273-274, D.Conn., Jun 18, 2002 (Noting that the Second Circuit, "[i]n order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be 'current rather than historic hourly rates.' "), quoting <u>Missouri v. Jenkins</u>, 491 U.S. at 284, 109 S.Ct. 2463).

Defendant has not provided any evidence, consistent with the Second Circuit's legal standards, which contradicts the Plaintiffs assertion regarding his rate and those of his partners. Absent evidence submitted by Defendant which suggest that the rates requested are not market rates, this Court should grant fees based on Plaintiff's request. See <u>National Association of Concerned Vets. v. Secretary of Defense</u>, 675 F.2d 1319, 1326 (DC Cir. 1982).

**B. Plaintiff May Be Awarded Fees For All Hours Expended**

### i. Plaintiff Fees For Hours Expended On His Supplemental Brief May Be Allowed

Plaintiff petitions the court for 43.2 hours or $7,645 for preparing his response to Defendant's supplemental brief. Defendants claim that they "should not be expected to pay *any costs* associated with Plaintiff's supplemental brief." Def. Mem. Opp., pp. 14-15.

While Defendant properly recites this Court's Order Requiring a Supplemental Brief on the issue of "whether Defendant's waiver of its right to put the before the jury", Defendant fails to recognize that its response was to assert the opposite - that Plaintiff had waived the claim before the jury. It was that response that necessitated Plaintiff's lengthy reply. Defendant itself created the necessity for Plaintiff's response and cannot not seek to disallow the fees it precipitated.

### ii. Plaintiffs Has Fully Supported His Petition For Fees Related To Damage Analysis, Deposition Preparation And Trial Preparation And In The Absence Of Countervailing Evidence, Is Entitled To These Fees.

Defendant asserts, without any evidence or affidavit, that Plaintiff's claims for 45 hours and $11,250 for the analysis of damages "should be disallowed" in its entirety. In effect, Defendant seeks to convince this court that Plaintiff properly spent *no time whatsoever* in the analysis of damages at the very heart of an overtime wage claim.

As is readily apparent from the trial, the calculation of damages in this case involved

6

far more than merely reviewing a collection of time cards. The immense difficulty in calculating damages was a result of Defendant's intentional conduct in not maintaining from September, 2000 to January, 2001 any time records at all, and from April, 2001 forward, only those records which reflected the ever changing hours it agreed to pay Plaintiff. Plaintiff then had to calculate various additions and offsets relating to lodging. Had Defendant followed a transparent and legal method of recordation and compensation, Plaintiff would certainly not have had to expend such time recreating Plaintiff's entire work history. Defendant, however, is responsible for its own conduct.

Defendant, without analysis or evidence, challenges Plaintiff's petition for 26.4 hours or $6,600 related to preparation for depositions. The simple fact is that Plaintiff was required prepared for and either take or defend four depositions, including that of Plaintiff himself and Fran Velasco. Such preparation required listing of examination questions, as well as review of extensive exhibits, and review of years worth of employment history and records.

Defendant next claims on page 16 of its brief that "[e]ach and every one of the entries. . .for trial preparation" should be disallowed. It is unfathomable that Defendants could actually claim that Plaintiff should not be allowed any fees related to preparation for trial. Plaintiff has properly submitted contemporaneous time recordings for this work and shall rely on the Court's own observation of the amount of time required to try the case, let

7

alone prepare for trial of the case. That trial preparation included preparation for the innumerable exhibits and witnesses Defendant identified but did not call or seek to introduce.

### iii. Plaintiff's Award May Not Be Reduced Based Upon the Defendant's Claim Of "Limited Success".

Defendant has no basis, as a matter of law or logic, to claim that Plaintiff achieved only a "limited" success which would justify the radical fee reduction it seeks. Defendant terribly misconstrues the legal measure of success, which is not based upon the monetary award, but upon success of the legal claims and whether the effort expended by Plaintiff was upon issues closely related to those successful legal claims.

This Court has recited the well established principles which define a "prevailing party" and "success" for purposes of a fee petition.

> A "prevailing party" . . . is entitled to reasonable attorney's fees under 42 U.S.C. § 1988. A plaintiff will be considered a "prevailing party" entitled to such fees if the plaintiff has succeeded " 'on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit.' " Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978) ... Time spent solely in pursuit of unsuccessful claims should be excluded from the fee award. If plaintiff's successful and

8

unsuccessful claims are a "common core of facts" or are based on "related legal theories," and if the results obtained are "excellent," all hours reasonably expended on the litigation are normally compensable.

Thomas v. Board of Trustees of Regional Community Colleges, 599 F.Supp. 331, 334, (D.Conn. 1984).

Beyond that statement, Thomas has no bearing upon this case. First, Plaintiff was successful on both his claims. Even were the Court to consider him unsuccessful on the state law claim, it is undisputed that the hours expended on the FLSA claim would have been exactly the same since it involved exactly the same evidence.

Second, the underlying claims in Thomas were not fully adjudicated but were instead resolved by way of a stipulation of settlement in which the plaintiff waived any other claims for relief and which precluded an admission or finding of wrongdoing on the defendant's part. Id. at 333. In the instant matter, each of Plaintiff's claims have been fully adjudicated and speculation is not required.

Any claim by Defendant that the amount of the award should require a reduction in Plaintiff's fee award is not only unsupported by law, but is contrary to the remedial intent of the FLSA and other fee-shifting statutes which distinguish this action from regular civil claims meant to recover only individual damages. "Congress enacted fee-shifting statutes to compensate 'private attorney[s] general' and thereby to encourage private enforcement

9

of civil rights statutes, to the benefit of the public as a whole. See H.R. Rep. No. 94-1558, at 2 (1976) (citing <u>Newman v. Piggie Park Enterprises, Inc.</u>, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam)); see generally S.Rep. No. 94-1011 (1976). . .The public interest. . . is. . .perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations." <u>Quarantino</u>, 166 F.3d at 426.

Allowing a fully compensatory fee in this case will serve these public interests, "vindicating a policy that Congress considered of the highest importance", <u>Cowan</u>, <u>supra</u>, 935 F.2d at 527; See also <u>Atchison, Topeka & Santa Fe R.R. v. Lennen</u>, 732 F.2d 1495, 1507 (10th Cir.1984), quoting <u>Mitchell v. Robert DeMario Jewelry, Inc.</u>, 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960).

### iv. No Reduction is Warranted for Plaintiff's Alleged Bad Faith

Finally, Defendant makes the specious demand on pages 19 and 20 of its memorandum in opposition that the court completely deny the claim for fees on the grounds of bad faith. Defendant's audacious argument is flies in the face of and is an attempt to ignore the jury. Defendant is not allowed to re-litigate its rejected claims by simply reasserting them in a fight over fees. See <u>Hensley</u>, 461 U.S. at 437. The jury squarely rejected Defendant's argument not only by awarding Plaintiff overtime but by specifically finding that it was Defendant, and not Plaintiff, who had acted in bad faith. In

fact, based upon Defendant's own logic, any adjustment must be to increase Plaintiff's fee award.

                              PLAINTIFF

                              By:
                                 Marc P. Mercier
                                 Beck & Eldergill, P.C.
                                 447 Center Street
                                 Manchester, CT 06040
                                 Tel: (860) 646-5606
                                 Fed Bar No: ct10886

## CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed this 9th day of May, 2005, to the following parties:

Pamela J. Coyne, Esq.
Loraine M. Cortese-Costa, Esq.
Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C.
1057 Broad Street
Bridgeport, CT  06604

                                 _____
                                 Marc P. Mercier

Estanislau\ReplyFees05-05.pld

12