Not Reported in F.Supp.2d, 1999 WL 33500070 (S.D.N.Y.)

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Dr. Barbara **LAVIN-MCELENEY**, Plaintiff,
v.
**Marist COLLEGE**, Defendant.
No. 96CV4081.
Sept. 28, 1999.

Robert E. DiNardo, Esq., Jacobowitz & Gubits, LLP, Walden.
Michael T. McGrath, Esq., Putney, Twombly, Hall & Hirson LLP, New York.

MEMORANDUM ORDER

FOX, Magistrate J.
*1 The parties consented to trial before me pursuant to 28 U.S.C. § 636(c) on September 15, 1997. Plaintiff has moved for attorneys' fees and costs and to amend the judgment to include liquidated damages. For the reasons that follow, Plaintiff's motion to amend the judgment is granted. Plaintiff will be awarded attorneys' fees in the amount of $86,475.40 and costs in the amount of $7,572.71. Plaintiff is an associate professor of criminal justice at Marist College. In May 1996, Plaintiff filed a complaint alleging sex discrimination in the form of unequal pay under Title VII, 42 U.S.C. § 2000e et seq., and the New York Human Rights Law, N.Y. Exec. Law § 296. In May 1998, Plaintiff amended her complaint to include a cause of action under the Equal Pay Act, 29 U.S.C. § 206.

This case was tried to a jury for eight days beginning on October 26, 1998. On November 5, 1998, the jury returned a verdict for Plaintiff on her Equal Pay Act claim. The jury did not find, however, that Defendant's violation of the Equal Pay Act was willful. As a result of the jury's answering in the negative the interrogatory asking whether Defendant's violation of the Equal Pay Act was willful, the jury was instructed not to consider Plaintiff's claims under Title VII and the New York Human Rights Law, both of which require evidence of intentional discrimination.

Counsel stipulated, prior to the submission of the case to the jury, that the jury should be asked to determine the amount of damages withheld by Defendant as a result of sex-based salary discrimination for the academic year 1996-97. The jury found that Plaintiff's damages for the academic year 1996-97 was $5,796.00. Based on the jury's determination, counsel employed a formula to calculate the total amount of damages owed under the Equal Pay Act.

Counsel submitted a proposed judgment, which was entered on December 30, 1998. The judgment provided that Plaintiff would receive back pay in the amount of $11,317.30; that Plaintiff's annual compensation commencing May 6, 1998 would be $52,338.55; that Plaintiff's annual compensation commencing September 1, 1998 would be $53,947.55; and that Plaintiff's future base salary would be calculated in accordance with the jury's verdict in this case.

Plaintiff has now moved to amend the judgment to include liquidated damages pursuant to 29 U.S.C. § 216(b). Plaintiff's counsel acknowledges that he mistakenly did not seek to include liquidated damages in the first judgment. Defendant argues that I should decline to disturb the judgment. Federal Rule of Civil Procedure 60 provides that the court may relieve a party from a final judgment for a number of reasons, including mistake or inadvertence. Plaintiff's motion was made only a few weeks after the entry of judgment and consideration of the motion does not create a hardship for Defendant. The decision to grant relief from a judgment is committed to the discretion of the Court, and I conclude that such relief is warranted in this case.

*Liquidated damages*
*2 29 U.S.C. § 216(b) provides that an employer who is found liable under the Fair Labor Standards Act (FLSA) "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." [FN1] 29 U.S.C. § 216(b) has been modified by 29 U.S.C. § 260, which provides a defense to liquidated damages. 29 U.S.C. § 260 provides that in an action under the FLSA, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or

Exhibit B

omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [29 U.S.C. § 216]."

> FN1. Although the language of both 29 U.S.C. § 216 and 29 U.S.C. § 260 refers to the FLSA, both sections apply to the Equal Pay Act, which is contained within the FLSA, as well.

The employer bears the burden of establishing a defense under 29 U.S.C. § 260. *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir.1987). "In order to prevail on this defense, the employer must show (1) subjective good faith and (2) objectively reasonable grounds for believing that he was acting in compliance with the provisions of the FLSA." *Soler v. G & U, Inc.,* 628 F.Supp. 720, 724 (S.D.N.Y.1986). " "If the employer fails to satisfy those requirements, the district court is without discretion to deny liquidated damages." *Ibid.* "The good faith defense provided by [29 U.S.C. § 260] was intended to protect an employer who innocently and to his detriment followed the law as it was laid down to him by a government agency, where the agency's interpretation of the law subsequently turned out to be erroneous or invalid." *Ibid.*

The burden imposed by 29 U.S.C. § 260 is difficult to meet, and double damages are the norm. *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 71 (2d Cir.1997). "Liquidated damages under the FLSA are considered compensatory rather than punitive in nature." *Ibid.* "Such damages are intended to compensate for any losses which a worker might suffer because of the wrongful retention of his pay." *Soler v. G & U, Inc.,* 628 F.Supp. 720, 724 (S.D.N.Y.1986).

There was testimony at trial that Dr. Poris reviewed faculty salaries periodically to as certain that Defendant was in compliance with the law. When Dr. Poris' statistical analysis did suggest a potential discrepancy between Plaintiff's salary and that of male faculty members, Dr. Poris analyzed the data again using a type of analysis called "content analysis," the validity of which was disputed at trial. Dr. Poris' "content analysis" led her to the conclusion that Plaintiff was not being subjected to wage discrimination on the basis of sex.

In my view, Defendant misunderstands how stringent the requirements of 29 U.S.C. § 260 are. Although the jury found that Plaintiff had not proven by a preponderance of the evidence that Defendant's conduct was not willful, the absence of willfulness is not sufficient to establish good faith or objective reasonableness as those terms are used in 29 U.S.C. § 260. A defense under 29 U.S.C. § 260 usually requires reliance on erroneous advice from an outside source, such as counsel or a government agency, and is not available when the violation is the result of a mistake by an employee of a defendant, as appears to be the case here. In addition, when Dr. Poris did discover a potential problem, she employed an alternative type of analysis of debatable validity and concluded that Defendant was not in violation of the law. Defendants' failure to investigate further whether they were in violation of the Equal Pay Act cannot be considered objectively reasonable.

**\*3** Even if a defendant meets its burden under 29 U.S.C. § 260, the court has discretion to award liquidated damages. *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 71 n.5 (2d Cir.1997); *Soler v. G & U, Inc.,* 628 F.Supp. 720, 724 (S.D.N.Y.1986). In this case, I would award liquidated damages even if the requirements of 29 U.S.C. § 260 had been met. A liquidated damage award is designed to compensate a plaintiff for the intangible losses occasioned by the retention of plaintiff's salary, and I see no reason why it would be unjust to so compensate Plaintiff. The amount of liquidated damages in this case is not large and will not result in a windfall to Plaintiff.

*Attorneys' fees*

Plaintiff is entitled to attorneys' fees. 29 U.S.C. § 216(b) provides that in cases in which an employer is found to have violated 29 U.S.C. § 206, "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). This amount is generally referred to as the lodestar. "A reasonable rate is one which is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." ' *Bridges v. Eastman Kodak*

Co., No. 91 CIV 7985, 1996 WL 47304 (S.D.N.Y. Feb. 6, 1996), aff'd 102 F.3d 56 (1996), cert. den. 117 S.Ct. 2453 (1997), quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984). Plaintiffs have the burden of demonstrating the reasonableness of their hourly rate. *Bridges v. Eastman Kodak Co.*, No 91 CIV 7985, 1996 WL 47304 (S.D.N.Y. Feb 6, 1996), aff'd 102 F.3d 56 (1996), cert. den. 117 S.Ct. 2453 (1997).

As Plaintiff requested, I will award fees based on Plaintiff's counsel's current rates. *See Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Grant v. Martinez*, 973 F.2d 96, 100 (2d Cir.1992), cert. denied 506 U.S. 1053 (1993). The current hourly rates requested by Plaintiff's counsel, the firm of Jacobowitz and Gubits, are as follows: $175.00 for Robert E. DiNardo, the partner at the firm who expended the most time on and tried the case; $175.00 for Peter R. Eriksen, also a partner, who second chaired the trial; $135.00 for George W. Lithco and Andrea D. Pawliczek, both associates at the firm; $100.00 for Sarah E. Greitzer, a paralegal who is a law school graduate; $75.00 for Donna McMahon, a paralegal; $35.00 for Michael West, a law school intern; and $25.00 for Marina Valverde and Regina Gaudreau, both secretaries.

Plaintiff also seeks attorneys' fees for Karen DeCrow, Esq., who apparently consulted with Jacobowitz and Gubits on this case from July 1995 until August 1996, shortly after the filing of the complaint. Ms. DeCrow seeks an hourly rate of $350.00 for work performed in 1995 and $375.00 for work performed in 1996.

*\*4* Defendant has objected only to the hourly rate of Ms. DeCrow and the billing of secretarial time. I find that the rates requested for Mr. DiNardo, Mr. Eriksen, Mr. Lithco, Ms. Pawliczek, Mr. West, Ms. Grietzer, and Ms. McMahon are in line with prevailing rates in the community. Counsel's performance in this case was excellent and the rates requested are reasonable. I also note that counsel's time sheets include 8.46 hours of work done by "HP" from May 18, 1998 to May 20, 1998. These entries presumably refer to Jacobowitz & Gubits partner Howard Protter, and I will award Mr. Protter an hourly rate of $175.00. [FN2]

> FN2. Counsel's time sheets also include .85 hours of work done by "MLC" on May 30, 1996. As I do not know to whom this refers, this entry will be disallowed.

I decline to award the fees requested for secretarial time. In my experience, it is not the practice in this legal community to charge clients separately for secretarial time. Although secretarial time might be compensable if a secretary was performing paralegal functions, that does not appear to be the case here. Most of the entries for secretarial time reflect time spent placing telephone calls, preparing correspondence, and scheduling conferences.

Also in dispute is the appropriate hourly rate for Karen DeCrow, Esq. Jacobowitz and Gubits engaged the services of Ms. DeCrow, who specializes in "civil rights matters involving women's interests" (DiNardo Aff. ¶ 4), in an attempt to resolve the case without litigation and later to assist in the drafting of the complaint. Ms. DeCrow has submitted an affidavit in which she states that she has "a national practice in civil rights law in which [she charges] hourly rates of $350 to $375." (DeCrow Aff. ¶ 2)

This requested rate is unreasonable in light of the materials that have been submitted to the Court. Aside from the assertion in her affidavit that she charges hourly rates of between $350 to $375, Ms. DeCrow has provided no justification for awarding what appears to be an exorbitant rate. Ms. DeCrow's resume describes her background as an author and lecturer and her political experience. As far as her experience as an attorney, however, her resume reveals only that she is admitted to the New York bar and in the Northern District of New York, that she received a J.D. in 1972 from Syracuse University, and that she specializes "in employment law, gender and age discrimination, civil liberties." Under these circumstances, the hourly rate sought by Ms. DeCrow is clearly unreasonable. I will award Ms. DeCrow an hourly rate of $175.00, which corresponds to the hourly rate awarded the partners at Jacobowitz and Gubits. Meg O'Connor, Ms. DeCrow's law clerk, will be compensated at the requested rate of $8.00 per hour.

Defendant also objects to certain hours claimed by Plaintiff's counsel. Defendant takes the position that hours spent by Mr. Eriksen acting as second chair at the trial should be excluded. Mr. Eriksen has voluntarily reduced by 50% the number of hours charged for his attendance at the trial. This was a fairly complex trial, and I find that the presence of a second attorney was reasonable. *See Bridges v.*

*Eastman Kodak Co.,* No 91 Civ 7985, 1996 WL 47304 at *15 (S.D.N.Y. Feb. 6, 1996), *aff'd* 102 F.3d 56 (1996), *cert. denied* 117 S.Ct. 2453 (1997). I will, however, exclude those hours spent by Ms. Greitzer, a paralegal, for attending jury selection on October 5, 1998, as the presence of a paralegal at jury selection was unnecessary.

**\*5** Defendant also argues that the number of hours claimed by Ms. DeCrow should be reduced. Ms. DeCrow engaged in settlement discussions with Defendant prior to the commencement of litigation and assisted in the drafting of the complaint. Her involvement in the case ceased in August, 1996. Although Ms. DeCrow's participation in discussions designed to avoid the need for litigation is compensable, the need for her services as a consultant for purposes of drafting the complaint seems minimal in light of the fact that Jacobowitz and Gubits also expended considerable time on drafting the complaint. Although this case was complex, it did not involve novel issues of the sort that would require extensive consultation with outside counsel. Furthermore, the original complaint, the drafting of which Ms. DeCrow assisted in, did not include the Equal Pay Act claim on which Plaintiff was ultimately successful. The Equal Pay Act cause of action was not pled until May 1998. Under these circumstances, I will reduce by half the hours requested for Ms. DeCrow and her law clerk.

Defendant argues that travel time should be compensated at less than the full rate. *See Cruz v. Local Union Number 3,* 34 F.3d 1148, 1161 (2d Cir.1994) (error to eliminate all hours for travel time); *Williams v. N.Y.C. Housing Auth.,* 975 F.Supp. 317, 324 (S.D.N.Y.1997); *Loper v. N.Y.C. Police Dep't,* 853 F.Supp. 716, 720 (S.D.N.Y.1994). Plaintiff's counsel has stated that his firm billed travel time at 50% of the normal rate. (Pl. Reply Mem. Law at 7) No further adjustments are necessary.

Defendant also takes the position that hours spent by Plaintiff's counsel on two motions in limine, both involving the testimony of defense witness Dr. Marilyn Poris, should be excluded because Plaintiff was largely unsuccessful in her attempts to limit Dr. Poris' testimony. I decline to reduce Plaintiff's fee award because of adverse decisions on specific motions, especially when those motions were not frivolous. *See Gierlinger v. Gleason,* 160 F.3d 858, 880 (2d Cir.1998) (fees should be assessed in light of the ultimate outcome of litigation).

The remaining question is whether (and by how much) the hours claimed by Jacobowitz and Gubits should be reduced given that Plaintiff failed to prevail on her causes of action for intentional discrimination under Title VII and the New York Human Rights Law and for willful violation of the Equal Pay Act.

In order to determine whether a reduction is required, the Court must "first examine whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded. The hours spent on such unsuccessful claims should be excluded from the calculation." *Grant v. Martinez,* 973 F.2d 96, 101 (2d Cir.1992), *cert. denied* 506 U.S. 1053 (1993). Then, "the district court determines whether there are any unsuccessful claims interrelated with the successful claims. If such unsuccessful claims exist, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award... If a plaintiff has obtained excellent results, however, the attorneys should be fully compensated." *Ibid.* (citations omitted). "[T]he district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983). "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37.

**\*6** In this case, there are no wholly unrelated claims. Each of the causes of action advanced by Plaintiff was based on the same general theory: that Plaintiff was subjected to wage discrimination due to her sex. Plaintiff's success on the Equal Pay Act claim is not, as Defendant suggests, insignificant. The nature of Equal Pay Act claims is such that small recoveries are likely, since in most cases pay disparities will not be enormous. Nevertheless, the hours requested by Plaintiff's counsel are somewhat high in light of the results obtained, which cannot be described as so excellent as to warrant full compensation. Had Plaintiff demonstrated that Defendant's conduct was willful, Plaintiff would have been entitled to another year's worth of damages under the Equal Pay Act. Had Plaintiff prevailed on her Title VII claim, she could have received compensatory and punitive damages, as well as additional back pay. [FN3]

> FN3. In addition, I note that certain hours billed by Plaintiff's counsel cannot be attributed to the Equal Pay Act claim on which Plaintiff was successful. Pursuant to the Equal Pay Act's statute of limitations, Plaintiff was not able to collect damages for violations occurring prior to May 1996. By May of 1996, however, Plaintiff's counsel had already

expended more than forty hours on this case. A large percentage of the discovery in this case was completed prior to Plaintiff's amending of the complaint to include an Equal Pay Act claim, and some of that time, including the time spent on the EEOC filing and statistical analyses, was useful primarily for the preparation of a Title VII claim.

Defendant has suggested neither a method of eliminating specific hours nor a percentage by which Plaintiff's counsel's hours should be reduced. In light of the foregoing, I will reduce Plaintiff's counsel's hours by 25%.

Taking into account the 25% reduction, the total number of hours for which Mr. DiNardo is reasonably entitled to be compensated is 406.31 hours. When multiplied by his hourly rate of $175.00, Mr. DiNardo's total fee is $71,104.25. The total number of hours for which Mr. Eriksen is entitled to be compensated is 29.81 hours. When multiplied by his hourly rate of $175.00, Mr. Eriksen's total fee is $5,216.75. The total number of hours for which Mr. Protter is entitled to be compensated is 6.35 hours. When multiplied by his hourly rate of $175.00, Mr. Protter's total fee is $1,111.25. The total number of hours for which Mr. Lithco is entitled to be compensated is 2.03 hours. When multiplied by his hourly rate of $135.00, Mr. Lithco's total fee is $274.05. The total number of hours for which Ms. Pawliczek is entitled to be compensated is 24.38 hours. When multiplied by her hourly rate of $135.00, Ms. Pawliczek's total fee is $3,291.30. The total number of hours for which Mr. West is entitled to be compensated is 17.63 hours. When multiplied by his hourly rate of $35.00, Mr. West's total fee is $617.05. The total number of hours for which Ms. McMahon is entitled to be compensated is 23.49 hours. When multiplied by her hourly rate of $75.00, Ms. McMahon's total fee is $1,761.75. The total number of hours for which Ms. Greitzer is entitled to be compensated is 17.63 hours. When multiplied by her hourly rate of $100.00, Ms. Greitzer's total fee is $1,762.50. The lodestar for the fees incurred by Jacobowitz and Gubits is thus $85,138.90.

As for the fees incurred by Ms. DeCrow, her billing entries indicate that she spent 15 hours on this case. I have previously indicated that I will reduce this amount by 50%. The total number of hours for which Ms. DeCrow is entitled to be compensated is 7.5 hours. When multiplied by the hourly rate of $175.00, Ms. DeCrow's total fee is $1,312.50. Ms. DeCrow's intern, Ms. O'Connor, spent 6 hours on this case. The total number of hours for which Ms. O'Connor is entitled to be compensated is thus 3 hours. When multiplied by the hourly rate of $8.00, Ms. O'Connor's total fee is $24.00. The total amount of reasonable fees owed to Ms. DeCrow's office is thus $1,336.50.

*7 I see no basis for departure from the lodestar. The total attorneys' fees in this case amounts to $86,475.40.

*Costs*

I will exclude or reduce certain costs itemized by Plaintiff. Local faxes are generally not compensable. *Perdue v. City University of New York*, 13 F.Supp.2d 326, 348 (E.D.N.Y.1998). Since Plaintiff's counsel does not identify the fax charges as long distance, they will be eliminated. Plaintiff's counsel has charged 20 cents a page for photocopying, which is excessive. The amount of photocopying costs will thus be halved. Finally, computerized legal research expenses are not allowable as costs. *Beckford v. Irvin*, 60 F.Supp.2d 85, 1999 WL 605677 at *5 (W.D.N.Y. June 24, 1999).

Plaintiff's Exhibit E itemizes $3,931.08 in costs already paid by Plaintiff. From that amount, I will deduct $11.70 in fax charges and $13.40 in photocopying charges from the invoice dated September 11, 1996. I will also deduct $5.75 in fax charges, $22.26 in computerized legal research charges, and $26.20 in photocopying charges from the invoice dated May 30, 1996. The total allowable costs in Exhibit E amount to $3,851.77.

Plaintiff's Exhibit F lists disbursements that have not been paid by Plaintiff totaling $5,793.08. From that amount I will deduct $246.60 in fax charges, $795.94 in computerized legal research charges, and $1,129.90 in photocopying charges. I will also deduct charges totaling $19.70 on June 11 and June 15, 1998 that are identified only as "miscellaneous." The total allowable costs from Exhibit F thus amount to $3600.94. [FN4]

> FN4. I am including the entry dated May 11, 1998 for $411.80 marked "Court Reporter." I assume that it is not duplicative of the bill for $411.80, also for court reporting services, contained in Exhibit E.

Plaintiff seeks reimbursement for her statistical expert, Dr. Michael Parides. Dr. Parides asserts that he acted as both an in-court expert witness and as an out of court consultant. I have concluded that Plaintiff cannot receive compensation for Dr. Parides' fees in excess of the statutory amount provided in 28 U.S.C. § 1821.

In *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987), the Court held that absent explicit statutory authorization for taxing expert fees as costs, courts may not award expert fees in excessive of the amount specified in 28 U.S.C. § 1821, which is currently $40 per day. 28 U.S.C. § 1821(b). The Court reiterated this principle in *West Virginia University Hospital v. Casey,* 499 U.S. 83 (1991), which involved 42 U.S.C. § 1988, a fee-shifting statute. Although Congress later amended 42 U.S.C. § 1988 to include expert witness fees, no such amendment was made to 29 U.S.C. § 216(b), the statute at issue here. See *Gray v. Phillips Petroleum Co.,* 971 F.2d 591 (10th Cir.1992) (expert fees not available under 29 U.S.C. § 216). The principle that shifting of expert fees in excess of the amount specified in 28 U.S.C. § 1821 is prohibited unless explicitly authorized by a fee shifting statute remains viable.

Plaintiff argues that non-testimonial services provided by Dr. Parides should be compensated. This argument was apparently rejected in *West Virginia University Hospital, supra,* 499 U.S. at 87. In addition, at least two United States Circuit courts have rejected this argument as it applies to 29 U.S.C. § 216. See *Gray v. Phillips Petroleum Co.,* 971 F.2d 591 (10th Cir.1992); *Uphoff v. Elegant Bath, Ltd.,* 176 F.3d 399, 411 (7th Cir.1999) (no abuse of discretion to deny fees accruing from services of non-testifying expert accountant). See also *Wilder v. Bernstein,* 975 F.Supp. 276, 287 (S.D.N.Y.1997) (denying fees for expert who assisted in monitoring settlement in Section 1983 case). *But see Bridges v. Eastman Kodak Co.,* No 91 Civ 7985, 1996 WL 47304 at *15 (S.D.N.Y. Feb. 6, 1996), aff'd 102 F.3d 56 (1996), cert. denied 117 S.Ct. 2453 (1997) (allowing costs of expert for responding to discovery, including being deposed); *Beckford v. Irvin,* 60 F.Supp.2d 85, 1999 WL 605677 at *4 (W.D.N.Y. June 24, 1999) ($200 hourly rate to "consultative physician").

*8 I am sympathetic to Plaintiff's argument, particularly in light of the necessity for and expense of expert testimony and consultation in discrimination cases utilizing statistical analysis. Unfortunately, 29 U.S.C. § 216 does not explicitly provide for the shifting of expert fees. Plaintiff may recover $40.00 for each day that Dr. Parides testified, for a total of $120.00.

Plaintiff may thus recover total costs of $7,572.71. Defendant has not requested that costs be reduced due to Plaintiff's limited success in this case, and I decline to do so.

Counsel are directed to submit a proposed judgment in accordance with this order within ten days.

SO ORDERED.

S.D.N.Y.,1999.

**Lavin-McEleney** v. **Marist College**

Not Reported in F.Supp.2d, 1999 WL 33500070 (S.D.N.Y.)

### Motions, Pleadings and Filings (Back to top)

- 1999 WL 33582346, JVR No. 802131 (Verdict and Settlement Summary) (Oct. 1999)
- 7:96cv04081 (Docket) (May. 31, 1996)

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.